UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

GREATER NEW YORK MUTUAL INSURANCE COMPANY,

*Plaintiff*,

v.

LIAKAS LAW, P.C., DEAN N. LIAKAS, NICHOLAS E. LIAKAS, MARCOS TAVAREZ, JOSE SONE-MARTINEZ (TRUE NAME UNKNOWN), MARK D. ROLNIK, LUIS R. RODRIGUEZ, JUMPSTART FUNDING, LLC, ORTHOPEDICS SPINE & SPORTS MEDICINE, LLC /d/b/a TOTAL ORTHOPEDICS, VADIM LERMAN, D.O. f/k/a VADIM KUZNETSOV, KAREN AVANESOV, D.O., ALEXIOS APAZIDIS, M.D., SHIVEINDRA JEYAMOHAN, M.D., ABHISHEK KUMAR, M.D., ARISTIDE BURDUCEA, D.O., MCCULLOCH ORTHOPEDIC SURGICAL SERVICES, P.L.L.C. s/d/b/a NEW YORK SPORTS AND JOINTS ORTHOPEDIC SPECIALISTS, DAVID R. CAPIOLA, M.D., ACCELERATE RADIOLOGY, P.C. d/b/a PRECISION ACCELERAD, SIDDHARTH PRAKASH, M.D., BROOKLYN PREMIER ORTHOPEDICS AND PAIN MANAGEMENT PLLC a/k/a FJ ORTHOPEDICS AND PAIN MANAGEMENT PLLC, JONATHAN M. SIMHAEE, M.D., SPORTS MEDICINE & SPINE REHAB, PC, SILVIA GERACI, M.D., BROOKLYN MEDICAL PRACTICE, P.C., BIG APPLE PAIN MANAGEMENT PLLC, NORTH SHORE FAMILY CHIROPRACTIC, P.C., UNICORN ACUPUNCTURE, P.C., SAYEEDUS SALEHIN, M.D., RICHARD J. APPLE, M.D., TODD LEBSON, DC, DEKUN WANG, L.AC, COMMUNITY MEDICAL IMAGING, P.C., ANDREW MCDONNELL, M.D., BRONX SC LLC d/b/a/ EMPIRE STATE AMBULATORY SURGICAL CENTER, ANDERS J. COHEN, D.O., SAAD CHAUDHARY, D.O., and BOGORAZ LAW GROUP, P.C.,

*Defendants*.

Case No. 1:26-cv-00450-FB-PK

ORAL ARGUMENT REQUESTED

**MEMORANDUM OF LAW IN SUPPORT OF**
**LIAKAS LAW, P.C., DEAN N. LIAKAS, AND NICHOLAS E. LIAKAS' MOTION TO DISMISS**

**PILLSBURY WINTHROP SHAW PITTMAN LLP**
James M. Catterson
Brianna S. Walsh
Sarah M. Madigan
31 West 52nd Street
New York, NY 10019-6131
Phone: 212.858.1000
Fax: 212.858.1500
james.catterson@pillsburylaw.com
brianna.walsh@pillsburylaw.com
sarah.madigan@pillsburylaw.com

*Attorneys for Defendants Liakas Law, P.C., Dean N. Liakas, and Nicholas E. Liakas*

# TABLE OF CONTENTS


PRELIMINARY STATEMENT ..... 1

STATEMENT OF FACTS ..... 3

A. The Parties ..... 3

B. Exemplar Claimants ..... 4

C. The Alleged "Fraud Scheme" ..... 6

D. Plaintiff's Alleged Damages ..... 7

ARGUMENT ..... 7

POINT I: PLAINTIFF FAILS TO STATE A RICO CLAIM ..... 7

A. Legal Standard ..... 7

B. Plaintiff Fails to Allege Management of a RICO Enterprise. ..... 8

1. Plaintiff fails to allege an association-in-fact enterprise. ..... 8

2. Plaintiff fails to allege that the Firm is a RICO enterprise. ..... 12

3. Plaintiff fails to allege Liakas operated or managed the purported enterprises. ..... 12

C. Plaintiff Does Not Plausibly Allege Predicate Acts. ..... 13

1. Plaintiff does not allege mail or wire fraud with particularity. ..... 13

2. The Hobbs Act claim fails. ..... 14

3. The Penal Law claims fail. ..... 15

4. The Travel Act claim fails. ..... 16

5. Litigation activity does not constitute a RICO predicate. ..... 17

6. The predicate acts alleged in other actions fail. ..... 17

D. Plaintiff Fails to Plausibly Allege a Pattern of Racketeering Activity. ..... 18

POINT II: PLAINTIFF FAILS TO ALLEGE A CIVIL RICO CONSPIRACY ..... 20

POINT III: PLAINTIFF LACKS RICO STANDING ..... 20

A. Legal Standard ..... 20

B. Plaintiff Does Not Allege Proximate Causation for RICO Standing. ..... 21

C. Plaintiff's Claims Do Not Satisfy RICO's Enhanced Ripeness Requirement. ..... 22

POINT IV: PLAINTIFF'S STATE LAW CLAIMS MUST BE DISMISSED ..... 22

A. The Court Should Not Exercise Supplemental Jurisdiction over Plaintiff's State-Law Claims. ..... 22

B. Plaintiff Fails to Plead Fraud and Aiding and Abetting with Particularity. ..... 23

C. Plaintiff Fails to Plead a Violation of the Insurance Fraud Prevention Act. ..... 23

POINT V: THE COMPLAINT SUFFERS FROM OTHER DEFICIENCIES AND SHOULD BE DISMISSED WITH PREJUDICE ........ 24

CONCLUSION ........ 25

## TABLE OF AUTHORITIES

**Page(s)**

Cases

Abbott Labs. v. Adelphia Supply USA,
No. 15-CV-5826-CBA-LB, 2017 WL 57802 (E.D.N.Y. Jan. 4, 2017) .........................9, 11, 13

Agency Holding Corp. v. Malley-Duff & Assocs., Inc.,
483 U.S. 143 (1987)..........................................................................................................25

Allstate Ins. Co. v. Abramov,
No. 16CIV465AMDVMS, 2017 WL 6335930 (E.D.N.Y. Aug. 1, 2017) ..............................15

Anza v. Ideal Steel Supply Co.,
547 U.S. 451 (2006)..........................................................................................................21

United States v. Applins,
637 F.3d 59 (2d Cir. 2011)................................................................................................20

Ashcroft v. Iqbal,
556 U.S. 662 (2009)............................................................................................................7

Black v. Ganieva,
619 F. Supp. 3d 309 (S.D.N.Y. 2022).............................................................9, 10, 11

United States v. Bonanno Organized Crime Fam. of La Cosa Nostra,
683 F. Supp. 1411 (E.D.N.Y. 1988), aff'd, 879 F.2d 20 (2d Cir. 1989)................................24

Boyle v. United States,
556 U.S. 938 (2009)............................................................................................................9

Campos v. Lavinsky,
2022 WL 16950054 (E.D.N.Y. Nov. 14, 2022).....................................................................20

Cedar Swamp Holdings, Inc. v. Zaman,
487 F. Supp. 2d 444 (S.D.N.Y. 2007)...........................................................................9, 11

Cintas Corp. v. Unite Here,
601 F. Supp. 2d 571 (S.D.N.Y. 2009), aff'd, 355 F. App'x 508 (2d Cir. 2009)................15, 16

Condos Bros. Constr. Corp. v. Main St. Am. Assurance Co.,
280 F. Supp. 3d 349 (E.D.N.Y. 2017) ...............................................................................20

Curtis & Assocs., P.C. v. L. Offs. of David M. Bushman, Esq.,
758 F. Supp. 2d 153 (E.D.N.Y. 2010) ...............................................................................17

D'Addario v. D'Addario,
901 F.3d 80 (2d Cir. 2018)....................9

United States v. Daidone,
471 F.3d 371 (2d Cir. 2006)....................18

DeFazio v. Wallis,
No. 05CV5712 ADSARL, 2006 WL 4005577 (E.D.N.Y. Dec. 9, 2006)....................13

Dixon v. von Blanckensee,
994 F.3d 95 (2d Cir. 2021)....................7

DLJ Mortg. Cap., Inc. v. Kontogiannis,
726 F. Supp. 2d 225 (E.D.N.Y. 2010) ....................20, 22

Donlon v. City of New York,
No. 25CV5831 (DLC), 2026 WL 456892 (S.D.N.Y. Feb. 18, 2026)....................24

Dynarex Corp. v. Farrah,
No. 18 CV 7072 (VB), 2019 WL 2269838, at *3 (S.D.N.Y. May 28, 2019)....................10, 11

Filler v. Hanvit Bank,
156 F. App'x 413 (2d Cir. 2005) ....................23

First Cap. Asset Mgmt., Inc. v. Satinwood, Inc.,
385 F.3d 159 (2d Cir. 2004)....................8, 9, 19

First Nationwide Bank v. Gelt Funding Corp.,
27 F.3d 763 (2d Cir. 1994)....................21

Fossil Grp., Inc. v. Angel Seller LLC,
627 F. Supp. 3d 180 (E.D.N.Y. 2022) ....................12

Gov't Emps. Ins. Co. v. Mayzenberg,
No. 17-CV-2802, 2022 WL 5173745 (E.D.N.Y. Aug. 24, 2022), vacated and remanded on other grounds, No. 22-2537, 2026 WL 663837 (2d Cir. Mar. 10, 2026)....................21

Gov't Emps. Ins. Co. v. MLS Med. Grp. LLC,
No. CIV.A. 12-7281 SRC, 2013 WL 6384652 (D.N.J. Dec. 6, 2013) ....................23, 24

H. J. Inc. v. Northwestern Bell Tel. Co.,
492 U.S. 229 (1989)....................18

Hecht v. Com. Clearing House, Inc.,
897 F.2d 21 (2d Cir. 1990)....................20, 21

Hemi Grp., LLC v. City of New York,
559 U.S. 1 (2010)....................21

Holmes v. Sec. Inv. Prot. Corp.,
503 U.S. 258 (1992)....21

Jones v. Ford Motor Credit Co.,
358 F.3d 205 (2d Cir. 2004)....22

Jun An v. Zhang,
2013 WL 6503513 (S.D.N.Y. Dec. 6, 2013)....14

Kaczmarek v. Int'l Bus. Machs. Corp.,
30 F. Supp. 2d 626 (S.D.N.Y. 1998)....13

Kim v. Kimm,
884 F.3d 98 (2d Cir. 2018)....17

Koch v. Christie's Intern, PLC,
699 F.3d 141 (2d Cir. 2012)....25

Kolari v. New York-Presbyterian Hosp.,
455 F.3d 118 (2d Cir. 2006)....23

United States v. Kukushkin,
61 F.4th 327 (2d Cir. 2023)....20

United States ex rel. Ladas v. Exelis, Inc.,
824 F.3d 16 (2d Cir. 2016)....25

United States v. Laurent,
33 F.4th 63 (2d Cir. 2022)....20

Luce v. Edelstein,
802 F.2d 49 (2d Cir. 1986)....25

Lundy v. Cath. Health Sys. of Long Island, Inc.,
711 F.3d 106 (2d Cir. 2013)....8

Mackin v. Auberger,
59 F. Supp. 3d 528 (W.D.N.Y. 2014)....16

Malek v. AXA Equitable Life Ins. Co.,
2023 WL 2682408 (E.D.N.Y. Mar. 29, 2023)....10, 11

Med. Marijuana, Inc. v. Horn,
604 U.S. 593 (2025)....21

Moss v. BMO Harris Bank, N.A.,
258 F. Supp. 3d 289 (E.D.N.Y. 2017)....10

Moss v. U.S. Secret Serv.,
258 F. Supp. 3d 299 (D.D.C. 2017)....................11, 12

Motorola Credit Corp. v. Uzan,
322 F.3d 130 (2d Cir. 2003)....................22

Nakahara v. Bal,
No. 97 CIV. 2027 (DLC), 1998 WL 35123 (S.D.N.Y. Jan. 30, 1998)....................17

Rajaratnam v. Motley Rice, LLC,
449 F. Supp. 3d 45 (E.D.N.Y. 2020)....................17, 18

Reich v. Lopez,
858 F.3d 55 (2d Cir. 2017)....................18, 19

Reves v. Ernst & Young,
507 U.S. 170 (1993)....................12

Riverwoods Chappaqua Corp. v. Marine Midland Bank, N.A.,
30 F.3d 339 (2d Cir. 1994)....................12

Roberto's Fruit Mkt., Inc. v. Schaffer,
13 F. Supp. 2d 390 (E.D.N.Y. 1998)....................14, 16, 24

Roosevelt Road Re, Ltd. et al. v. Subin et al.,
No. 24-cv-05033, 2025 WL 3049937 (E.D.N.Y. Sep. 16, 2025) (Gonzalez, J.)....................1, 22, 25

Roosevelt Road Re, Ltd. v. Haggar, et al.,
No. 24-cv-1549, 2026 WL 682192 (E.D.N.Y. Mar. 11, 2026) (Gershon, J.).................... *passim*

Roosevelt Road Re, Ltd. v. William Schwitzer & Assocs., P.C.,
et al., No. 25-cv-3386, 2026 WL 457063 (E.D.N.Y. Feb. 18, 2026)....................1, 22

Sky Med. Supply Inc. v. SCS Support Claims Servs., Inc,
17 F. Supp. 3d 207 (E.D.N.Y. 2014)....................8, 21, 22, 23

Spiteri v. Russo,
No. 12-CV-2780-MKB-RLM, 2013 WL 4806960 (E.D.N.Y. Sept. 7, 2013), aff'd sub nom. Spiteri v. Camacho, 622 F. App'x 9 (2d Cir. 2015)....................8

Spool v. World Child Int'l Adoption Agency,
520 F.3d 178 (2d Cir. 2008)....................19

United States ex rel Tradesman Program Managers LLC v. Liakas Law, P.C., et al.,
No. 1:25-cv-02859-JAV (S.D.N.Y. Jan. 14, 2026)....................1

United States v. Turkette,
452 U.S. 576 (1981)....................9, 12

Turner v. New York Rosbruch/Harnik, Inc.,
84 F. Supp. 3d. 161 (E.D.N.Y. 2015) ....................8

U1it4less, Inc. v. Fedex Corp.,
871 F.3d 199 (2d Cir. 2017)....................12

United Mine Workers of Am. v. Gibbs,
383 U.S. 715 (1966)....................23

Virginia Sur. Co. v. Macedo,
No. CIV.A.08-5586JAG, 2009 WL 3230909 (D.N.J. Sept. 30, 2009)....................24

Williams v. Affinion Grp., LLC,
889 F.3d 116 (2d Cir. 2018)....................13

Statutes and Codes

United States Code
Title 18, Section 1341 ....................13
Title 18, Section 1343 ....................13
Title 18, Section 1951 ....................13, 15
Title 18, Section 1952 ....................13, 16
Title 18, Section 1961 ....................7, 18
Title 18, Section 1962 ....................21
Title 18, Section 1962(c)....................8, 21
Title 28, Section 1367 ....................22, 23
Title 28, Section 1927 ....................25
Title 42, Section 1320a-7b ....................16

New Jersey Insurance Fraud Prevention Act
Section 17:33A–4a(1) ....................23, 24

New York Penal Law
Section 215.00....................13, 15
Section 215.05....................13, 15

Rules and Regulations

Federal Rules of Civil Procedure
Rule 8 ....................3, 24, 25
Rule 9(b) .................... *passim*
Rule 11 ....................1
Rule 12(b)(6)....................1, 24

Defendants Liakas Law, P.C. (the "Firm"), Dean N. Liakas, and Nicholas E. Liakas (the "Individual Defendants" and, together with the Firm, collectively referred to as "Liakas" or "Defendants") respectfully submit this memorandum of law in support of their motion to dismiss the Complaint (ECF No. 1) filed by Plaintiff Greater New York Mutual Insurance Company ("Plaintiff"), pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure ("FRCP").

## PRELIMINARY STATEMENT

This action is the latest of twelve virtually identical complaints filed over the last year and a half in this District under the civil Racketeer Influenced and Corrupt Organizations ("RICO") Act by the Willis Law Group PLLC ("Willis"). Each action asserts that, from at least 2018 through the present, personal-injury law firms, medical professionals, and personal-injury claimants engaged in a fraudulent scheme to stage or exaggerate injuries and receive medically unnecessary treatment to increase insurance settlements.[1] Collectively, these actions allege *twelve* civil RICO schemes occurring in the *same locations* at the *same time* involving *similar sets of defendants*. On its face, this is utterly implausible.

Every judge in this District confronted with a motion to dismiss these cases has done so.[2] In one decision, the court recognized the "virtually identical" nature of the five RICO lawsuits advanced by Willis on behalf of its client Roosevelt Road Re, Ltd. See Schwitzer, 2026 WL 457063, at *1 & n.1. At a hearing in another, the court raised the possibility of Rule 11 sanctions

---

[1] See United States ex rel Tradesman Program Managers LLC v. Liakas Law, P.C., et al., No. 1:25-cv-02859-JAV (S.D.N.Y. Jan. 14, 2026), ECF No. 19 at 4 n.2 (identifying the twelve RICO cases filed by Willis).

[2] See Ionian Re, LLC v. Gorayeb & Associates, P.C., et al., No. 24-cv-7098 (E.D.N.Y. Apr. 16, 2026) ("Ionian") (Kuntz, J.) (dismissal without prejudice); Roosevelt Road Re, Ltd. v. Haggar, et al., No. 24-cv-1549, 2026 WL 682192 (E.D.N.Y. Mar. 11, 2026) (Gershon, J.) ("Haggar"); Roosevelt Road Re, Ltd. v. William Schwitzer & Assocs., P.C., et al., No. 25-cv-3386, 2026 WL 457063 (E.D.N.Y. Feb. 18, 2026) (Cogan, J.) ("Schwitzer"); Roosevelt Road Re, Ltd. et al. v. Subin et al., No. 24-cv-05033, 2025 WL 3049937 (E.D.N.Y. Sep. 16, 2025) ("Subin II") (Gonzalez, J.); Roosevelt Road Re, Ltd. et al. v. Subin et al., No. 24-cv-05033, 1713109 (E.D.N.Y. June 19, 2025) ("Subin I") (Gonzalez, J.) (dismissal without prejudice). Although GNY is not a plaintiff in these cases, Willis is counsel.

because plaintiffs alleged the same damages in multiple lawsuits naming different defendants instead of pleading damages specific to the allegations in that case. Hr'g Tr. at 46:6–10, Haggar, (E.D.N.Y. Dec. 19, 2025), ECF No. 182-1. The court later dismissed the complaint on the merits due to its deficient RICO and RICO conspiracy allegations. Haggar, 2026 WL 682192, at *12–15.

These defective lawsuits expressly aim "to break the financial back" of the defendants:




This Court is familiar with this course of conduct from the virtually identical Union Mutual action currently pending before it. The instant Complaint merely recasts the Union Mutual complaint by swapping out specific claimants and defendants. However, it preserves the same narrative and theory of liability, even repeating nearly verbatim the same 148 words used to describe the alleged fraud scheme. Compare Compl. ¶ 82, with Union Mutual, ECF No. 123, ¶ 30.

The Complaint's obvious drafting errors evince its copy-and-paste methodology. It references parties *not named in this Complaint* but *named in the other virtually identical complaints*. For example, the "Schwitzer Defendants" and the "PPNY Defendants" are defendants in Merchants Mutual v. Schwitzer, not here. See Compl. ¶¶ 221–22, 227. It also uses undefined terms, some of which appear in *other* RICO actions, particularly those brought by Union Mutual. See, e.g., id. ¶ 67 ("Legal Service Defendants," see, e.g., Union Mutual, ECF No. 123, ¶ 6 and Union Mutual v. Subin, ECF No. 110, ¶ 16); ¶ 90 ("Medical Coordinators," see Union Mutual, ECF No. 123, ¶ 26); ¶¶ 127, 157, 562, 563 ("Legal Defendants," see Union Mutual v. Subin, ECF No. 110, ¶ 111); ¶ 329 ("non-Party Bogoraz Law Group," for a named defendant in this action). The skepticism with which judges of this District have assessed these RICO complaints makes

sense: a complaint relying on copied-and-pasted allegations cannot state viable, individualized claims.

The Complaint must be dismissed for the following reasons. *First*, Plaintiff fails to state a RICO claim. It does not plausibly allege that Liakas managed a RICO enterprise or engaged in a pattern of racketeering activity, and its two enterprise theories fail. It is facially implausible to allege an enterprise based on treatments involving the independent judgment and conduct of at least one hundred medical providers *not* named as defendants. Plaintiff also fails to allege racketeering predicates or that they amount to or pose a threat of continued activity.

*Second*, Plaintiff fails to state a civil RICO conspiracy claim because it fails to state a substantive RICO claim. It also independently fails to plead an agreement or that Liakas knowingly entered into one. *Third*, Plaintiff lacks RICO standing. The alleged relationship between Plaintiff's injury and Defendants' conduct is insufficiently direct, its claims are derivative of a third-party injury, and its claimed injuries are speculative at best. *Fourth*, because the RICO claims must be dismissed, the Court should decline to exercise supplemental jurisdiction over Plaintiff's state-law claims. Those claims also fail on the merits because they rely on the same conclusory and implausible allegations of fraud underlying the defective RICO claims. *Finally*, in addition to these substantive defects, the 713-paragraph, 204-page Complaint violates the "short and plain statement" requirement of FRCP 8. It is sprawling and repetitive, obscuring rather than clarifying the factual basis for Plaintiff's claims. The Complaint should be dismissed with prejudice in its entirety.

## STATEMENT OF FACTS

### A. The Parties

Plaintiff is a New York-based mutual insurance company that alleges it issued policies covering certain premises involved in underlying personal-injury actions. Compl. ¶¶ 3, 562. Liakas

Law, P.C. is a New York personal-injury law firm, and Dean Liakas and Nicholas Liakas are principals of the Firm. Id. ¶¶ 4-6. The Complaint also names another law practice; medical providers and practices ("Medical Provider Defendants") that allegedly treated claimants in the underlying personal-injury actions ("Claimant(s)"), id. ¶¶ 24–67, 172–268; litigation funding entities ("Funders"), id. ¶¶ 19–23;[3] and individuals described as "Runners" or referral intermediaries who allegedly recruited Claimants, referred them to law firms and medical providers, and facilitated litigation funding arrangements, id. ¶¶ 8–18.

### B. Exemplar Claimants

The Complaint relies extensively on allegations concerning exemplar claimants identified as Claimants "A" through "F," whose underlying personal-injury matters form the primary factual basis for Plaintiff's claims. Id. ¶¶ 270–560. For each Claimant, Plaintiff describes an accident, medical treatment, and personal-injury litigation. See generally id.[4] The sum total of allegations against Liakas with respect to each Claimant is as follows:

- Claimant A's accident took place on June 15, 2020 (id. ¶ 270); he received treatment from June 22, 2020 through February 3, 2021 (id. ¶¶ 276–301); Liakas facilitated funding for Claimant A's surgery, (id. ¶¶ 303–05, 322), and filed suit on his behalf on April 5, 2021 and subsequently mailed a bill of particulars (id. ¶¶ 319–20).

- Claimants B and C's accident took place on May 7, 2021 (id. ¶ 325); they received treatment from May 7, 2021 through December 11, 2023 (id. ¶¶ 342–74, 386–98); the conclusory allegation that the Firm "was connected with the [410 Ditmas Defendants]" where Claimant B received treatment but that "his friend Juan Carlos Mejia" was the one who actually "recommended him" (id. ¶¶ 345, 347); Liakas took over a prior representation of Claimants B and C (id. ¶¶ 326–327, 334), and Liakas filed suit on their behalf on June 7, 2021 and subsequently mailed a bill of particulars (id. ¶¶ 408–09).

[3] The Complaint names Defendant Jumpstart Funding, LLC (hereinafter referred to as "Jumpstart"), a litigation-funding entity that allegedly provided advances to certain claimants. Id. ¶¶ 6, 19–23. It alleges that its managing member is Nicholas Liakas but does not allege that Jumpstart funded any case handled by Liakas or that Jumpstart and Liakas otherwise collaborated.

[4] Except for Claimant A, alleged to be Defendant Jose Sone-Martinez (True Name Unknown), id. ¶¶ 11, Claimants themselves are not named as defendants despite Plaintiff's theory that Claimants participated in the alleged RICO conspiracy.

- Claimant D's accident took place on July 12, 2022 (id. ¶ 413); she received treatment from July 12, 2022 through July 11, 2024 (id. ¶¶ 416–64); "Liakas Defendants steered Claimant D to treat with various Medical Provider Defendants who did not accept Medicaid" (id. ¶ 419), and that "Claimant D was recruited" by persons "operating at . . . the Liakas Firm's direction and control" (id. ¶ 420), even though the Complaint contains no details substantiating either of these allegations or when Liakas became involved in Claimant D's treatment; and Liakas filed suit on Claimant D's behalf on April 28, 2023 (id. ¶ 469), mailed medical records to Plaintiff's panel counsel on July 10, 2024 (id. ¶ 468), and mailed the first bill of particulars on October 16, 2023 (id. ¶ 470).

- Claimant E's accident took place on October 4, 2022 (id. ¶ 474); he received treatment from October 4, 2022 through August 17, 2023 (id. ¶¶ 474–506); Liakas filed suit on behalf of Claimant E on July 26, 2023 and subsequently mailed a bill of particulars (id. ¶¶ 513–14).

- Claimant F's accident took place on June 18, 2022 (id. ¶ 516); he received treatment from June 18, 2022 through April 17, 2025 (id. ¶¶ 518–49); "Claimant F was steered to the Liakas Firm by one or more Runner Defendants" (id. ¶ 523), Liakas was the "referral source" for Claimant F's surgery (id. ¶ 527), and Liakas filed suit on behalf of Claimant F on May 16, 2023 and subsequently mailed bills of particulars (id. ¶¶ 557–59).[5]

Claimant A's case proceeded to trial in October 2025, resulting in a defense verdict. See Sone-Martinez v. Robo LLC, Index No. 804625/2021E (Sup. Ct. Bronx Cnty. 2021), NYSCEF Doc. Nos. 1, 208. The other Claimants' actions remain pending in New York State court.[6] The Complaint does not identify any case in which a fraud defense or counterclaim was sustained against a Claimant represented by Liakas. In addition, as to Claimants B and C, Plaintiff alleges that Liakas took over representation *a year and a half after* a prior unrelated accident and after a non-party law firm initiated a lawsuit arising from that accident. Id. ¶¶ 326–27. It alleges that "three subsequent law firms" ultimately took over representation of Claimants B and C but

[5] Plaintiff alleges most Claimants signed a "power of attorney" with Liakas shortly after their accidents occurred (id. ¶¶ 275, 337–38, 517), but it does not allege that Liakas took any steps in their respective cases pertaining to treatment.
[6] Duran-Nunez et al. v. JJ Cassone Bakery, Inc. et al., Index No. 513542/2021 (Kings Cnty. Sup. Ct. 2021) (Claimants B and C); Abreu Delgado v. Woodhaven 86-02 LLC et al., Index No. 708861/2023 (Queens Cnty. Sup. Ct. 2023) (Claimant D); Lamar Hernandez v. Shelly Estates Group, L.L.C., Index No. 715344/2023 (Queens Cnty. Sup. Ct. 2023) (Claimant E); Lamar Lopez v. The City of New York et al., Index No. 710112/2023 (Queens Cnty. Sup. Ct. 2023) (Claimant F).

identifies only one as a defendant. Id. ¶ 335; see also id. ¶ 355 ("The remainder of . . . [Claimant B's] surgeries occurred after Claimant B changed attorneys multiple times").

Plaintiff alleges that certain Claimants were family members, roommates, or otherwise related and that they had similar accidents in the same general area and time period. See, e.g., id. ¶¶ 271–74, 326, 330–33, 415, 475–82, 520. Plaintiff does not allege that Liakas was aware of these relationships at the time of representation or that the relationships were concealed from or misrepresented to medical providers or courts. Plaintiff alleges that certain relatives of Claimants were represented by *different law firms* not named as defendants here. See, e.g., id. ¶¶ 271 n.9, 278 n.12, 331–33, 415 & nn.18 & 19, 475–77 & nn.21–23, 479, 520 & n.28.

### C. The Alleged "Fraud Scheme"

Plaintiff alleges two RICO enterprises: (1) a "Fraud Scheme Enterprise," in which Liakas, alleged Runners, litigation funders, medical providers, and others are treated as an "association-in-fact" enterprise, see id. ¶¶ 103–268; and (2) a "Liakas Firm Enterprise," in which the Firm itself is treated as the RICO "enterprise" controlled by Dean Liakas, Nicholas Liakas, and defendants wholly unrelated to the Firm, id. ¶¶ 633–50.

Plaintiff alleges the "Fraud Scheme Enterprise" operated as follows: Runners recruited Claimants to participate in personal-injury claims; Medical Provider Defendants supplied unnecessary treatment; Funders provided advances that enabled Claimants to pursue litigation; and Liakas represented certain Claimants, communicated with them and the Medical Provider Defendants, filed and prosecuted lawsuits on their behalf, and engaged in litigation activities in those matters. Id. ¶¶ 119–26. With respect to each Claimant, Plaintiff alleges only that Liakas had power of attorney, verified and filed a complaint, and verified and mailed a bill of particulars and/or medical records to Plaintiff. Id. ¶¶ 275, 319, 320–21, 327, 337, 338, 409–10, 468, 469–73,

513–15, 517, 523, 557–60.[7] Plaintiff does not plead any non-conclusory facts showing that Liakas staged accidents, directed medical treatment, or fabricated records.

Plaintiff alleges the "Liakas Firm Enterprise" consisted of the Firm as the corporate "enterprise" under 18 U.S.C. § 1961(4). Id. ¶ 635. It alleges that Dean and Nicholas Liakas, along with *seventeen* other defendants *wholly unrelated* to the Firm, including two orthopedics services and a competitor lawyer, "conducted and/or participated in the conduct of the affairs" of the Firm. Id. ¶¶ 634–36, 644. It alleges that the Liakas Firm Enterprise engaged in unspecified "racketeering activity" and the same predicate acts as the Fraud Scheme Enterprise. Id. ¶¶ 636–37, 644–45.

### D. Plaintiff's Alleged Damages

Plaintiff alleges that it incurred damages consisting of defense costs, settlement payments, and investigative expenses allegedly arising from the personal-injury claims. Id. ¶¶ 96, 125, 563, 595, 631, 649, 705. The Complaint does not identify the precise amount or timing of most alleged payments but alleges damages in generalized terms tied to the ongoing underlying litigation. Id.

## ARGUMENT

## POINT I
## PLAINTIFF FAILS TO STATE A RICO CLAIM

### A. Legal Standard

A complaint will not survive a motion to dismiss unless it contains sufficient facts to "state a claim to relief that is plausible on its face." Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009). Although "a court must accept as true all of the allegations contained in a complaint," "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice," id., nor do "legal conclusions couched as factual allegations," Dixon v. von Blanckensee, 994 F.3d 95,

[7] The Complaint also alleges that Claimant A obtained funding from an entity "facilitated by" Liakas, id. ¶ 322; see also id. ¶¶ 303–05, but provides no further detail on how Liakas "facilitated" that funding or how that funding furthered the alleged fraud scheme.

101 (2d Cir. 2021).[8]

"To establish a civil RICO claim," a plaintiff must plausibly allege "(1) conduct, (2) of an enterprise, (3) through a pattern (4) of racketeering activity," *and* (5) "injury to business or property." Lundy v. Cath. Health Sys. of Long Island, Inc., 711 F.3d 106, 119 (2d Cir. 2013); see also 18 U.S.C. § 1962(c). "The pattern of racketeering activity must consist of two or more predicate acts of racketeering." Lundy, 711 F.3d at 119. "The RICO conduct must be both the proximate and but for cause of the plaintiff's injury." Spiteri v. Russo, No. 12-CV-2780-MKB-RLM, 2013 WL 4806960, at *45 (E.D.N.Y. Sept. 7, 2013), aff'd sub nom. Spiteri v. Camacho, 622 F. App'x 9 (2d Cir. 2015). "Plaintiff's burden is high when pleading RICO allegations." Id. Where the racketeering activity sounds in fraud, as here, plaintiff must plead its fraud allegations with particularity under FRCP Rule 9(b). Id.; accord Lundy, 711 F.3d at 119; First Cap. Asset Mgmt., Inc. v. Satinwood, Inc., 385 F.3d 159, 178–79 (2d Cir. 2004). Courts closely scrutinize civil RICO claims, given their "damaging effects on the reputations of individuals alleged to be engaged in RICO enterprises and conspiracies." Spiteri, 2013 WL 4806960, at *45. Because civil RICO "is an unusually potent weapon—the litigation equivalent of a thermonuclear device," permitting conclusory claims to proceed risks substantial abuse of the statute. Turner v. New York Rosbruch/Harnik, Inc., 84 F. Supp. 3d. 161, 167 (E.D.N.Y. 2015). Most civil RICO claims fail at the motion to dismiss stage. See Sky Med. Supply Inc. v. SCS Support Claims Servs., Inc., 17 F. Supp. 3d 207, 220–21 (E.D.N.Y. 2014).

### B. Plaintiff Fails to Allege Management of a RICO Enterprise.

#### 1. Plaintiff fails to allege an association-in-fact enterprise.

It is black-letter law in this Circuit that "stringing together a list of defendants and labeling

[8] All emphases and alterations herein are added, and all internal quotation marks, alterations, and case citations are omitted, unless otherwise noted.

them an enterprise is insufficient to state a RICO claim." Cedar Swamp Holdings, Inc. v. Zaman, 487 F. Supp. 2d 444, 450 (S.D.N.Y. 2007); accord D'Addario v. D'Addario, 901 F.3d 80, 101 (2d Cir. 2018). To allege an association-in-fact, the Complaint must describe "an ongoing organization . . . function[ing] as a continuing unit" with "at least three structural features: a purpose, relationships among those associated with the enterprise, and longevity sufficient to permit these associates to pursue the enterprise's purpose." Boyle v. United States, 556 U.S. 938, 945–46 (2009). The "purpose" feature requires "a common purpose to engage in a particular fraudulent course of conduct" where individuals "work together to achieve such purposes," First Capital, 385 F.3d at 174, and "a common intent to violate RICO or to act unlawfully," Black v. Ganieva, 619 F. Supp. 3d 309, 331 (S.D.N.Y. 2022). The enterprise allegations must also reflect actual relationships among its members and an organizational structure that permits them to function as a unit. Abbott Labs. v. Adelphia Supply USA, No. 15-CV-5826-CBA-LB, 2017 WL 57802, at *4 (E.D.N.Y. Jan. 4, 2017). In addition, the enterprise must be separate from the pattern of racketeering activity. United States v. Turkette, 452 U.S. 576, 583 (1981); First Capital, 385 F. 3d at 173.

i. Plaintiff fails to allege a common purpose.

Plaintiff fails to plausibly allege that all defendants worked together to achieve a common fraudulent purpose with the intent to violate RICO or otherwise act unlawfully. Claimants' treatment included *at least one hundred other non-party medical professionals*. See ECF No. 22 at 2. Plaintiff tacitly acknowledges this, as it attached to the Complaint the very medical records showing that treatment. See ECF Nos. 6–11. Independent diagnoses, treatment, and documentation cannot possibly constitute a fraudulent scheme.

Plaintiff's Fraud Scheme theory as to Liakas is conclusory. It alleges vaguely that Liakas directed Runners to recruit Claimants and "stage" accidents (id. ¶¶ 17, 84, 105, 119), "coordinated

the fraudulent and knowingly unnecessary medical treatment," and mailed to Plaintiff "knowingly false" verified documents "in furtherance and as a necessary step in the Fraud Scheme." Id. ¶¶ 321, 410, 473, 515, 560. But it contains no non-conclusory allegations that Liakas played any role in Claimants' medical treatment. See *supra* p. 4–5. At most, the Complaint alleges that Liakas referred some of its clients to medical providers, but it "does not suggest that there was anything illegal or improper about this referral arrangement." See Haggar, 2026 WL 682192, at *14. The Complaint pleads only "independent, uncoordinated participation" by a law firm and multiple medical providers. See Moss v. BMO Harris Bank, N.A., 258 F. Supp. 3d 289, 301 (E.D.N.Y. 2017). Litigating matters for the same claimants is not the same as sharing a common unlawful purpose to operate an enterprise. The Complaint pleads only the former.

ii. Plaintiff fails to allege an organizational structure of relationships.

Plaintiff fails to allege the requisite interpersonal relationships for an association-in-fact enterprise. In evaluating whether a complaint sufficiently pleads a relationship, courts examine

> (i) whether members of the alleged enterprise have interpersonal relationships; (ii) where the members are located, and whether the complaint explains how they came to an agreement to act together or how they knew one another; (iii) whether the members are symbiotic—in other words, whether they depend on one another, act to benefit one another, or rely on one other's activities; and (iv) whether the alleged predicate acts could be accomplished without the assistance of the other members of the alleged enterprise.

Dynarex Corp. v. Farrah, No. 18 CV 7072 (VB), 2019 WL 2269838, at *3 (S.D.N.Y. May 28, 2019).

The Complaint does not allege that members have interpersonal relationships. See Black, 619 F. Supp. 3d at 333–34. Although Plaintiff alleges that Liakas received and made referrals of Claimants to other defendants (Compl. ¶¶ 274, 347, 527), "facilitated" the funding for Defendant Sone-Martinez (id. ¶ 322), and Nicholas Liakas "conferr[ed] [sic] $10,000 to Apazidis" (id. ¶ 586), there are no non-conclusory allegations that Liakas communicated directly with any other

defendant. See Malek v. AXA Equitable Life Ins. Co., 2023 WL 2682408, at *15 (E.D.N.Y. Mar. 29, 2023). Plaintiff alleges the members are each located in New York but fails to explain how they "came to an agreement to act together or how they knew one another." Farrah, 2019 WL 2269838, at *3.

Plaintiff alleges the antithesis of a symbiotic relationship among defendants, as there are "no alleged facts [that] support an inference that the entities"—including competing law firms and medical providers—"were acting in any way but in their own independent interests." See Abbott Labs., 2017 WL 57802, at *4; see also Black, 619 F. Supp. 3d at 331. Plaintiff attempts to cure that deficiency with the conclusory allegation that the Fraud Scheme Enterprise "is not a mere 'rimless hub and spokes' conspiracy" (Compl. ¶ 114), which courts routinely reject, see, e.g., Moss, 258 F. Supp. 3d at 302–03; Cedar Swamp, 487 F. Supp. 3d at 450. But Plaintiff alleges no facts describing any hierarchy, decision-making process, or system of authority. At most, the allegations "make it clear that [d]efendants were pursuing their own individual aims, not a common objective," and the Complaint "does not allege that [Liakas] shared their profits from the Fraud Scheme with . . . other [d]efendants." See Haggar, 2026 WL 682192, at *14 (dismissing virtually identical rimless hub-and-spoke allegations advanced by Willis). This is especially true where the law firms are competitors.

iii. The enterprise is not separate from the alleged RICO activity.

Plaintiff defines the enterprise using only the pattern of racketeering activity. See Compl. ¶¶ 103–268. With respect to Liakas' participation in the enterprise, Plaintiff alleges that Liakas directed false claims of injuries and represented Claimants in lawsuits, during which Liakas "intentionally submitt[ed] or caus[ed] the filing of and submission of fraudulent assertions and medical documentation to various courts." Id. ¶ 121. These allegations are substantively no different from the alleged pattern of racketeering activity. See id. ¶¶ 269–560. Because the

"'enterprise'" cannot be the same as that pattern, Plaintiff has failed to allege "an entity separate and apart from the pattern of activity in which it engages." See Turkette, 452 U.S. at 583.

**2. Plaintiff fails to allege that the Firm is a RICO enterprise.**

Plaintiff does not allege that the Firm functioned as a RICO enterprise. Although the Firm is not named as a "Count IV" or "Count V" defendant, Plaintiff improperly attempts to treat the Firm as both the "person" engaging in the racketeering activity (Compl. ¶¶ 637–38, 645–46) and the "enterprise" through which that activity occurred (id. ¶¶ 635, 644). The Second Circuit squarely prohibits this. Fossil Grp., Inc. v. Angel Seller LLC, 627 F. Supp. 3d 180, 200 (E.D.N.Y. 2022) (quoting Riverwoods Chappaqua Corp. v. Marine Midland Bank, N.A., 30 F.3d 339, 344 (2d Cir. 1994)). Courts will reject attempts to convert an ordinary business entity into a RICO enterprise absent allegations that the entity functioned under something other than its normal organizational structure. Id.; U1it4less, Inc. v. Fedex Corp., 871 F.3d 199, 205–06 (2d Cir. 2017). Plaintiff's own allegations that defendants unaffiliated with the Firm participated in running it as a RICO enterprise make clear this theory is implausible. Id. ¶¶ 634–36, 644.

**3. Plaintiff fails to allege Liakas operated or managed the purported enterprises.**

Assuming, *arguendo*, the existence of an enterprise, Plaintiff fails to plead that Liakas operated or managed it. Civil RICO liability does not extend beyond those who "participate in the operation or management of the enterprise itself," *i.e.*, those with "*some* part in directing the enterprise's affairs." Reves v. Ernst & Young, 507 U.S. 170, 179, 185 (1993) (emphasis in original). Allegations of "taking directions and performing tasks that are necessary and helpful to the enterprise" or "providing goods and services that ultimately benefit the enterprise" do not suffice. Moss, 258 F. Supp. 3d at 306. There are no non-conclusory allegations that Liakas played any role in setting strategy or directed the affairs of any entity other than itself. At most, the

Complaint alleges that Liakas referred one Claimant to one Medical Provider Defendant and helped coordinate funding for one Claimant via a third-party company. Compl. ¶¶ 322, 527. This is nothing more than ordinary personal-injury practice. See Kaczmarek v. Int'l Bus. Machs. Corp., 30 F. Supp. 2d 626, 630 (S.D.N.Y. 1998) (RICO plaintiffs must allege that defendants participated in the enterprise beyond simply conducting its business "through normal commercial channels"); Abbott Labs., 2017 WL 57802, at *7 (similar). If the acts attributed to Liakas do not depend on the other alleged members, they cannot plausibly show that Liakas directed the affairs of a broader enterprise including those members.

### C. Plaintiff Does Not Plausibly Allege Predicate Acts.

Plaintiff purports to allege four predicate acts: mail and wire fraud, 18 U.S.C. §§ 1341, 1343; Hobbs Act violations, 18 U.S.C. § 1951; Travel Act violations, 18 U.S.C. § 1952; and violations of New York Penal Law §§ 215.00, 215.05 ("NYPL"). See Compl. ¶¶ 112, 574, 606. Each fails as a matter of law.

#### 1. Plaintiff does not allege mail or wire fraud with particularity.

Plaintiff fails to allege mail or wire fraud with particularity under Rule 9(b). "The elements of mail or wire fraud are (i) a scheme to defraud (ii) to get money or property (iii) furthered by the use of interstate mail or wires." Williams v. Affinion Grp., LLC, 889 F.3d 116, 124 (2d Cir. 2018). The "gravamen of the offense is the scheme to defraud," which is "a plan to deprive a person of something of value by trick, deceit, chicane or overreading" and requires a material misrepresentation. Id. To satisfy Rule 9(b), Plaintiff must allege the specific false or fraudulent statements, the speaker, when and where the statements were made, and why the statements were fraudulent. Id. With multiple defendants, "Rule 9(b) requires that the plaintiffs allege facts specifying each defendant's contribution to the fraud." DeFazio v. Wallis, No. 05CV5712 ADSARL, 2006 WL 4005577, at *2, *4 (E.D.N.Y. Dec. 9, 2006).

Plaintiff must also allege "a conscious knowing intent to defraud . . . and that the defendant contemplated or intended some harm to the property rights of the victim." See, e.g., Jun An v. Zhang, 2013 WL 6503513, at *5 (S.D.N.Y. Dec. 6, 2013). The Complaint's tabular recitation of filings and transmissions does not cure this defect. Dates of pleadings, bills of particulars, or records do not suffice to identify any specific false statement, who made it, or why it was fraudulent. See, e.g., Compl. ¶ 574 and accompanying tables. At most, Plaintiff identifies categories of litigation documents and asserts that they were false because it now disputes the underlying claims. That is not particularized pleading.[9]

The Complaint makes generalized allegations against the "Liakas Defendants," including that they "knowingly transmitted and received by mail, facsimile and/or email" "false" medical records (Compl. ¶ 123) and "made use of the wires" by e-filing "false" complaints (id. ¶ 124) but does not identify the specific fraudulent statements in these documents. The Complaint is also rife with improper group pleading against the "Liakas Defendants." See id. ¶¶ 84, 90, 95–97, 99, 110, 119–25, 320, 322, 327, 408–09, 469–72, 513–14, 557–59; Roberto's Fruit Mkt., Inc. v. Schaffer, 13 F. Supp. 2d 390, 400 (E.D.N.Y. 1998). Plaintiff also fails to plead a strong inference of fraudulent intent, especially given the lack of allegations that Liakas was involved in Claimants' treatment or that it knew some Claimants were related or lived together. Here, Plaintiff's allegations are outweighed by the more plausible inference that Liakas relied on the medical records of more than one hundred non-party medical professionals.

**2. The Hobbs Act claim fails.**

"Attempted extortion under the Hobbs Act is defined as attempting to 'obtain[] the property

[9] Defendants' identification of the Claimants does not cure Plaintiff's FRCP 9(b) failure: Plaintiff still fails to allege with the requisite particularity any details regarding the *fraudulent statements themselves*.

of another, with his consent, induced by the wrongful use of actual or threatened force, violence, or fear.'" Cintas Corp. v. Unite Here, 601 F. Supp. 2d 571, 577 (S.D.N.Y. 2009), aff'd, 355 F. App'x 508 (2d Cir. 2009) (quoting 18 U.S.C. § 1951(b)(2)). The Complaint claims Liakas attempted to obtain "property from Plaintiff . . . as induced or attempted to induce by wrongful use of actual force and violence (upon Claimants), as well as fear of economic harm (upon Plaintiff)." Compl. ¶ 579; see also id. ¶¶ 580–81, 605–06. These allegations fail because "the act of filing a lawsuit, even one which is frivolous, does not by itself constitute an act of extortion under the Hobbs Act . . . and therefore cannot constitute a predicate act under RICO." Allstate Ins. Co. v. Abramov, No. 16CIV465AMDVMS, 2017 WL 6335930, at *5 (E.D.N.Y. Aug. 1, 2017). To the extent the Complaint alleges that Liakas orchestrated needless surgeries "to extort" Plaintiff (see Compl. ¶ 97), this, too, fails because it contains no non-conclusory allegations that Liakas directed any medical procedures. Moreover, Plaintiff's allegation that the Firm threatened violence against its own clients is as absurd as it is frivolous.

### 3. The Penal Law claims fail.

New York law prohibits "bribing a witness," which occurs, in relevant part, when a person "confers, or offers or agrees to confer, any benefit upon a witness . . . in any action or proceeding upon an agreement or understanding that . . . the testimony of such witness will thereby be influenced." NYPL § 215.00.[10] Plaintiff asserts without support that Nicholas Liakas violated the NYPL "in conferring $10,000" to Claimant A's treating physician for "a medically unnecessary spinal surgery" and documentation and that the Firm violated the NYPL "in conferring $15,000"

[10] The Complaint attempts to allege against Liakas "bribe receiving by a witness," NYPL § 215.05, which occurs when the witness "solicits, accepts or agrees to accept any benefit from another person upon an agreement or understanding that . . . his testimony will thereby be influenced," id. (Compl. ¶¶ 112, 574). This claim fails because there are no allegations that the Firm or the Individual Defendants acted as a witness in any proceeding, let alone that they received any bribe therefor.

to Claimant D's treating physician for "a medically unnecessary spinal surgery" and documentation. Compl. ¶¶ 586–87. But Plaintiff does "not allege even a single communication between [Liakas] and [any medical provider] that would support a reasonable inference of an illicit agreement." Mackin v. Auberger, 59 F. Supp. 3d 528, 554 (W.D.N.Y. 2014) (identifying "no case law supporting Plaintiff's apparent contention that summarily alleging that there must have been some communication satisfies the pleading standard"). Apart from date, dollar amount, and individuals involved, Plaintiff alleges no non-conclusory facts explaining "the illicit nature of the contributions," such as how they were transmitted or why they constituted a bribe. See Roberto's Fruit Mkt., 13 F. Supp. 2d at 399–400.

**4. The Travel Act claim fails.**

The Travel Act "makes it a crime to travel between states with the intent to commit specified crimes listed in the statute," including extortion and bribery. Cintas Corp., 601 F. Supp. 2d at 578 (citing 18 U.S.C. § 1952). The Complaint alleges extortion under the Hobbs Act, bribery of a witness under the NYPL, and violations of 42 U.S.C. § 1320a-7b (the "Anti-Kickback Statute"). Compl. ¶¶ 79, 112, 574, 605–06. As the first two predicates fail for the reasons stated above, the Travel Act claim, as based on those alleged "crimes," fails with them. Plaintiff also alleges Liakas "intentionally utiliz[ed] a network of concealed kickbacks and closed-loop self-referral arrangements." Id. ¶ 594. In brief, the Anti-Kickback Statute criminalizes receiving or offering payment for referrals for services for which payment may be made under a federal health care program. See 42 U.S.C. § 1320a-7b. Plaintiff alleges "the Liakas Defendants steered Claimant D to treat with various Medical Provider Defendants who did not accept Medicaid." Compl. ¶ 419. But there are no well-pled allegations detailing how or why Liakas referred Claimant D to the Medical Provider Defendants, that it was involved at all in her treatment, or that it received or offered payment for any referrals. Because these allegations fail, the Travel Act claim

also fails.

**5. Litigation activity does not constitute a RICO predicate.**

Plaintiff may not, as a matter of law, ground its civil RICO action in Liakas' litigation activity. Litigation activity—even allegedly frivolous, fraudulent, or baseless activities—cannot, without more, "constitute a RICO predicate act." Kim v. Kimm, 884 F.3d 98, 104 (2d Cir. 2018); see also Rajaratnam v. Motley Rice, LLC, 449 F. Supp. 3d 45, 72 (E.D.N.Y. 2020); Curtis & Assocs., P.C. v. L. Offs. of David M. Bushman, Esq., 758 F. Supp. 2d 153, 174 (E.D.N.Y. 2010).

While Plaintiff advances the conclusory allegations that Liakas "directed, authorized, coordinated, and controlled" Runners' and Medical Provider Defendants to inflate false claims, see Compl. ¶¶ 120–22, the only concrete allegations as to Liakas pertain to litigation activities protected by Kim. See also Nakahara v. Bal, No. 97 CIV. 2027 (DLC), 1998 WL 35123, *8 (S.D.N.Y. Jan. 30, 1998). Plaintiff "seeks to have this Court in effect decide the merits of lawsuits or proceedings" that can be asserted "as effectively, if not more so, in each of those ongoing proceedings." Id. at *9.

**6. The predicate acts alleged in other actions fail.**

The Complaint also "incorporate[s] by reference as if fully set forth herein" "the predicate acts as alleged against the Liakas Firm . . . [and] Dean Liakas . . . as set forth in the Union Liakas Action . . . and the Roosevelt Liakas Action." Compl. ¶ 561. Those pleadings, which were not marked by Plaintiff as related to this case and which allege mail and wire fraud, Travel Act violations, and witness bribery, all contain the same fatal flaws as the Complaint, including that they are improperly based on litigation activity. Union Mutual, ECF No. 121 ¶¶ 34, 43, 55, 67, 407–08; Roosevelt Road Re v. Liakas, ECF No. 1 ¶¶ 191, 193–94, 361, 366. The money-laundering predicate in Union Mutual fails because it depends on the existence of proceeds of specified unlawful activity tied to the same unparticularized alleged fraud scheme. Union Mutual,

ECF No. 121 ¶¶ 347–48, 409, 418.

**D. Plaintiff Fails to Plausibly Allege a Pattern of Racketeering Activity.**

To allege a pattern of racketeering, Plaintiff must allege at least two related racketeering predicates "*and* that they amount to or pose a threat of continued [] activity." H. J. Inc. v. Northwestern Bell Tel. Co., 492 U.S. 229, 239 (1989); Reich v. Lopez, 858 F.3d 55, 59 (2d Cir. 2017); see 18 U.S.C. § 1961(5).

The Complaint fails to plead relatedness. Predicate acts must be both "horizontally related" to one another and vertically related to the alleged enterprise. Reich, 858 F.3d at 60–61. Horizontally related acts "have the same or similar purposes, results, participants, victims, or methods of commission, or otherwise are interrelated by distinguishing characteristics and are not isolated events." Id. at 61. Vertical relatedness requires that the defendant "was enabled to commit the offense solely because of his position in the enterprise or his involvement in or control over the enterprise's affairs, or because the offense related to the activities of the enterprise." Id.

Here, Plaintiff fails to allege horizontal relatedness because it alleges different acts, different defendants, different methods, and different Claimants. Plaintiff fails to allege how the four predicate acts (mail and wire fraud, Hobbs Act, Travel Act, and NYPL violations) were related, beyond generically stating that they were executed "in furtherance of the scheme or artifice to defraud," Compl. ¶ 578. They thus boil down to "isolated or sporadic" litigation activities that Liakas performed on behalf of distinct plaintiffs. Motley Rice, LLC, 449 F. Supp. 3d at 65–66 (quoting United States v. Daidone, 471 F.3d 371, 376 (2d Cir. 2006)).

Overlap among alleged participants, without more, is insufficient, particularly where, as here, the defendants are primarily engaged in legitimate business rather than racketeering activities. Id. at 61–62. Nor does Plaintiff plausibly allege vertical relatedness, as it does not allege that any defendant committed the purported predicate acts "solely because of" its position within,

or its control over, the alleged enterprise. Id. at 61. The absence of interdependence also defeats relatedness. Where the acts attributed to Liakas could be accomplished without assistance from the other alleged members, they cannot be part of a coordinated pattern. At most, the Complaint alleges parallel conduct arising from separate claimant matters.

Plaintiff also fails to plead continuity. Continuity can be "closed-ended" or "open-ended." Reich, 858 F.3d at 60. Closed-ended continuity describes activity "that occurred over a long period of time in the past . . . , regardless of whether it may extend into the future." Id. Open-ended continuity describes activity that "by its nature projects into the future with a threat of repetition." Id. Closed-ended continuity is lacking because Plaintiff does not plausibly allege that each defendant engaged in related predicate acts over a substantial period of time. While "this Circuit generally requires that the crimes extend over at least two years," id., and Plaintiff generally pleads that the alleged conduct has occurred since "at least 2018 . . . with a marked escalation since 2020," Compl. ¶ 82, this eight-year period aggregates different defendants' alleged conduct in litigating tort cases across different time periods to artificially create duration.[11] The "mere fact" that in the aggregate allegations span at least two years "is insufficient, without more, to support a finding of a closed-ended pattern." See First Capital, 385 F.3d at 181. Open-ended continuity is also lacking because the alleged scheme involves legitimate businesses and is, at most, a finite set of alleged acts tied to a discrete group of Claimants, rendering it "inherently terminable." See Spool v. World Child Int'l Adoption Agency, 520 F.3d 178, 186 (2d Cir. 2008). Plaintiff does not plausibly allege that the purported predicate acts were Defendants' "regular way" of conducting business but instead relies on speculation that similar conduct could occur in the future. Id. at 185.

[11] The predicate acts for Claimant A occurred from June 2020 to April 2021; Claimants B and C from May 2021 to December 2023; Claimant D from July 2022 to July 2024; Claimant E from October 2022 to August 2023; and Claimant F from June 2022 to April 2025. See *supra* at 4–5. A variety of Medical Provider Defendants treated the Claimants, and not all are alleged to have treated every Claimant.

## POINT II
## PLAINTIFF FAILS TO ALLEGE A CIVIL RICO CONSPIRACY

Because the Complaint fails to sufficiently plead a substantive RICO claim, Plaintiff's RICO conspiracy claim must also be dismissed. See Condos Bros. Constr. Corp. v. Main St. Am. Assurance Co., 280 F. Supp. 3d 349, 356 (E.D.N.Y. 2017). The Complaint likewise fails to plead an agreement to participate in an interdependent enterprise. It alleges only that various actors appeared in the same claimant matters. It does not allege that Liakas agreed that its own conduct—filing pleadings and transmitting records—would be carried out through, or depended upon, a coordinated enterprise. Parallel participation is not agreement.

Plaintiff also fails to plead an agreement. United States v. Laurent, 33 F.4th 63, 76 (2d Cir. 2022). Plaintiff alleges only that "Defendants had an agreement or understanding as to the fraud scheme," Compl. ¶ 90, which is insufficient to plausibly plead that Defendants came to an understanding to achieve a general unlawful objective. See United States v. Applins, 637 F.3d 59, 72–75 (2d Cir. 2011); Campos v. Lavinsky, 2022 WL 16950054, *3 (E.D.N.Y. Nov. 14, 2022). Plaintiff also fails to plausibly allege that Liakas "knowingly and willfully join[ed] the conspiracy," United States v. Kukushkin, 61 F.4th 327, 334 (2d Cir. 2023), as knowledge is alleged only in a conclusory fashion. See Haggar, 2026 WL 682192, at *15; Compl. ¶ 120–24. The portion of Plaintiff's allegation that Liakas was "recklessly indifferent regarding[] and or/reasonably should have known" that the medical records were false (Compl. ¶ 99) is patently insufficient to state a conspiracy claim.

## POINT III
## PLAINTIFF LACKS RICO STANDING

### A. Legal Standard

Statutory civil RICO standing is "a more rigorous matter than standing under Article III." DLJ Mortg. Cap., Inc. v. Kontogiannis, 726 F. Supp. 2d 225, 236 (E.D.N.Y. 2010). Plaintiff must

plead an injury to business or property caused by a violation of § 1962. Hecht v. Com. Clearing House, Inc., 897 F.2d 21, 23 (2d Cir. 1990); 18 U.S.C. § 1964(c). Each defendant's predicate acts must be the "but for" and "proximate cause" of the plaintiff's injury. Holmes v. Sec. Inv. Prot. Corp., 503 U.S. 258, 268 (1992). Civil RICO also "incorporates an enhanced ripeness requirement," Sky Medical, 17 F. Supp. 3d at 231, which means that damages must be "clear and definite," First Nationwide Bank v. Gelt Funding Corp., 27 F.3d 763, 768–69 (2d Cir. 1994).

### B. Plaintiff Does Not Allege Proximate Causation for RICO Standing.

Plaintiff must allege a "direct relation" between the injury and the defendant's conduct. Hemi Grp., LLC v. City of New York, 559 U.S. 1, 9 (2010). A plaintiff cannot satisfy this requirement where "the plaintiff's theory of causation requires moving well beyond the first step" of the causal chain. Med. Marijuana, Inc. v. Horn, 604 U.S. 593, 612 (2025); see Haggar, 2026 WL 682192, at *11. Injuries from harm allegedly suffered by third parties are "too remote" to support recovery. Holmes, 503 U.S. at 268–69. As to Claimant A, there can be no harm where there is a defense verdict. As to the other Claimants, Plaintiff did not suffer a direct injury from any of the alleged predicate acts. Its claims are contingent upon harm suffered by non-party property owners or vehicle owners.[12] Plaintiff, as an insurer, was "neither the target of the racketeering enterprise . . . nor the customer of the racketeers." Hecht, 897 F.2d at 24; see also Anza v. Ideal Steel Supply Co., 547 U.S. 451, 458–61 (2006). Judges in this District have recently dismissed virtually identical claims for lack of RICO standing, and two of these dismissals occurred before Plaintiff filed its Complaint. Ionian, ECF No. 106 at 9–17; Haggar, 2026 WL

[12] A recent case holding that fraudulent no-fault automobile insurance claims directly caused an insurer's losses is distinguishable. Gov't Emps. Ins. Co. v. Mayzenberg, No. 17-CV-2802, 2022 WL 5173745, at *12 (E.D.N.Y. Aug. 24, 2022), vacated and remanded on other grounds, No. 22-2537, 2026 WL 663837 (2d Cir. Mar. 10, 2026). There, the automobile-accident victims that staged the accidents were themselves the insureds, not third-party property owners. Id. at *3. The target of Claimants B and C's alleged conduct was the underlying defendant driver. Compl. ¶ 340.

682192, at *12; Schwitzer, 2026 WL 457063, at *4 (holding plaintiffs were estopped from relitigating standing issue decided in Subin I); Subin II, 2025 WL 3049937, at *1–2, *4; Subin I, 2025 WL 1713109, at *1, *5–7. Plaintiff, too, lacks RICO standing, and counsel well knows it.[13]

**C. Plaintiff's Claims Do Not Satisfy RICO's Enhanced Ripeness Requirement.**

Plaintiff's alleged damages are neither clear nor definite. Although it alleges it has "incurred substantial damages" through settlement payments and "legal, expert, and investigative costs," Compl. ¶¶ 96, 125, 563, 595, 631, 649, 705, those damages are not concrete where it has not identified a single payment or any particulars (*e.g.*, amount, date, payee, or underlying claim). Nor are Plaintiff's alleged damages definite: there are no indemnity-based damages as to Claimant A, and there are no concrete, claim-specific losses as to the remaining exemplar cases pending in state court. See Kontogiannis, 726 F. Supp. 2d at 237; Motorola Credit Corp. v. Uzan, 322 F.3d 130, 136 (2d Cir. 2003). Civil RICO does not permit plaintiffs to litigate hypothetical damages. Sky Medical, 17 F. Supp. 3d at 231–34 & n.11. Because Plaintiff's alleged damages depend on the outcomes of unresolved underlying tort litigation and are pleaded only in generalized terms, its claims are not ripe.

## POINT IV
## PLAINTIFF'S STATE LAW CLAIMS MUST BE DISMISSED

**A. The Court Should Not Exercise Supplemental Jurisdiction over Plaintiff's State-Law Claims.**

District courts may exercise supplemental jurisdiction over claims "so related to claims in the action within such original jurisdiction that they form part of the same case or controversy." 28 U.S.C. § 1367(a); see also Jones v. Ford Motor Credit Co., 358 F.3d 205, 212 (2d Cir. 2004).

[13] That the plaintiffs in Haggar, Schwitzer, Ionian, and the Subin cases are reinsurers is not dispositive. The inquiry is whether the plaintiff was "injured at the *first step* of the causal chain." Haggar, 2026 WL 682192, at *11 (emphasis added). As Judge Kuntz explained, "the directly injured parties" are "construction employers staring down the barrel of many potential fraudulent lawsuits." Ionian, ECF No. 106 at 12.

But courts may decline jurisdiction where, *inter alia*, "the district court has dismissed all claims over which it has original jurisdiction." 28 U.S.C. § 1367(c)(3); see Sky Medical, 17 F. Supp. 3d at 236 (collecting cases); Kolari v. New York-Presbyterian Hosp., 455 F.3d 118, 122 (2d Cir. 2006). The Supreme Court has cautioned against "[n]eedless decisions of state law . . . as a matter of comity and to promote justice between the parties." United Mine Workers of Am. v. Gibbs, 383 U.S. 715, 726 (1966). Here, because Plaintiff's civil RICO claim fails, the Court should decline to exercise jurisdiction over the remaining state-law claims.

### B. Plaintiff Fails to Plead Fraud and Aiding and Abetting with Particularity.

To plead common law fraud, Plaintiff must allege "(1) a false representation of material fact, (2) an intent to defraud, and (3) reliance." Filler v. Hanvit Bank, 156 F. App'x 413, 416 (2d Cir. 2005). Plaintiff must also allege fraud with particularity under FRCP 9(b). Id. For the same reasons set forth above regarding Plaintiff's failure to plead any actionable misrepresentation or scienter with particularity, and because the Complaint does not plead reliance with particularity, Plaintiff's fraud claim fails under FRCP 9(b).

To plead aiding and abetting common law fraud, a plaintiff must allege "(1) the existence of a fraud; (2) defendant's knowledge of the fraud; and (3) proof that the defendant provided substantial assistance to advance the fraud's commission." Id. at 417. Plaintiff's aiding and abetting claim fails for the same reasons. Moreover, a defendant must have actual knowledge of the fraud, id., which Plaintiff fails to allege as to Liakas.

### C. Plaintiff Fails to Plead a Violation of the Insurance Fraud Prevention Act.

Plaintiff's claim under the New Jersey Insurance Fraud Prevention Act ("IFPA"), N.J. Stat. Ann. § 17:33A-1, *et seq.*, fails as a matter of law. The IFPA prohibits the submission of

> any written or oral statement as part of, or in . . . support of or opposition to, a claim for payment or other benefit pursuant to an insurance policy . . . knowing that the statement contains any false or misleading information concerning any fact or thing

material to the claim.

Gov't Emps. Ins. Co. v. MLS Med. Grp. LLC, No. CIV.A. 12-7281 SRC, 2013 WL 6384652, at *7 (D.N.J. Dec. 6, 2013) (quoting N.J.S.A. 17:33A–4a(1)). Plaintiff's IFPA claim against Liakas is premised on an undefined "Conspiracy Violation." See, e.g., Compl. ¶ 668. It also does not allege Liakas had the requisite knowledge for conspiracy to violate the IFPA. See id. ¶¶ 651–91. The Complaint "contains no claim-specific allegation of fraud, which identifies with specificity the offending statement, why it is false or misleading and the basis for" Liakas' "knowledge of its alleged falseness." Gov't Emps. Ins. Co., 2013 WL 6384652, at *8; see also Virginia Sur. Co. v. Macedo, No. CIV.A.08-5586JAG, 2009 WL 3230909, at *11 (D.N.J. Sept. 30, 2009).

## POINT V
## THE COMPLAINT SUFFERS FROM OTHER DEFICIENCIES AND SHOULD BE DISMISSED WITH PREJUDICE

A "complaint purporting to allege a violation of RICO must comply with the notice pleading requirements of [FRCP] 8." United States v. Bonanno Organized Crime Fam. of La Cosa Nostra, 683 F. Supp. 1411, 1428 (E.D.N.Y. 1988), aff'd, 879 F.2d 20 (2d Cir. 1989). FRCP 8(a) requires that a complaint set forth "a short and plain statement of the claim showing that the pleader is entitled to relief." FRCP 8(a)(2). "Rule 8(e)(1) [additionally] provides that '[e]ach averment of a pleading shall be simple, concise, and direct." Roberto's Fruit Mkt., Inc., 13 F. Supp. 2d at 394–95 (citing FRCP 8(e)(1)) (1987). "A complaint's insufficiency under [FRCP] 8(a) may provide the basis for a motion to dismiss under Rule 12(b)(6)." Bonanno, 683 F. Supp. at 1428. The instant Complaint, which contains 713 paragraphs over 204 pages, plainly violates FRCP 8 and should be dismissed on that ground. Cf. Donlon v. City of New York, No. 25CV5831 (DLC), 2026 WL 456892, at *1, *6 (S.D.N.Y. Feb. 18, 2026) (noting that "lengthy," 243-page civil RICO complaint that devoted much of its content to argument failed to comply with FRCP 8).

Plaintiff's RICO claims are independently barred by the statute of limitations. The applicable limitations period is four years. See Agency Holding Corp. v. Malley-Duff & Assocs., Inc., 483 U.S. 143, 156 (1987). Plaintiff was on notice of the claims "[s]ince at least 2018," when it alleges the Fraud Scheme began. Compl. ¶¶ 82, 119; see Koch v. Christie's Intern, PLC, 699 F.3d 141, 151 (2d Cir. 2012) (articulating inquiry notice standard for RICO claims). That is well before four years before the start of this lawsuit, *i.e.*, January 27, 2026.

Finally, Plaintiff should not be permitted to amend its Complaint. Leave to amend "should generally be denied in instances of," *inter alia*, futility or bad faith. United States ex rel. Ladas v. Exelis, Inc., 824 F.3d 16, 28 (2d Cir. 2016). Although "[c]omplaints dismissed under [FRCP] 9(b) are almost always dismissed with leave to amend," Luce v. Edelstein, 802 F.2d 49, 56 (2d Cir. 1986), the Complaint was filed in bad faith, and amendment would be futile given its incurable defects. Moreover, Plaintiff's counsel already unsuccessfully attempted to "recast [its] case" by amendment, resulting in dismissal with prejudice. See Subin I, 2025 WL 3049937, at *3–4.

## CONCLUSION

For the foregoing reasons, Defendants respectfully request that this Court grant its motion to dismiss the Complaint in its entirety and with prejudice. If the Court determines that this action was brought in bad faith, was frivolous, or abuses the judicial process, Defendants respectfully request attorneys' fees and costs pursuant to the Court's inherent authority and 28 U.S.C. § 1927 and such other and further relief as the Court may deem just and proper.

Dated: April 28, 2026
New York, New York

Respectfully submitted,

**PILLSBURY WINTHROP SHAW PITTMAN LLP**

By:______________________________

James M. Catterson
Brianna S. Walsh
Sarah M. Madigan
31 West 52nd Street
New York, NY 10019-6131
Phone: 212.858.1000
Fax: 212.858.1500
james.catterson@pillsburylaw.com
brianna.walsh@pillsburylaw.com
sarah.madigan@pillsburylaw.com

*Attorneys for Defendants Liakas Law, P.C., Dean N. Liakas, and Nicholas E. Liakas*