UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF NEW YORK (BROOKLYN)

| | |
|---|---|
| GREATER NEW YORK MUTUAL INSURANCE COMPANY,<br><br>Plaintiff,<br><br>v.<br><br>LIAKAS LAW, P.C.,<br><br>Defendant. | Case No. 1:26-CV-00450-FB-PK<br><br>Brooklyn, New York<br>June 30, 2026<br>11:29 a.m. |

TRANSCRIPT OF ORAL ARGUMENT HEARING
BEFORE THE HONORABLE PEGGY KUO
UNITED STATES MAGISTRATE JUDGE

APPEARANCES:

| | |
|---|---|
| For the Plaintiff: | Daniel A. Johnston, Esq.<br>The Willis Law Group, PLLC<br>1985 Forest Ln<br>Garland, TX 75042 |
| For the Defendant: | James M. Catterson, Esq.<br>Sarah Madigan, Esq.<br>Pillsbury Winthrop Shaw Pittman, LLP<br>31 West 52nd Street<br>New York, NY 10019 |
| Clerk: | KS |
| Court Recorder: | Electronic Sound Recording |
| Transcription Service: | Chris Hwang<br>Abba Reporting<br>PO Box 223282<br>Chantilly, Virginia 20153<br>(518) 302-6772 |

Proceedings recorded by electronic sound recording; transcript produced by transcription service.

**INDEX**

Page

Court's Ruling 13-14

(Call to order at 11:29 a.m.)

THE CLERK: This is civil cause for an oral argument. Greater New York Mutual Insurance Company v. Liakas Law, P.C., et al, docket number 26-CV-00450, Magistrate Judge Peggy Kuo presiding.

Will the parties please state their appearances beginning with the Plaintiff?

MR. JOHNSTON: For the Plaintiff, Daniel Johnston from the Willis Law Group.

MR. CATTERSON: Good morning, Judge, for Liakas Law P.C., Dean Liakas, and Nicholas Liakas, James M. Catterson, Pillsbury Winthrop Shaw Pittman, along with my associate Sarah Madigan, who will be arguing the motion.

THE COURT: All right.

MR. CATTERSON: As you requested, Judge, you requested the parties have a representative from their clients here. My clients are here.

THE COURT: Okay, wonderful. Thank you very much.

I would like to hear very briefly a description of the case. We have various interns here. And so for them to understand what's going on, it would be useful for them to know what the case is about. And then, we'll turn to the specific issue.

So, Mr. Johnston, please?

MR. JOHNSTON: Yes, very good, thank you, Your Honor.

This case is Greater New York Mutual Insurance Company v. --

THE COURT: Microphone closer so you don't have to lean back. Yeah, just be comfortable. All right, good.

MR. JOHNSTON: This is a case in which an insurance company is alleging various misconduct involving underlying personal injury actions. It is in the early stages.

There is one pending motion to dismiss that's been briefed. The remaining Defendants have a further briefing schedule.

This issue that we're dealing with is one of the Defendants, Jose Sone Martinez. We were unable to effectuate service on him.

This is a Defendant, who in the underlying action, is a Plaintiff in a state court personal injury action represented by the Defendants here, Liakas Law.

So we filed a motion for what's called alternate service. Federal Rules of Civil Procedure Rule 4 incorporates local state rules regarding service. So that brings us to New York CPLR 308, which allows you to make a motion for alternative service when regular forms of service have been rendered impracticable.

So, in this case, we made a motion to provide alternate service by serving Liakas Law as they continue to represent Mr. Sone Martinez in the underlying state court matter.

While this motion was pending, there were further discussions between the Defendants and Plaintiff and further attempts to secure service, which included Liakas Law reaching out to Mr. Martinez for additional addresses, obtaining his consent to convey those addresses.

Further attempts at service were made. In both instances, it was dead ends. The people who actually were there had no idea who he was.

And so, we're here asking the Court to permit Plaintiff to effectuate service on Mr. Martinez through serving either Liakas Law directly or through their counsel.

THE COURT: All right, thank you.

Ms. Madigan, I'll hear from you.

MS. MADIGAN: Good morning, Your Honor. Just to lay the stage with where this case stands in relation to the in fact 12 other RICO cases that Willis has filed in this district alone, this is one of 12. There have been nearly 2,000 pages of complaints. Four of these actions are against my client Liakas Law and Dean Liakas and Nicholas Liakas.

There have been nearly 6,000 paragraphs of complaints and they are before 16 district and magistrate judges. And not one of these cases that has come to the motion dismiss stage has succeeded. There have now been five dismissals for lack of standing and on the merits. And 4 of these 12 cases are against Liakas Law.

Now to raise -- to set the groundwork of where we are with the instant motion, my client is a tort firm and it provides services to injured plaintiffs, injured individuals.

The sixth exemplar Plaintiffs in -- exemplar claimants in Plaintiff's RICO complaint in this case are my clients' tort clients. One of them is also a Defendant. That's Jose Sone Martinez.

And Plaintiff has not been able to effect service on Mr. Martinez, and therefore, is asking the Court to force service on Liakas Law because it represents him in the underlying tort case.

Now we agree that that is acceptable under case law because in the ordinary situation, an attorney may accept service on behalf of its client, but that isn't the case that we have here.

Liakas is Martinez's co-defendant. And there is a chance that they become adverse in this matter. So what Plaintiff is really asking to happen is have service on a co-defendant in the same matter.

And no case in any parties' briefs suggests that that is okay. And how could it be because it's a conflict? And it really begs the question why we are here litigating this and having you adjudicate it and spending the parties' time and money litigating the conflict when Plaintiff could have tried but ostensibly did not any of the other myriad ways that there

are to serve, such as service by publication, service over email, service over text message, and with this case, service over social media.

There are at least three instances in the complaint in which Plaintiff cites Facebook pictures of Sone Martinez. They cite his Facebook. They know he uses Facebook and courts have permitted service over Facebook. They've authorized it where that is reasonably calculated to reach the Defendant.

And we agree Liakas did try to moot this issue and save everybody's time and money. We provided not one, but two addresses for Mr. Martinez. Those didn't work. And so, we have to come here and brief the conflict.

And again, that is because Liakas is a co-defendant of Martinez and cannot provide any representation or be his agent of -- for service in this case.

And even if the Court doesn't credit our position, we would say, okay, well, if you have a court order, all Liakas is going to do is drop the summons and complaint in the mail to the last known address, which Plaintiff has for Mr. Martinez, and that's it.

And any default based on that service is going to be subject to challenge. That would be a defective service by any measure very likely. But that isn't Liakas' burden in this case. Liakas does not have to prove service. That is on Plaintiff to prove valid service.

So, for those reasons, that's why we ask that the Court respectfully, we ask that the Court deny Plaintiff's motion.

THE COURT: All right, thank you.

So I see in the caption of the complaint that Jose Sone Martinez is described as true name unknown. So we know this is a real person because he brought lawsuits and was deposed at some point, right?

MR. JOHNSTON: There was in fact a trial. We know he's a real person. There's been various permutations of the name that have been seen and covering bases is why that moniker was used.

THE COURT: Okay, and the -- but it seems like there were addresses given for this individual. And when the process server went and inquired of the people there at those addresses, the process server was told we don't know who that is. So those are likely not real or accurate addresses for this individual, right?

MR. JOHNSTON: That's correct. The first additional address we were given is out in Connecticut, which turned out to be an apartment building wherein we were not given an apartment number, but we did speak with or I should say the process server spoke with the manager of the building. He had no idea who this person was.

Within a few days when we reported this back, we were

then given an address in Brooklyn. And we went to Brooklyn and the person who was living there said he had no idea who he was.

THE COURT: And the process server didn't have a photograph or something to say --

MR. JOHNSTON: I believe he did.

THE COURT: Oh, he --

MR. JOHNSTON: He did have a photograph.

THE COURT: Okay.

MR. JOHNSTON: He showed it to the manager. They discussed his name. He didn't know who he was.

THE COURT: Got it. And so, I understand the Defendants' arguments about conflict, but it seems like the Liakas Law firm has some information about this individual. There has been suggestion by Ms. Madigan that service could be proffered by email or social media. So can you address those alternative methods?

MR. JOHNSTON: Yes, I can. If that is what the Court would like us to do, then we'll of course follow through with that.

It would appear, however, a few things. One, it appears a multitude of his social media, once the trial has occurred and this case started, have been shut down as well as by publication, we're not sure where we would have to publicate -- or publish this information given we've been given addresses in two different states that both turned out to be

wrong.

And from all appearances, there's only one set of people who have been able to successfully contact this person. And that's Liakas Law, right?

THE COURT: So it -- but also it seems that if that's the case, getting accurate information from Liakas Law as to an email address and a phone number where an email could be sent or the service could be by email and also could be by text messaging, that might work, right?

MR. JOHNSTON: If we were given an email address from Liakas Law and the Court issued an order that service to that email address was sufficient service, I think we would all be happy with that outcome.

THE COURT: Okay. And Ms. Madigan, has -- is that possible? Can your client provide an accurate up-to-date email address from Mr. Sone Martinez as well as the phone number for a text?

MS. MADIGAN: Your Honor, all we can do at this point is go back and check with our client, who would have to try to reach out to Mr. Martinez and get that information and get his consent to share it. So we're happy to attempt to do that with a court order.

THE COURT: Okay, and absent consent, couldn't they provide it any way as a way to contact this individual?

MS. MADIGAN: So there is case law in the -- in New

York coming from the Court of Appeals that holds that the information such as contact information in a client's file is privileged information. That's a Matter of Jacqueline F. (phonetic) and --

THE COURT: Okay, no, you don't need to give me the cite.

MS. MADIGAN: Okay.

THE COURT: I hear you on it.

MS. MADIGAN: Yes, he would need his consent.

THE COURT: Right, I'm just trying to get -- cut through this.

MS. MADIGAN: Of course.

THE COURT: And it seems that your clients are in fact in touch with this individual, whatever his true name is, wherever he may live.

And so, if Mr. Sone Martinez does give consent and then that email address and telephone number are provided and the summons can be served through those means as an appropriate way of serving him, and it works, so to speak, great.

If he doesn't consent, I would be concerned about how he can be served because by that point, it will start to look like he's evading service. And then, there can be other measures taken to effectuate that service.

So, hopefully, he gives consent, but I'm just saying that that wouldn't -- the law doesn't provide for people to

actively evade service.

MS. MADIGAN: Understood, Your Honor.

THE COURT: So I'm just foreshadowing the possibility that if consent is withheld, that there may be other avenues and other consequences and maybe another motion or another hearing and further process and further attorneys' fees and all those kinds of things.

So -- but I'm willing to go this path because I think that the forcing the Liakas Law firm to accept service when his -- when the client has not indicated that they are -- have the agency to do that is problematic.

But if they have access to information, as it seems like they do, then I think that's the better way to go at this stage, okay?

MR. JOHNSTON: Very good, thank you.

THE COURT: So in -- and I get the publication's problematic, where people don't read things anymore unless it later comes to pass that there are places online, for example, that it could be published and Mr. Sone Martinez can be presumed to see it.

But let's start with the email and text. And then, if you learn of social media, Mr. Johnston, you can also propose that or you can attempt service that way and then come back to the Court and let the Court know, ask the Court if that's proper.

Okay, so I think I will direct you, Ms. Madigan, to speak to your clients to get a good email address for this individual as well as a phone number or phone numbers plural for service by text messaging.

And then, I will permit that as a means of -- alternative means of service. And then, we'll take it from there.

MR. JOHNSTON: Your Honor, if I may, would it make sense to have that initial part of the order as you just stated and then in the alternative, should consent be withheld permitting service upon his Facebook because we do have an -- a web page for his Facebook.

It's since been basically wiped, but we know that that's his Facebook. So, to possibly read that, you know, if consent is given, then X. If it is not given, then permission is granted to serve on a particular -- his Facebook?

THE COURT: Well, I'm hesitant to allow that at this stage because I don't know enough information about the Facebook page.

MR. JOHNSTON: Understood.

THE COURT: So --

MR. JOHNSTON: I was just trying to keep us all from having to potentially come back.

THE COURT: I understand. So let's do the email and text. Do you -- can anybody think of any other thing now that

we can ask for in terms of information, Mr. Johnston?

MR. JOHNSTON: I think email would be probably best way --

THE COURT: Yes.

MR. JOHNSTON: -- versus texting. Beyond that, no, I don't imagine --

THE COURT: Okay.

MR. JOHNSTON: -- he has a fax machine.

THE COURT: So I'll say email and phone number for texting purposes or other social media addresses for texting purposes and as many as the Liakas law firm has to share, so that we can -- you can cover all bases through those means.

So I'll say email, addresses plural, text message, I don't -- phone numbers for text messaging purposes, and then information on other social media, but not social media, communications platforms for other means of texting like WhatsApp or Facebook Messenger, those kinds of things. And so, the Liakas law firm will be requested to provide as much as they have.

MS. MADIGAN: Yes, and with that being said, Your Honor, we just do want to note that the trial in the underlying case with Mr. Martinez has concluded, so our clients are not necessarily in active communication with him, but as your ordering, we will go back and do our best.

THE COURT: Right. The best information they have.

MS. MADIGAN: Yes.

THE COURT: And if they have been in communication with him recently, they should try again to contact him to get the consent.

MS. MADIGAN: Understood.

MR. JOHNSTON: I just note there was a post trial motion practice that took place as well. And second, I just wanted to correct the record, because I imagine the transcript will show up at some point.

I just want to be clear that the 12 RICOs referenced as brought by us is in fact brought by 7 different separate distinct independent plaintiffs. So I just wanted to clear up the record on that issue earlier. Thank you.

THE COURT: As to the representation that there were 12 other RICO cases? You're -- how many has your client brought?

MR. JOHNSTON: Greater New York has brought two.

THE COURT: I see.

MS. MADIGAN: They're all Willis Law Group clients, Your Honor.

THE COURT: I'm sorry?

MS. MADIGAN: They're all Willis Law Group clients, Your Honor.

THE COURT: Oh. Okay, but they're different insurance companies?

MR. JOHNSTON: As well as facts, yes.

THE COURT: Right, okay. And that also explains why they'd be handled by different judges, because they're all different cases with different parties, even if they share similarities and indeed may be represented by the same law firms. So they're all being handled as separate and independent cases.

All right, so I'll put an order in directing -- permitting service by email and text messaging. And I will direct Defense counsel to talk to their clients to get the email addresses and telephone numbers and other messaging platform information for Jose Sone Martinez, so that the service can be effectuated if -- and with his consent.

And then, if there is a problem with any of this along the way at any point of this, then Mr. Johnston, you can file another motion letting the Court know what the problem is.

And if you have an alternative like Facebook publication, you can propose that with details. And then, I'll consider it in light of what has happened up to that point.

MR. JOHNSTON: Thank you very much.

THE COURT: And so, we'll just take it one step at a time in seeing how it goes. Yes.

MS. MADIGAN: Thank you, Your Honor. And I just wanted to ask whether you had any questions for our clients as they've been directed to appear and we noticed that the

Plaintiff's client is not present.

THE COURT: Yes, well, I wanted them here to -- because we had issues about the information. I don't want to put them under oath when asking them questions, but I wanted them to hear discussion. I wanted them to be available to you to answer questions to the extent that I had them and you couldn't answer them.

And so, if there's anything -- if there's anything they would like to ask or have you ask, I'm open to hearing that as well, but that was the purpose of their being here.

MS. MADIGAN: Understood. We're happy with how things are. And thank you for permitting the argument.

THE COURT: Okay, great, thank you.

MR. JOHNSTON: To clarify, my office did reach out to Chambers yesterday to confirm their representative from GNY did not need to appear.

THE COURT: Yes.

MS. MADIGAN: We were unaware.

THE COURT: Yes, okay, and that was the reason. I know, Ms. Madigan, that you had tried to get clarification and I apologize if we weren't able to get that information to you.

MS. MADIGAN: No problem, Your Honor.

THE COURT: But thank you very much. You did a fine job with on the oral argument. Thank you.

MS. MADIGAN: Thank you.

MR. CATTERSON: Thank you, Judge.

MS. MADIGAN: Thank you.

MR. CATTERSON: Have a good afternoon.

THE COURT: You, too.

(Proceedings concluded at 11:49 a.m.)

**CERTIFICATE**

I, Chris Hwang, court approved transcriber, certify that the foregoing is a correct transcript from the official electronic sound recording of the proceedings in the above-entitled matter.

/s/ Chris Hwang ____________________  July 1, 2026

Chris Hwang  Date

Court Reporter