# EXHIBIT B

2026 WL 2364217
Only the Westlaw citation is currently available.
United States District Court, E.D. New York.

UBER TECHNOLOGIES, INC., Plaintiff,
v.
WINGATE, RUSSOTTI, SHAPIRO, MOSES and HALPERIN, LLP, et al., Defendants.

25-CV-0522 (OEM) (VMS)
|
Filed 08/14/2026

**MEMORANDUM AND ORDER**

ORELIA E. MERCHANT United States District Judge

***1** On January 30, 2025, Plaintiff Uber Technologies, Inc. ("Uber") commenced this civil action against Wingate, Russotti, Shapiro, Moses and Halperin, LLP and Jay Wechsler ("Wingate Defendants"), Banilov and Associates, P.C., Nick Banilov ("Banilov"), and Igor Tarasov ("Tarasov") (collectively, "Banilov Defendants"), the Law office of Dominick W. Lavelle d/b/a the Lavelle Law Firm and Emily K. Lavelle ("Lavelle") (collectively, "Lavelle Defendants") (Wingate Defendants, Banilov Defendants, and Lavelle Defendants collectively, "Law Firm Defendants"), Michael Gerling ("Gerling") and the Gerling Institute, ("Gerling Defendants"), Leonid Reyfman ("Reyfman") and Pain Physicians NY PLLC ("Pain Physicians NY") (collectively, "Reyfman Defendants") (Gerling Defendants and Reyfman Defendants collectively, "Doctor Defendants") (Law Firm Defendants and Doctor Defendants, collectively "Defendants"). *See generally* Complaint, Dkt. 1 ("Complaint" or "Compl."); Amended Complaint, Dkt. 68 ("Amended Complaint" or "Am. Compl."). Uber alleges that Defendants engaged in a fraudulent scheme in violation of the Racketeer Influenced and Corrupt Organizations Act, 8 U.S.C. §§ 1961-1968 ("RICO").

Before the Court are Defendants' fully briefed motions to dismiss the Amended Complaint.[1] For the following reasons, Defendants' motions are granted, and the Amended Complaint is dismissed.

**BACKGROUND**[2]

**A. New York's No-Fault Insurance Law**

***2** Pursuant to New York's "No-Fault Insurance Law," a plaintiff cannot recover in excess of their "basic economic loss" or "non-economic damages from a motor vehicle accident unless he sustains a 'serious injury.' " *Smith v. Gray*, 21-2035-cv, 2022 WL 1418973, at *1 (2d Cir. May 5, 2022); N.Y. Ins. Law § 5104(a); *see Rosa v. Allstate Ins.*, 981 F.2d 669, 676 n.15 (2d Cir. 1992); *Yong Qin Luo v. Mikel*, 625 F.3d 772, 776 (2d Cir. 2010) (per curiam); *Allen v. Brooks*, 91 Civ. 4247 (TPG), 1993 WL 138830, at *1 (S.D.N.Y. Apr. 26, 1993) ("New York's 'no-fault' insurance law precludes civil suits for non-economic loss except in the case of serious injury." (citing *Licari v. Elliot*, 57 N.Y.2d 230, 455 (1982))); N.Y. Ins. Law § 5104(a).

"Serious injury" is defined as

> a personal injury which results in death; dismemberment; significant disfigurement; a fracture; loss of a fetus; permanent loss of use of a body organ, member, function or system; permanent consequential limitation of use of a body organ or member; significant limitation of use of a body function or system.

N.Y. Ins. Law § 5102(d); *Yong Qin Luo*, 625 F.3d at 776; *Smith*, 2022 WL 1418973, at *1. "Basic economic loss" is defined as "up to fifty thousand dollars per person[,]' compris[ing] ... medical costs, lost earnings, and other reasonable and necessary expenses." *Neary v. Tischler*, 1:22-cv-00728, 2023 WL 4561314, at *3 (W.D.N.Y. July 17, 2023) (alteration in original) (quoting N.Y. Ins. Law § 5102(a)).

**B. Alleged Fraud and Bribery**

Uber alleges that Law Firm Defendants recruited passengers involved in "purported or actual minor vehicle collisions" and referred them to Doctor Defendants. Am. Compl. ¶¶ 1, 20. Law Firm Defendants then paid, directly or indirectly, "excessive and/or above-market compensation" to induce Doctor Defendants to "provid[e] false diagnoses, medically unnecessary treatments ... and false statements and testimony regarding causation and medical necessity" and to "manufacture evidence" to support the passengers' claim of "serious injury." *Id.* ¶¶ 26, 28. In return, Doctor Defendants "understood and agreed" that "Law Firm Defendants would continue to funnel patients to ... Doctors Defendants' offices." *Id.* ¶ 27.

Uber contends that, in reality, the passengers recruited by Law Firm Defendants and referred to the Doctor Defendants were "uninjured or only lightly injured," but by using false evidence to conjure serious injury, the passengers could escape the bar on non-economic damages under the New York No-Fault Insurance Law and "fraudulently induce larger settlements" from Uber. *Id.* ¶¶ 28, 31-33. Uber alleges that the Law Firm Defendants initiated litigation using Doctor Defendants' causation statements to assert that the passengers were seriously injured. *See id.* ¶¶ 28, 31-33. This scheme was allegedly "employed in numerous cases against Uber and others." *Id.* ¶ 34. Specifically, by way of example, Uber provides five state-court cases in which it was named as a defendant. *See id.* ¶¶ 64, 91, 109, 128, 139. Uber further alleges Defendants engaged in similar schemes in twelve other instances. *See id.* ¶¶ 141-276.

Uber alleges that the payments to Doctor Defendants violated the New York Penal Law Sections 215.00 and 215.05 for bribery, and Defendants' provision of the manufactured evidence and causation statements violated 18 U.S.C. § 1343, which prohibits wire fraud and, in some cases, 18 U.S.C. § 1341, which prohibits mail fraud. *See id.* ¶ 34.

## PROCEDURAL HISTORY

***3** On January 30, 2025, Uber filed a complaint against Defendants. *See* Compl. On March 31, 2025, Defendants each filed letter motions seeking a pre-motion conference in anticipation of motions to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6). *See* Banilov Defendants' Letter to the Court (Mar. 31, 2025), Dkt. 46; Letter from Reyfman Defendants to the Court (Mar. 31, 2025), Dkt. 47; Wingate Defendants' Letter to the Court (Mar. 31, 2025), Dkt. 48; Gerling Defendants' Letter to the Court (Mar. 31, 2025), Dkt. 49. On April 21, 2025, Uber filed its consolidated response. Uber's Letter to the Court (Apr. 21, 2025), Dkt. 52. On April 22, 2025, the Court denied the motions and set a briefing schedule for the anticipated motions to dismiss. *See* Order, dated Apr. 22, 2025. On June 18, 2025, the Court granted Wingate Defendants' motion to stay discovery. *See* Order, dated June 18, 2025.

On July 23, 2025, Uber filed an Amended Complaint. *See* Am. Compl. Subsequently, the Court revised the briefing schedule for the anticipated motions to dismiss on consent. *See* Order, dated Aug. 1, 2025.

On December 12, 2025, the parties filed their fully briefed motions to dismiss. *See generally* Banilov Mot.; Gerling Mot.; Wingate Mot.; Reyfman Mot.; Pl.'s Opp'n; Banilov Reply; Gerling Reply; Wingate Reply; Reyfman Reply.

On December 23, 2025, Uber requested oral argument on Defendants' motions, Request for Oral Argument, Dkt. 103, which the Court granted on December 29, 2025, *see* Order, dated Dec. 29, 2025. On February 26, 2026, the Court held oral argument on the motions to dismiss and reserved decision on the motions. *See* Minute Entry, dated Feb. 26, 2026.

On May 12, 2026, Uber filed a letter advising the Court of supplemental authority, *see* Supplemental Authority: Decision denying defendants' motion to dismiss in *Uber Technologies, Inc. v. Simon & Simon P.C.*, No. 25-cv-5365 (E.D. Pa.), Dkt. 110, to which Defendants responded, Banilov Defendants' Letter to the Court (May 18, 2026), Dkt. 111; Wingate Defendants' Letter to the Court (May 18, 2026), Dkt. 112. On July 28, 2026, Uber filed a letter advising the Court of additional supplemental authority. *See* Supplemental Authority: Decision denying defendants' motion to dismiss in *Uber Technologies, Inc. v. Downtown LA Law Group LLP, et al* No. 2:25-cv-06612 (C.D.CA), Dkt. 117.

## LEGAL STANDARD

To survive a motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6) ("Rule 12(b)(6)"), "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.' " *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* (quoting *Twombly*, 550 U.S. at 556). A court must review a motion to dismiss under Rule 12(b)(6) by "accepting all factual allegations in the complaint as true, and drawing all reasonable inferences in the plaintiff's favor." *Kim v. Kimm*, 884 F.3d 98, 103 (2d Cir. 2018) (quoting *Chambers v. Time Warner, Inc.*, 282 F.3d 147, 152 (2d Cir. 2002)). Nevertheless, a court need not assume that legal conclusions set out in a complaint are true. *See Petroff Amshen LLP v. Alfa Rehab PT PC*, 19-CV-1861 (MKB) (RML), 2021 WL 960394, at *6 (E.D.N.Y. Mar. 15, 2021), *aff'd*, 21-847, 2022 WL 480475 (2d Cir. Feb. 17, 2022).

For RICO claims in particular, to survive a Rule 12(b)(6) motion to dismiss, "a plaintiff must offer 'more than labels and conclusions' in pleading the non-fraud elements" and must meet the heightened particularity requirement of Federal Rule of Civil Procedure 9(b) ("Rule 9(b)") when pleading "predicate acts sounding in fraud or mistake." *D. Penguin Bros. v. City Nat. Bank*, 587 F. App'x 663, 666 (2d Cir. 2014) (quoting *Twombly*, 550 U.S. at 555).

## DISCUSSION

***4** Uber asserts six causes of action against Defendants: (1) violation of 18 U.S.C. § 1962(c) through association-in-fact enterprise ("Count I"), Am. Compl. ¶¶ 313-18; (2) violation of 18 U.S.C. § 1962(c) through the "Gerling Institute Enterprise" ("Count II"), *id.* ¶¶ 319-25; (3) violation of 18 U.S.C. § 1962(c) through the "Pain Physicians NY Enterprise" ("Count III"), *id.* ¶¶ 326-32; (4) violation of 18 U.S.C. § 1962(d) ("Count IV"), *id.* ¶¶ 333-38; (5) violation of New York Judiciary Law § 487 as to Law Firm Defendants ("Count V"), *id.* ¶¶ 339-43; and (6) unjust enrichment as to Doctor Defendants ("Count VI"), *id.* ¶¶ 344-47.

Defendants move to dismiss the Amended Complaint on five grounds: (1) that Uber fails to allege a RICO claim; (2) that Uber fails to allege a RICO conspiracy; (3) that Uber fails to allege a claim under New York's Judiciary Law; (4) that Uber's unjust enrichment claim is duplicative of its fraud claims; and (5) that the *Noerr-Pennington* doctrine requires dismissal. *See generally* Wingate Mem.; Banilov Mem.; Gerling Mem.; Reyfman Mem.

"To establish a civil RICO claim, a plaintiff must allege '(1) conduct, (2) of an enterprise, (3) through a pattern (4) of racketeering activity,' as well as 'injury to business or property as a result of the RICO violation.' " *Lundy v. Catholic Health Sys. of Long Island Inc.*, 711 F.3d 106, 119 (2d Cir. 2013) (quoting *Anatian v. Coutts Bank (Switz.) Ltd.*, 193 F.3d 85, 88 (2d Cir. 1999)). If successful, a plaintiff is entitled to "threefold the damages he sustains and the cost of the suit, including a reasonable attorney's fee." 18 U.S.C. § 1964(c). Here, Uber fails to plausibly allege a violation of 18 U.S.C. § 1962(c) because it fails to allege the elements of enterprise and conduct; it fails to plausibly allege a violation of 18 U.S.C. § 1962(d) because it fails to allege a conspiracy; and it fails to plausibly allege injury.

### A. Violation of 18 U.S.C. § 1962(c)

Civil "RICO creates a private cause of action for '[a]ny person injured in his business or property by reason of a violation of section 1962.' " *Empire Merchs., LLC v. Reliable Churchill LLLP*, 902 F.3d 132, 139 (2d Cir. 2018) (alteration in original) (quoting 18 U.S.C. § 1964(c)). 18 U.S.C. § 1962(c) prohibits "any person employed by or associated with any enterprise" affecting foreign or interstate commerce from participating "in the conduct of such enterprise's affairs through a pattern of racketeering activity or collection of unlawful debt."

#### 1. Enterprise

Defendants argue that Uber does not allege a RICO enterprise. Wingate Mem. at 28-34; Reyfman Mem. at 20-23; Gerling Mem. at 25-28; Banilov Mem. at 30. Uber responds that it alleges three enterprises, each of which meets the requirements of a RICO enterprise. Pl.'s Opp'n at 50. Uber alleges in Count I that Wingate Defendants, Banilov Defendants, and Doctor Defendants constituted an association-in-fact enterprise, Am. Compl. ¶¶ 313-18, in Count II that Gerling, Reyfman, and Law Firm Defendants constituted the "Gerling Institute Enterprise," *id.* ¶¶ 319-25, and in Count III that Gerling, Reyfman, and Law Firm Defendants constituted the "Pain Physicians NY Enterprise," *id.* ¶¶ 326-332.

##### a. Association-in-Fact Enterprise

An enterprise includes "any individual, partnership, corporation, association, or other legal entity, and any union or group of individuals associated in fact although not a legal entity." *First Cap. Asset Mgmt. v. Satinwood, Inc.*, 385 F.3d 159, 173 (2d Cir. 2004) (quoting *Bankers Tr. Co. v. Rhoades*, 741 F.2d 511, 515 (2d Cir. 1984)); 18 U.S.C. § 1961(4). An " 'association-in-fact' enterprise must have at least three structural features: a purpose, relationships among those associated with the enterprise, and longevity sufficient to permit these associates to pursue the enterprise's purpose."[3] *Boyle v. United States*, 556 U.S. 938, 946 (2009).

###### i. Common Purpose

***5** Beginning with common purpose, Defendants argue that Uber fails to allege that they acted "for the common benefit

of the enterprise, as opposed to their own self-interests in providing legal services or medical care." Wingate Mem. at 31. Uber responds that it sufficiently alleges that Wingate Defendants, Banilov Defendants, and Doctor Defendants acted with a common purpose "to carry out their bribery and fraud scheme targeting Uber and other victims" whereby "the attorneys ensure that the doctors have patients on whose behalf will be paid inflated rates for medically unnecessary treatment" and the doctors "ensure that the lawyers have the false and fraudulent 'evidence' necessary" to inflate their claims. Pl.'s Opp'n at 51-52.

Individuals in an association-in-fact enterprise "must share a common purpose to engage in a particular fraudulent course of conduct and work together to achieve such purposes." *Satinwood*, 385 F.3d at 174 (quoting *First Nationwide Bank v. Gelt Funding Corp.*, 820 F. Supp. 89, 98 (S.D.N.Y. 1993), *aff'd*, 27 F.3d 763 (2d Cir. 1994)). "[D]istrict courts in this Circuit have held that the common purpose element requires that the enterprise's members have had a common intent to violate RICO or to act unlawfully." *Black v. Ganieva*, 619 F. Supp. 3d 309, 331 (S.D.N.Y. 2022), *aff'd*, 22-1524-cv, 2023 WL 2317173 (2d Cir. Mar. 2, 2023). However, where the facts in a complaint "permit only the reasonable inference that [a defendant] engaged in ... ordinary business activities," allegations of common purpose are not plausible. *Zamora v. FIT Int'l Grp.*, 834 F. App'x 622, 626 (2d Cir. 2020).

Here, Uber's allegations do not permit an inference that the Wingate Defendants, Banilov Defendants, and Doctor Defendants acted with a common purpose to bribe each other or defraud Uber. Uber alleges that Wingate Defendants, Banilov Defendants, and Doctor Defendants pursued a common purpose to "extract financial rewards from pursuit of fraudulent claims against Uber and others—whether through the lawyers' recovery of litigation settlements or the doctors' receipt of inflated medical payments." Am. Compl. ¶ 299; *see id.* ¶ 33. The Amended Complaint makes conclusory statements that the purported payments were fraudulent, alleging "above-market and excessive compensation to Reyfman and Gerling, directly or indirectly,"[4] and that the Doctor Defendants received third-party litigation funding to be paid through a lien on the passengers' recoveries. *See, e.g.*, *id.* ¶¶ 71, 148, 197.

At best, these facts show that the Doctor Defendants received benefits incidental to an ordinary and lawful client-referral relationship and third-party litigation financing of medical treatment, but they do not permit a plausible inference that Doctor Defendants shared the common purpose to engage in fraudulent conduct to extract claims from Uber and others. *See Zamora*, 834 F. App'x at 625-26 (reasoning that all the amended complaint plausibly asserted was that the defendant entered into a routine contractual combination with the remaining defendants, which did not permit an inference that it shared in their illicit purpose); *see also Black*, 619 F. Supp. 3d at 331 (collecting cases and explaining that "[a] separate purpose or objective that does not involve illegal conduct will not do" to satisfy the common purpose element); *D. Penguin Bros.*, 587 F. App'x at 668 (reasoning that the complaint failed to allege that the defendants acted on behalf of the enterprise as opposed to on behalf of themselves); *Roosevelt Rd. Re, Ltd. v. Haggar*, 24-CV-1549 (NG)(CHK), 2026 WL 682192, at *15 (E.D.N.Y. Mar. 11, 2026) (determining that the complaint did not allege coordination because "the only indication of any interaction between [the medical provider defendants] suggest[s] nothing more than routine medical referrals from one provider to another"). Accordingly, Uber has failed to allege that the Doctor Defendants acted for the common purpose of the enterprise, but rather that they acted for their own business interests.

***6** Further, Uber does not plausibly allege that the Wingate Defendants or Banilov Defendants shared a common purpose. Uber asserts that the Banilov Defendants referred the passengers' cases to Wingate Defendants and that they had fee-sharing arrangements in some of those cases. *See, e.g.*, Am. Compl. ¶¶ 63, 123, 161, 242. However, these alleged arrangements based on an expectation of reciprocity do not lead to a plausible inference that there "was anything illegal or improper about this referral arrangement." *See Roosevelt Rd.*, 2026 WL 682192, at *15. As for Wingate Defendants' and Banilov Defendants' referrals of passengers to the Doctor Defendants and receipt of causation statements, they fail for the same reasons that the Doctor Defendants' receipt of that compensation fails to allege common purpose; nothing suggests anything more than routine medical referrals and medical declarations. *See id.* Consequently, Uber has also failed to allege that Wingate Defendants or Banilov Defendants acted for the common purpose of the enterprise, but rather that they acted for their own business interests.

Additionally, notwithstanding the hierarchy, organization, and activities that Uber alleges Wingate Defendants, Banilov Defendants, and Doctor Defendants engaged in, Uber still fails to allege a common purpose. Uber alleges that "[t]he Wingate Defendants, the Banilov Defendants, and the Doctor Defendants shared long-standing relationships with

each other, acted for each other's common benefit, and depended on one another and their respective activities for such benefit." Am. Compl. ¶ 300. However, beyond this conclusory statement, Uber's factual allegations support only an inference of independent relationships involving different sets of Defendants. Uber alleges at least 17 different schemes involving different amalgamations of different Defendants engaged to allegedly defraud Uber in a variety of ways, and each scheme only involves sub-groups of Defendants, never all Defendants. *See id.* ¶¶ 35-276. Such allegations of "various [d]efendants and subgroups agree[ing] at different times to engage in various fraudulent schemes" does not plausibly support an inference of common purpose. *D'Addario v. D'Addario*, 901 F.3d 80, 101-02 (2d Cir. 2018).

What is more, in 6 of the 17 cases Uber relies on, only one Law Firm Defendant is alleged to have directed passengers to Gerling, without participation from another Law Firm Defendant or Doctor Defendant. *See, e.g.*, Am. Compl. ¶ 146 (Banilov Defendants referred passenger to Gerling); *id.* ¶¶ 202-05 (Wingate Defendants referred passenger to Gerling); *id.* ¶ 228 (Lavelle[5] referred passenger to Gerling); *id.* ¶¶ 245-47 (Banilov Defendants directed passenger's medical treatment and passenger was treated at "Gerling's SpineCare NYC"); *id.* ¶ 264 (either Lavelle Defendants or Wingate Defendants referred passenger to Gerling); *id.* ¶ 274 (Wingate Defendants referred passenger to Gerling). To the extent that Uber alleges Gerling acted as the central figure, these occasions are precisely the parallel conduct the Second Circuit has expressed skepticism towards, *see D'Addario*, 901 F.3d at 101, and district courts have rejected, *see First Nationwide Bank*, 820 F. Supp. at 98; *Dynarex Corp. v. Farrah*, 18 CV 7072 (VB), 2019 WL 2269838, at *3 (S.D.N.Y. May 28, 2019) (finding no association-in-fact where the defendants were involved in "separate—albeit related—schemes" with various participants).

Consequently, Uber fails to allege a common purpose.

### ii. Relationships Among Enterprise Participants

Next, Defendants argue that Uber fails to plausibly allege interpersonal relationships because Uber alleges "a different combination of defendants, a different orchestrating entity, different lawyers and physicians who are not alleged to be part of any scheme, and a different sequence of pattern in which the purported predicate acts took place," which is at best emblematic of a business relationship. *See* Gerling Mem. at 26; *see also* Wingate Mem. at 29-30. Uber responds that it is sufficient to allege that the Wingate Defendants, Banilov Defendants, and Doctor Defendants knew of and participated in the enterprise. *See* Pl.'s Opp'n at 52-53.

***7** A RICO association-in-fact requires "interpersonal relationships," *Boyle*, 556 U.S. at 946, which must connect the "defendants as a whole," *see D'Addario*, 901 F.3d at 101, such that the individuals "function as a continuing *unit*," *United States v. Turkette*, 452 U.S. 576, 583 (1981) (emphasis added). "[A] plaintiff must demonstrate the relationships between the various members and their roles in the purported RICO scheme." *Black*, 619 F. Supp. 3d at 334 (quoting *New York v. United Parcel Serv., Inc.*, 15 Civ. 1136 (KBF), 2016 WL 4203547, at *3 (S.D.N.Y. Aug. 9, 2016). Proof that "several individuals, independently and without coordination, engaged in a pattern of crimes listed as RICO predicates, ... [is] not ... enough to show that the individuals were members of an enterprise." *D'Addario*, 901 F.3d at 101 (2018) (quoting *Boyle* 556 U.S. at 947 n.4).

Uber cannot allege interpersonal relationships because it does not allege a common purpose. This is because, to the extent that Wingate Defendants, Banilov Defendants, and Doctor Defendants share any relationships at all, the only plausible inference is that they shared business relationships through client referrals. Thus, it is only plausible that they were acting "independently and without coordination." *See D'Addario*, 901 F.3d at 101 ("[W]hen each defendant is alleged to have a relationship with a central figure, but the defendants are not all alleged to be connected in some overarching way (such as by 'an agreement to further a single design or purpose'), ... courts have found no RICO association-in-fact."); *Gurung v. Metaquotes Ltd.*, 1:23-cv-06362-OEM-PK, 2024 WL 3849460, at *10 (E.D.N.Y. Aug. 16, 2024) (concluding that the plaintiffs only plausibly alleged business relationships among the defendants, which was insufficient to establish the relationship prong). As such, there is no plausible interpretation that the defendants "all agreed to join forces with each other" to pursue a common goal. *See D'Addario*, 901 F.3d at 101; *First Nationwide Bank*, 820 F. Supp. at 98 (holding that conclusory allegations that disparate parties were associated by virtue of their involvement in the real estate industry were insufficient to sustain a RICO claim); *Cont'l Petrol. Corp. v. Corp. Funding Partners*, 11 Civ. 7801(PAE), 2012 WL 1231775, at *6 (S.D.N.Y. Apr. 12, 2012) (The plaintiffs "fail[ed] to make any concrete factual assertions as to the mechanics of the interactions among defendants, including facts indicating that the disparate

defendants functioned as a unit.”).[6] Consequently, Uber fails to allege relationships among Wingate Defendants, Banilov Defendants, and Doctor Defendants.

***8** Accordingly, Count I is dismissed.

### b. Legal Entity Enterprises

Defendants argue that Uber fails to allege that the Gerling Institute and Pain Physicians NY are legal entity enterprises because it does not plead facts showing a common purpose, there is no connection between the legal entities and multiple acts of alleged racketeering, or that the entities are the nexus of the scheme. *See* Wingate Mem. at 32. Banilov Defendants further argue that Uber does not allege that Lavelle, Tarasov, or Banilov directed the medical practices' activities. *See* Banilov Mem. at 30. Uber responds that its allegations that the Gerling Institute and Pain Physicians NY are legal entities is sufficient “to meet any enterprise requirement.” Pl.'s Opp'n at 50-51.

“[A]ny legal entity may qualify as a RICO enterprise.” *D. Penguin Bros.*, 587 F. App'x at 666-67 (quoting *Satinwood*, 385 F.3d at 173). Because any legal entity qualifies as a RICO enterprise, Uber plausibly alleges that the Gerling Institute and Pain Physicians NY constitute enterprises under RICO. *See* Am. Compl. ¶¶ 13, 15. However, the RICO “person” and the RICO “enterprise” must be distinct. *Riverwoods Chappaqua Corp. v. Marine Midland Bank, N.A.*, 30 F.3d 339, 344 (2d Cir. 1994). Thus, to the extent that Uber names the Gerling Institute and Pain Physicians NY as RICO defendants of the Gerling Institute Enterprise and Pain Physicians NY Enterprise, respectively, they may not be deemed a RICO person and are dismissed as such. *See Sky Med. Supply Inc. v. SCS Support Claims Servs., Inc.*, 17 F. Supp. 3d 207, 223-24 (E.D.N.Y. 2014) (collecting cases).[7]

### 2. Conduct

Next, the Court turns to whether Uber plausibly alleges that Defendants engaged in the conduct of the Gerling Institute Enterprise or Pain Physicians NY Enterprise. Defendants argue that Uber fails to allege that Defendants exercised control over the legal entity enterprises. *See* Wingate Mem. at 30-31, 32-34; Reyfman Mem. at 22-23; Banilov Mem. at 30; Gerling Mem. at 25-28. Uber responds that it sufficiently alleges that Gerling and Reyfman “are quintessential operators and managers” and Law Firm Defendants participated by corruptly referring patients to and bribing Gerling and Reyfman. Pl.'s Opp'n at 54.

***9** In addition to alleging an enterprise, a plaintiff “must also allege that the defendants ‘conduct[ed] or participate[d], directly or indirectly, in the conduct of such enterprise's affairs through a pattern of racketeering activity.’ ” *Satinwood*, 385 F.3d at 175-76 (alterations in original) (quoting 18 U.S.C. § 1962(c)). The Supreme Court has interpreted this statutory language to mean that RICO defendants must have participated in the operation or management of the enterprise. *Reves v. Ernst & Young*, 507 U.S. 170, 185 (1993); *see DeFalco v. Bernas*, 244 F.3d 286, 309 (2d Cir. 2001). The defendants must have “conducted or participated in the conduct of the ‘*enterprise's* affairs,’ not just their *own* affairs.” *Reves*, 507 U.S. at 185. While the operation-and-management test is a “relatively low hurdle for plaintiffs to clear” in this Circuit, *Satinwood*, 385 F.3d at 176, “RICO plaintiffs must plausibly allege that each defendant played ‘*some* part in directing the enterprise's affairs’ if the RICO claim is to survive a motion to dismiss,” *D'Addario*, 901 F.3d at 103 (quoting *Satinwood*, 385 F.3d at 176); *U.S. v. Viola*, 35 F.3d 37, 41 (2d Cir. 1994) (“[W]hile the operation or management test is more restrictive than aiding and abetting liability, it requires less than ‘significant’ control over the enterprise.”). “[A] person may not be held liable merely for taking directions and performing tasks that are ‘necessary and helpful to the enterprise,’ or for providing ‘goods and services that ultimately benefit the enterprise.’ ” *Flexborrow LLC v. TD Auto Finance LLC*, 255 F. Supp. 3d 406, 415 (E.D.N.Y. 2017) (quoting *U.S. Fire Ins. v. United Limousine Serv., Inc.*, 303 F. Supp. 2d 432, 451-52 (S.D.N.Y. 2004)).

### a. Law Firm Defendants

Uber alleges that the Law Firm Defendants operated and managed the Gerling Institute Enterprise and Pain Physicians NY Enterprise by referring passengers to them and coordinating litigation funds for their services. *See* Am. Compl. ¶ 304. Such services are not dissimilar from the provision of professional services such as loans by banks, tax services by accountants, or legal services by attorneys. *See Berry v. Deutsche Bank Tr. Co. Ams.*, 07 Civ. 7634 (WHP), 2008 WL 4694968, at *6 (S.D.N.Y. Oct. 21, 2008) (“Lending money to an enterprise does not establish a role in ‘directing the enterprise[’]s affairs.’ ” (quoting *Reves*,

507 U.S. at 179)), *aff'd*, 378 F. App'x 110 (2d Cir. 2010); *Dep't of Econ. Dev. v. Arthur Andersen & Co. (U.S.A.)*, 924 F. Supp. 449, 466-68 (S.D.N.Y. 1996) (Accountants' fraudulent certification of misleading financial statements in aid of corporation's securities fraud was not participation in operation and management of RICO enterprise.); *Azrielli*, 21 F.3d at 521 (holding that the provision of legal services for fraudulent transaction were not management of RICO enterprise). Uber only plausibly alleges that Defendants were engaged in ordinary business relationships, thus, the Amended Complaint does not plausibly allege that Law Firm Defendants benefitted other than from commonplace fee-sharing arrangements, client referrals, and medical testimony, not bribes. *See Madanes v. Madanes*, 981 F. Supp. 241, 256 (S.D.N.Y. 1997) (finding that the complaint did not allege that the lawyers profited other than through the receipt of ordinary fees for their professional services). Uber's allegations that Law Firm Defendants were engaged in their own affairs, not the affairs of the medical practices, are insufficient to plausibly allege control. *See Reves*, 507 U.S. at 185. Thus, Uber does not plausibly allege Law Firm Defendants' operated and managed the Gerling Institute Enterprise or the Pain Physicians NY Enterprise.

Accordingly, Counts II and III are dismissed as to Law Firm Defendants.

**b. Reyfman and Gerling**

The referral of clients between Gerling and Refyman fails to support an allegation that either doctor exercised operation or management of the other's enterprise. Uber alleges that Reyfman referred two patients to Gerling. Am. Compl. ¶¶ 117, 197. Uber alleges that Gerling referred one patient to Reyfman. *Id.* ¶ 221. Further, Uber alleges that Gerling and Reyfman "regularly performed medically unnecessary surgeries and procedures" at a facility owned and operated by Reyfman and thus, "[a] portion of the above-market fees charged by Gerling" for those procedures were "funneled to Reyfman." *Id.* ¶ 300(d). Uber also alleges that Gerling and Reyfman are equal partners in "a special purpose vehicle" used to operate an ambulatory surgery center. *Id.* Uber does not provide factual allegations to support its assertion that Reyfman somehow profited from the bribes paid to Gerling simply because they share facility space. Realistically, these allegations only support an inference that Gerling and Reyfman were operating their own enterprises. At best, the fact that Reyfman and Gerling referred a few patients to each other and shared a space to conduct procedures permits an inference of assistance to each other's medical practice. This is insufficient to plausibly allege that Gerling conducted the affairs of the Pain Physicians NY Enterprise, or that Reyfman conducted the affairs of the Gerling Institute Enterprise. *See Reves*, 507 U.S. at 185; *Viola*, 35 F.3d at 41 ("[I]t is plain that the simple taking of directions and performance of tasks that are 'necessary or helpful' to the enterprise, without more, is insufficient to bring a defendant within the scope of § 1962(c).").

***10** Furthermore, while Gerling and Reyfman own their respective medical practices, Uber does not allege that Gerling or Reyfman engaged in the racketeering activity through the Gerling Institute Enterprise or the Pain Physicians NY Enterprise, respectively. Gerling and Reyfman both allegedly own their respective practices. Am. Compl. ¶¶ 13, 15. As upper management of their medical practices, Gerling plausibly conducts the affairs of the Gerling Institute Enterprise, and Reyfman plausibly conducts the affairs of the Pain Physicians NY Enterprise. *See Reves*, 507 U.S. at 184; *Elsevier Inc. v. W.H.P.R., Inc.*, 692 F. Supp. 2d 297, 308 (S.D.N.Y. 2010). However, "[a] RICO violation requires a specific relationship between the enterprise and the pattern of racketeering: under § 1962(c), that the enterprise's affairs be conducted 'through' the pattern of racketeering." *D. Penguin Bros.*, 587 F. App'x at 667 (quoting *Satinwood*, 385 F.3d at 174).

Absent from the Amended Complaint is any allegation that any passenger was referred to the Gerling Institute, that any Law Firm Defendant paid for passengers' treatments at the Gerling Institute, or that the Gerling Institute accepted any payments. Rather, the allegations only suggest that passengers were referred, and payments were made to Gerling. *See* Am. Compl. ¶¶ 52, 117, 146, 148, 157, 168, 179, 218, 221, 228, 274. In fact, on at least one occasion, Uber alleges that Banilov Defendants paid for Gerling's surgery, making the payment to "Gerling's medical office, NY Orthopedics, PC," which is allegedly owned and controlled by Gerling, but NY Orthopedics, PC is neither a defendant, nor an alleged enterprise; thus, this allegation cannot support an inference that Gerling engaged in racketeering through the Gerling Institute Enterprise. Am. Compl. ¶ 155; *see id.* ¶ 288; *see also id.* ¶ 247 (alleging that the passenger had an appointment at Gerling's SpineCare NYC"). Uber alleges one instance in which a passenger was referred to Gerling and the Lavelle Defendants paid Gerling for her treatment, after which Gerling provided an affirmation that she was treated

"through Gerling Institute." *Id.* ¶¶ 84, 87, 95. However, there is no allegation that the Gerling Institute itself was used to engage in the surgery or the allegedly false affirmation, which thereby fails to establish a nexus. *See D. Penguin Bros.*, 587 F. App'x at 667 (reasoning that the director's invocation of the legal entity enterprise's name did not in and of itself create an adequate nexus). Uber also alleges that the Gerling Institute maintains two sets of books to distinguish between legitimate business for patients who pay using insurance, which uses billing codes, and illegitimate business, which does not use billing codes and is used to submit invoices to no-fault insurance carriers, attorneys, or litigation funders. Am. Compl. ¶ 286. But the use of separate books alone does not suggest illegitimacy and Uber also does not provide facts supporting its assertion that the two separate books were used to distinguish between legitimate and illegitimate business.

Similarly, the Amended Complaint alleges that on three occasions, a passenger was referred to Reyfman and treated at Pain Physicians NY, *see* Am. Compl. ¶¶ 45-48; 102-03, 211, and all remaining alleged referrals were to Reyfman, not Pain Physicians NY, *see id.* ¶¶ 132, 221, 294. However, Uber does not allege how Reyfman leveraged the structure or operations of Pain Physicians NY to treat these patients, nor that Pain Physicians NY received any of the funds. Thus, there is no nexus between Reyfman's alleged fraud and bribery and the Pain Physicians NY enterprise. *See D. Penguin Bros.*, 587 F. App'x at 667.

Ultimately, even construing these allegations in Uber's favor, there is little explanation as to how the Gerling Institute or Pain Physicians NY was structured, operated, or directed such that either Gerling or Reyfman leveraged their respective enterprise to take bribes, misdiagnose passengers, or produce false causation statements. As such, Uber has not adequately pleaded a plausible nexus between the receipt of bribes, delivery of medical treatment, or creation of false or misleading medical records or testimony and the Gerling Institute Enterprise and Pain Physicians NY Enterprise.

***11** Accordingly, Counts II and III are dismissed as to Doctor Defendants.

### B. Violation of 18 U.S.C. § 1962(d)

Defendants argue that Uber fails to plead conspiracy under 18 U.S.C. § 1962(d). *See* Banilov Mem. at 31; Wingate Mem. at 34; Reyfman Mem. at 29-32; Gerling Mem. at 30-32. Uber responds that it has adequately alleged "Defendants' express agreements to share fees and make referrals in exchange for further predicate acts," thereby showing a RICO conspiracy. *See* Pl.'s Opp'n at 82-84.

A RICO enterprise is not a required element of a RICO conspiracy claim. *See City of New York v. Bello*, 579 F. App'x 15, 17 (2d Cir. 2014). However, "the core of a RICO civil conspiracy is an agreement to commit predicate acts, [so] a RICO civil conspiracy complaint, at the very least, must allege specifically such an agreement." *Hecht v. Com. Clearing House, Inc.*, 897 F.2d 21, 25 (2d Cir. 1990). Such an agreement "should state with specificity what the agreement was, who entered into the agreement, when the agreement commenced, and what actions were taken in furtherance of it." *FD Prop. Holding, Inc. v. U.S. Traffic Corp.*, 206 F. Supp. 2d 362, 373 (E.D.N.Y. 2002) (quoting Arthur F. Mathews, *et al.*, Civil Rico Litigation § 9.07 (2d ed. 1992)); *cf. 4 K&D Corp. v. Concierge Auctions, LLC*, 2 F. Supp. 3d 525, 545 (S.D.N.Y. 2014) (dismissing 18 U.S.C. § 1962(d) claim because the plaintiffs did not allege any facts specifically showing that the defendants had a meeting of the minds). Furthermore, where a plaintiff relies on the same factual predicate for its substantive RICO claim as its RICO conspiracy claim and fails to state a claim for a substantive RICO violation, it is fatal to its RICO conspiracy claim under 18 U.S.C. § 1962(d). *Zamora*, 834 F. App'x at 626 (dismissing conspiracy claim after finding that the plaintiff failed to allege a common purpose).

Here, Uber's conspiracy allegations arise out of the same factual premise as its substantive RICO claim; that Law Firm Defendants and Doctor Defendants agreed to share fees and make client referrals. *See, e.g.*, Am. Compl. ¶¶ 63, 72, 87, 90-91, 103, 145-46, 148, 154-56, 161-62, 278-95. As explained above, Uber only plausibly alleges various agreements between Defendants to refer patients and cases, not agreements to engage in predicate acts. Because these allegations do not suffice to allege a substantive RICO violation, Uber consequently fails to allege a meeting of the minds sufficient to plead a conspiracy. *See Black Radio Network, Inc. v. NYNEX Corp.*, 44 F. Supp. 2d 565, 581 (S.D.N.Y.1999) ("To state a claim under § 1962(d) plaintiffs must allege facts that support a conclusion that defendants consciously agreed to commit predicate acts.").

Accordingly, Uber fails to state a claim for RICO conspiracy, and Count IV is dismissed.

### C. Injury

Defendants argue that "Uber's claims are unripe because its damages are not clear and definite." *See* Banilov Mem. at 15;

 © 2026 Thomson Reuters. No claim to original U.S. Government Works. 

Reyfman Mem. at 14-17. Uber responds that its claims are ripe because Defendants "seek to take advantage of a narrow restriction on the use of RICO to collect contractual debts" and they rely on cases that are not analogous here. Pl.'s Opp'n at 36-38.

***12** " 'A RICO plaintiff "only has standing if, and can only recover to the extent that, he has been injured in his business or property by the conduct constituting the [RICO] violation[,]" and only when his or her "actual loss becomes clear and definite.' "" *Denney v. Deutsche Bank AG*, 443 F.3d 253, 266 (2d Cir. 2006) (alteration in original) (quoting *First Nationwide Bank v. Gelt Funding Corp.*, 27 F.3d 763, 767-69 (2d Cir. 1994)). "Under this rule, a claim will be dismissed for lack of statutory standing 'where the extent of damages are still unknown, [and therefore] a RICO injury remains speculative and unprovable.' " *Town of Islip v. Datre*, 245 F. Supp. 3d 397, 409 (E.D.N.Y. 2017) (alteration in original) (quoting *DLJ Mortg. Capital, Inc. v. Kontogiannis*, 726 F. Supp. 2d 225, 237 (E.D.N.Y. 2010)). "RICO injury is speculative[,] when *contractual or other legal remedies* remain which hold out a real possibility that the debt, and therefore the injury, may be eliminated or significantly reduced." *Kontogiannis*, 726 F. Supp. 2d at 237 (alteration in original) (emphasis in original) (quoting *In re Merrill Lynch Ltd. P'ships Litig.*, 154 F.3d 56, 59 (2d Cir. 1998)). Indeed, where contingencies remain that would abate a loss, the claims are unripe for suit. *See Motorola Credit Corp. v. Uzan*, 322 F.3d 130, 136 (2d Cir. 2003) (per curiam).

Uber fails to assert a clear and definite injury. Uber alleges that it has "incurred substantial expense in defending these false or inflated claims, including responding to claims that would otherwise be barred by operation of New York State Insurance Law § 5104." Am. Compl. ¶ 296. However, out of the 5 cases Uber alleges that Defendants have prosecuted against it, 3 cases are still pending. *See id.* ¶¶ 96, 113, 139. Uber was dismissed from one case and settled another. *See id.* ¶¶ 78, 128. The extent of the costs Uber has expended in defending itself are contingent upon the outcome of the pending state-court proceedings.[8] It cannot yet be determined whether Uber will prevail in the pending cases, nor what remedies may be available to it to reduce its costs, such as seeking costs or sanctions through cross-claims and counterclaims. Thus, the actual amount of its injury is not yet provable, and Uber does not yet have standing under RICO. *See Sky Med. Supply*, 17 F. Supp. 3d at 231-33 (concluding that the plaintiff's damages were not clear and definite as long as the state-court claims forming the basis for the plaintiff's RICO claims were still pending); *see Stochastic Decisions, Inc. v. DiDomenico*, 995 F.2d 1158, 1166 (2d Cir. 1993) (reasoning that a plaintiff claiming a debt is uncollectable can only pursue RICO damages after his contractual rights to payment have been frustrated), *cert. denied*, 510 U.S. 945 (1993); *Bankers Tr. Co. v. Rhoades*, 859 F.2d 1096, 1106 (2d Cir. 1988) (dismissing claim for lost-debt injury as speculative and unprovable because the amount of damages to be recovered was unknown and could decrease the plaintiff's injury if recovered in bankruptcy court), *cert denied sub nom. Soifer v. Bankers Tr. Co.*, 490 U.S. 1007 (1989); *Uzan*, 322 F.3d at 137 (remanding RICO claims for dismissal where there were pending arbitrations that may have an influence on the amount of loss); *D'Addario*, 901 F.3d at 80 (dismissing RICO claims as unripe which were contingent on ongoing probate proceedings); *First Nationwide Bank*, 27 F.3d at 768-69 (affirming dismissal of RICO claims as unripe because the plaintiff had loans that were not yet foreclosed and the loss was therefore indeterminate). As a result, Uber's RICO claims are unripe.

***13** Uber suggests that RICO ripeness is limited to contractual debt collection cases. *See* Pl.'s Opp'n at 36. However, the Second Circuit has explained that the ripeness doctrine extends to non-contractual remedies. *See Harbinger Cap. Partners Master Fund I, Ltd. v. Wachovia Cap. Mkts., LLC*, 347 F. App'x 711, 713 (2d Cir. 2009). Similarly, other courts have applied the RICO ripeness doctrine beyond the secured lending context. *See Town of Islip*, 245 F. Supp. 3d at 412; *Sky Med. Supply*, 17 F. Supp. 3d at 232-33; *Am. Med. Ass'n v. United Healthcare Corp.*, 588 F. Supp. 2d 432, 440-41 (S.D.N.Y. 2008) (collecting cases). Uber relies on *Allstate Insurance Company v. Lyons, see* Pl.'s Opp'n at 35-36, but *Lyons* is distinguishable because the court there did not hold that the plaintiff's RICO counts for pending claims were ripe, it only determined that the injuries arising from already-paid no-fault claims were ripe, *see Allstate Ins. v. Lyons*, 843 F. Supp. 2d 358, 366, 374 (E.D.N.Y. 2012); *see also Rhoades*, 859 F.2d at 1105 (distinguishing between ripe injuries of "past legal fees and other expenses" incurred in previous litigation from unripe future "ongoing legal fees and other expenses" in the ongoing bankruptcy proceeding).

Accordingly, Uber's RICO claims also warrant dismissal because they are not clear and definite.

### D. State-Law Claims

Although 28 U.S.C. § 1367(a) vests district courts with supplemental jurisdiction "over all other claims that are so

related to claims in the action within such original jurisdiction that they form part of the same case or controversy," 28 U.S.C. § 1367(c)(3) enables district courts to "decline to exercise supplemental jurisdiction" where they have "dismissed all claims over which [they have] original jurisdiction." Because this Court has dismissed the RICO claims over which it has original jurisdiction, the Court, in its discretion, declines to exercise supplemental jurisdiction over Uber's remaining claims, Counts V and VII, arising under New York Judiciary Law § 487 and for unjust enrichment.

Accordingly, the state-law claims, Counts V and VII, are dismissed without prejudice.

## CONCLUSION

For the foregoing reasons, Defendants' motions to dismiss the Amended Complaint are granted. Accordingly, this action is dismissed. The Clerk of Court is directed to enter judgment and close the case.

SO ORDERED.

## All Citations

Slip Copy, 2026 WL 2364217

## Footnotes

1 *See* Notice of Lavelle, Banilov, and Tarasov Motion to Dismiss Uber's Amended Complaint, Dkt. 88 ("Banilov Motion"); Lavelle, Banilov, and Tarasov Memorandum of Law in Support of their Motion to Dismiss Uber's Amended Complaint, Dkt. 89 ("Banilov Memorandum" or "Banilov Mem."); Notice of Wingate Defendants' Motion to Dismiss Plaintiff's Amended Complaint, Dkt. 90 ("Wingate Motion"); Memorandum of Law in Support of Wingate Defendants' Motion to Dismiss, Dkt. 91 ("Wingate Memorandum" or "Wingate Mem."); Notice of Reyfman Defendants' Motion to Dismiss Uber's Amended Complaint, Dkt. 94 ("Reyfman Motion"); Memorandum of Law in Support of Defendants Leonid Reyfman and Pain Physicians NY PLLC's Motion to Dismiss Uber's Amended Complaint, Dkt. 95 ("Reyfman Memorandum" or "Reyfman Mem."); Notice of Michael Gerling and the Gerling Institute's Motion to Dismiss Uber's Amended Complaint, Dkt. 93 ("Gerling Motion"); Defendants Michael Gerling and Gerling Institute's Memorandum of Law in Support of Defendants' Amended Motion to Dismiss, Dkt. 100 ("Gerling Memorandum" or "Gerling Mem."); Plaintiff's Omnibus Brief in Opposition to Defendants' Motions to Dismiss the Amended Complaint, Dkt. 96 ("Plaintiff's Opposition" or "Pl.'s Opp'n"); Lavelle, Banilov, and Tarasov Reply in Support of their Motion to Dismiss Uber's Amended Complaint, Dkt. 98 ("Banilov Reply"); Reply Memorandum of Law in Support of Wingate Defendants' Motion to Dismiss, Dkt. 99 ("Wingate Reply"); Reply Memorandum of Law in Further Support of Defendants Leonid Reyfman and Pain Physicians NY PLLC's Motion to Dismiss Uber's Amended Complaint, Dkt. 101 ("Reyfman Reply"); Reply Memorandum of Law in Support of Gerling Defendants' Motion to Dismiss, Dkt. 102 ("Gerling Reply").

2 The following facts taken from the Amended Complaint are accepted as true for the purposes of Defendants' motions. *See In re Interest Rate Swaps Antitrust Litig.*, 261 F. Supp. 3d 430, 459 (S.D.N.Y. 2017) (citing *Koch v. Christie's Int'l PLC*, 699 F.3d 141, 145 (2d Cir. 2012)). The Court recites only those facts relevant to resolving the pending motions.

3 Defendants do not raise the element of longevity. *See* Banilov Mem. at 30; Wingate Mem. at 28-34; Reyfman Mem. at 20-23; Gerling Mem. at 25-28. Because the Court finds that Uber does not plausibly allege a common purpose and relationships, however, the Court does not reach that element.

4 Uber points to only one example of an allegedly above-market payment, where Gerling billed Banilov Defendants $36,500 for a lumbar diskectomy, which was "substantially in excess of the median fee" of $20,000. Am. Compl. ¶ 156. It is not plausible that the *median* fee of $20,000 renders a fee of $36,500 "above-market"; indeed, the average fee being $20,000 might be more convincing but that is not what Uber alleges here.

5 Uber does not allege that the Lavelle Defendants were involved in the association-in-fact enterprise. *See* Am. Compl. ¶¶ 313-18.

6 Uber argues that "[t]he statute does not demand that every participant share a relationship with all members of the enterprise" and cites to *United States v. Friedman*, 854 F.2d 535, 562 (2d Cir. 1988). Pl.'s Opp'n at 53. There, in addressing a criminal RICO case, the Second Circuit made the point that, although "it is irrelevant whether defendants participated in

 © 2026 Thomson Reuters. No claim to original U.S. Government Works. 

the enterprise's affairs through different, even unrelated crimes," the court still must "reasonably infer that each crime was intended to further the enterprise's affairs." *Friedman*, 854 F.2d at 562. Here, the lack of cohesion among the Defendants' relationships, coupled with their absent common purpose, does not permit an inference that each of their crimes was for the benefit of the purported enterprise as a whole. Further, *Friedman* was decided before *Boyle*, in which the Supreme Court observed the requirement of "interpersonal relationships" in no uncertain terms. 556 U.S. at 946; *but see Natasi & Assocs., Inc. v. Bloomberg, L.P.*, 20-cv-5428, 2022 WL 4448621, at *15 (S.D.N.Y. Sep. 23, 2022) (relying on *Friedman* to conclude that the plaintiff's allegations of two potentially separate crimes was not fatal, but also finding that the plaintiff adequately pleaded a hub and spoke conspiracy with a rim because he plausibly alleged a common purpose).

7 A violation of 18 U.S.C. § 1962(c) cannot be shown "unless there is proof of the specified relationship between the racketeering acts and the RICO enterprise." *Indelicato*, 865 F.2d at 1384. "In other words, a plaintiff must also plausibly allege 'that a nexus exist[s] between the enterprise and the racketeering activity that is being conducted.' " *D. Penguin Bros.*, 587 F. App'x at 667 (quoting *Satinwood*, 385 F.3d at 174). With regards to Defendants' argument that Uber does not plausibly allege a specific relationship between the Gerling Institute Enterprise and Pain Physicians NY Enterprise and the pattern of racketeering, the determination of whether Defendants used these legal enterprises to accomplish any of the alleged predicate acts is better analyzed under the conduct element. *See id.* at 666-67 (concluding that the plaintiffs adequately alleged that a non-profit corporation was an enterprise but nevertheless concluding that they did not plausibly allege a nexus between that enterprise and the alleged racketeering); *see also Tooker v. Guerrera*, 2017 WL 3475994, at *8-9 (E.D.N.Y. Aug. 11, 2017) (finding that the plaintiff adequately pled that legal entities were enterprises but concluding that they did not plausibly allege enterprise because the plaintiff failed to plausibly allege that the defendants participated in the conduct of the legal entities).

8 To the extent that the settled case is not still pending, Uber would nonetheless be unable to meet the pattern element on the basis of this case alone because a single predicate act cannot constitute a racketeering activity under RICO. *See Liang v. Home Reno Concepts, LLC*, 803 F. App'x 444, 447 (2d Cir. 2020) ("To allege a pattern of racketeering under RICO, a plaintiff 'must plead at least two predicate acts ....' " (quoting *GICC Cap. Corp. v. Tech. Fin. Grp.*, 67 F.3d 463, 465 (2d Cir. 1995))); *Crawford v. Franklin Credit Mgmt. Corp.*, 758 F.3d 473, 489 (2d Cir. 2014) ("[M]ultiple acts of mail fraud in furtherance of a single episode of fraud involving one victim and relating to one basic transaction cannot constitute the necessary pattern." (quoting *Tellis v. U.S. Fid. & Guar. Co.*, 826 F.2d 477, 478 (7th Cir. 1986))); *see also Sky Med. Supply*, 17 F. Supp. 3d at 234 (dismissing RICO claim for failure to allege clear and definite RICO injury even though only *some* portion of the plaintiff's injury was contingent upon pending arbitration and litigation).

**End of Document**

© 2026 Thomson Reuters. No claim to original U.S. Government Works.