**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF NEW YORK**
---------------------------------------------------------------- X

GREATER NEW YORK MUTUAL
INSURANCE CO., 26-cv-450-FB-PK

Plaintiff,

[ORAL ARGUMENT REQUESTED]

v.

LIAKAS LAW, P.C. *et al.*

Defendants.

---------------------------------------------------------------- X

**MEMORANDUM OF LAW IN SUPPORT OF DEFENDANT MARK D. ROLNIK'S**
**MOTION TO DISMISS WITH PREJUDICE AND FOR OTHER RELIEF**


Benjamin J. Ashmore Sr., Esq.

THE ASHMORE FIRM PLLC

420 Lexington Avenue, Ste 300
New York, NY 10170

1110 Brickell Ave, Ste 400
Miami, FL 33131

(800) 955-0629
Fax (212) 656-1375
Cell (917) 750-9212

*Attorneys for Defendant Mark D. Rolnik*

## TABLE OF CONTENTS

**TABLE OF AUTHORITIES** ..... ii

**PRELIMINARY STATEMENT** ..... 1

**STATEMENT OF FACTS** ..... 4

A. MR. ROLNIK AND HIS LAW PRACTICE ..... 4

B. PLAINTIFF'S CONCLUSORY ALLEGATIONS *VIS-À-VIS* RUNNERS AND MR. ROLNIK ..... 5

1. **Plaintiff's Conclusory Allegations Mr. Rolnik Referred Cases to Colleagues** ..... 7

2. **"It is alleged" that Mr. Rolnik has, *e.g.*, Investigated Potential Cases** ..... 9

3. **Plaintiff's Untethered Funding Company Allegations** ..... 10

**ARGUMENT** ..... 11

I. ATTY. ROLNIK'S ALLEGED CONDUCT IS ABSOLUTELY PRIVILEGED AND PROTECTED UNDER THE LAW ..... 12

II. PLAINTIFF FAILS TO STATE RICO CLAIM(S) ..... 17

i. **Legal Standard** ..... 17

ii. **Plaintiff Has Not (and Cannot) Plausibly Allege RICO Predicate Acts** ..... 18

III. BECAUSE PLAINTIFF CANNOT PLAUSIBLY ALLEGE RICO PREDICATE ACTS, ITS RICO CONSPIRACY CLAIMS FAIL ..... 20

IV. PLAINTIFF LACKS STANDING ..... 22

V. THIS COURT SHOULD NOT EXERCISE SUPPLEMENTAL JURISDICTION OVER PLAINTIFF'S STATE LAW CLAIMS ..... 23

VI. OTHER DEFICIENCIES IN THE COMPLAINT REQUIRE ITS DISMISSAL ..... 23

VII. PLAINTIFF AND ITS WLG ATTORNEYS BROUGHT THIS UNREASONABLE AND VEXATIOUS LAWSUIT IN BAD FAITH, THEREFORE AN AWARD OF ATTORNEY FEES AND COSTS TO MR. ROLNIK IS APPROPRIATE ..... 24

**CONCLUSION** ..... 25

**CERTIFICATION** ..... 26

## TABLE OF AUTHORITIES

### Cases

*Agency Holding Corp. v. Malley-Duff & Assocs., Inc.*, 483 U.S. 143 (1987) .............................. 24

*Anza v. Ideal Steel Supply Co.*, 547 U.S. 451 (2006) .................................................................. 22

*Ashcroft v. Iqbal*, 556 U.S. 662 (2009) ......................................................................................... 17

*Borough of Duryea, Pa. v. Guarnieri*, 564 U.S. 379 (2011) ....................................................... 12

*Campos v. Lavinsky*, 22-cv-1278, 2022 WL 16950054 (E.D.N.Y. Nov. 14, 2022)..................... 21

*Condos Bros. Constr. Corp. v. Main St. Am. Assurance Co.*,
280 F. Supp. 3d 349 (E.D.N.Y. 2017) ........................................................................................ 20

*Curtis & Assocs., P.C. v. L. Offs. of David M. Bushman, Esq.*,
758 F. Supp. 2d 153 (E.D.N.Y. 2010) ........................................................................................ 15

*DeFazio v. Wallis*, No. 05-cv-5712, 2006 WL 4005577 (E.D.N.Y. Dec. 9, 2006)...................... 19

*Dixon v. von Blanckensee*, 994 F.3d 95 (2d Cir. 2021) ............................................................... 17

*DLJ Mortg. Cap., Inc. v. Kontogiannis*, 726 F. Supp. 2d 225 (E.D.N.Y. 2010) .......................... 22

*First Cap. Asset Mgmt., Inc. v. Satinwood, Inc.*, 385 F.3d 159 (2d Cir. 2004) ............................ 18

*First Nationwide Bank v. Gelt Funding* Corp., 27 F.3d 763 (2d Cir. 1994)................................ 22

*Hecht v. Com. Clearing House, Inc.*, 897 F.2d 21 (2d Cir. 1990)............................................... 22

*Hemi Grp., LLC v. City of New York*, 559 U.S. 1 (2010) ........................................................... 22

*Holder v. Humanitarian Law Project*, 561 U.S. 1 (2010) ........................................................... 12

*Holmes v. Sec. Inv. Prot. Corp.*, 503 U.S. 258 (1992)................................................................. 22

*In re Primus*, 436 U.S. 412 (1978)................................................................................................ 12

*Jones v. Ford Motor Credit Co.*, 358 F.3d 205 (2d Cir. 2004).................................................... 23

*Kim v. Kimm*, 884 F.3d 98 (2d Cir. 2018)..................................................................................... 15

*Kolari v. New York-Presbyterian Hosp.*, 455 F.3d 118 (2d Cir. 2006) ........................................ 23

*Lamont v. Postmaster*, 381 U.S. 301 (1965).................................................................................. 12

**(Cases Con't)**


*Legal Servs. Corp. v. Velazquez*, 531 U.S. 533 (2001) ........ 12

*Lundy v. Cath. Health Sys. of Long Island, Inc.*, 711 F.3d 106 (2d Cir. 2013) ........ 18

*NAACP v. Button*, 371 U.S. 415 (1963) ........ 12

*Perkins Coie v. Trump*, 25-cv-00716-BAH, Dkt. 185, slip. Op. at 55 (D.D.C., May 2, 2025) .... 12

*Rajaratnam v. Motley Rice, LLC*, 449 F. Supp. 3d 45 (E.D.N.Y. 2020) ........ 15

*Richmond Newspapers v. Virginia*, 448 U.S. 555 (1980) ........ 12

*Roosevelt Road Re, Ltd. v. Haggar, et al.*, No. 24-cv-1549,
2026 WL 682192 (E.D.N.Y. Mar. 11, 2026) ........ 21

*Sky Med. Supply Inc. v. SCS Support Claims Servs., Inc.*,
17 F. Supp. 3d 207 (E.D.N.Y. 2014) ........ 18, 22, 23

*Smith v. City of Cumming*, 212 F.3d 1332 (11th Cir. 2000) ........ 12

*Spiteri v. Russo*, No. 12-cv-2780, 2013 WL 4806960(E.D.N.Y. Sept. 7, 2013),
*aff'd sub nom. Spiteri v. Camacho*, 622 F. App'x 9 (2d Cir. 2015) ........ 18, 24

*Turner v. New York Rosbruch/Harnik, Inc.*, 84 F. Supp. 3d. 161 (E.D.N.Y. 2015) ........ 18, 24

*United States v. Applins*, 637 F.3d 59 (2d Cir. 2011) ........ 21

*United States v. Bonanno Organized Crime Fam. of La Cosa Nostra*, 683 F. Supp. 1411
(E.D.N.Y. 1988), *aff'd*, 879 F.2d 20 (2d Cir. 1989) ........ 23

*United States v. Kukushkin*, 61 F.4th 327 (2d Cir. 2023) ........ 21

*United States v. Laurent*, 33 F.4th 63 (2d Cir. 2022) ........ 21

*United Transp. Union v. State Bar of Mich.*, 401 U.S. 576 (1971) ........ 12

*Williams v. Affinion Grp.*, LLC, 889 F.3d 116 (2d Cir. 2018) ........ 19

**Statutes**

18 U.S.C. § 1341 ........ 17, 18

18 U.S.C. § 1343 ........ 17, 18

18 U.S.C. § 1951 ........ 17, 18

18 U.S.C. § 1952 ........ 17, 18

18 U.S.C. § 1962 ........ 17

18 U.S.C. § 1964(c) ........ 22

28 U.S.C. § 1367(a) ........ 23

28 U.S.C. § 1367(c)(3) ........ 23

28 U.S.C. § 1927 ........ 1, 24, 25

N.Y. Penal Law § 215 ........ 18

**Rules**

22 N.Y.C.R.R. §§1200.1.5 ........ 12

22 N.Y.C.R.R. §§1200.5.8 ........ 13

22 N.Y.C.R.R. §§1200.7.2 ........ 13

FRCP 12(b)(6) ........ 17, 23

FRCP 8 ........ 4, 11, 23

FRCP 9(b) ........ 18

Defendant, Mark D. Rolnik, ("Atty. Rolnik" or "Mr. Rolnik") through his undersigned counsel, respectfully submits this Memorandum of Law in support of his motion to dismiss the within Complaint (ECF 1, "Compl.") in its entirety and with prejudice as against him, together with an award of attorneys' fees and costs pursuant to 28 U.S.C. § 1927.

## PRELIMINARY STATEMENT

Atty. Rolnik has been misleadingly and inaccurately pled as a "Runner Defendant" in this current action, just one in a string of meritless and nearly identical lawfare suits, all brought by the Willis Law Group ("WLG") on behalf of various insurers and/or reinsurers.[1] The case at bar, like these other cases, are unreasonable and vexatious lawsuits without merit, brought and intended to harass, intimidate and dissuade attorneys, medical providers and others, like Mr. Rolnik, from representing and/or aiding hardworking, injured and underserved individuals in personal injury suits involving powerful and wealthy interests and clients, like Plaintiff.

Mr. Rolnik is, in fact, a licensed and practicing attorney with an unblemished 46-year legal career, practicing exclusively in the personal injury market, and representing many

---

[1] Since March 2024, WLG has brought at least 13 other materially identical civil RICO lawsuits in the E.D.N.Y. on behalf of various insurance company clients, <u>but all are against similar and overlapping defendants, alleging schemes occurring at the same time, in the same locations</u> – concerning personal injury claims*, **many of which their clients already effectively released and/or settled*** – including as follows: *Roosevelt Road, Re, Ltd. et al. v. Hajjar et al.*, No. 1:24-cv-1549-NG-CHK (E.D.N.Y. Mar. 1, 2024); *Roosevelt Road, Re, Ltd. et al. v. Wingate Russotti, Shapiro, Moses & Halperin, LLP et al.*, No. 1:24-cv-6259-NCM-VMS (E.D.N.Y. Sept. 6, 2024); *Ionian Re, LLC v. Gorayeb & Associates, P.C. et al.*, No. 1:24-cv-07098-WFK-PK (E.D.N.Y. Oct. 8, 2024); *Ionian Re, LLC et al. v. Cedillo et al.*, No. 1:24-cv-7969-DG-JRC (E.D.N.Y. Nov. 15, 2024); *Roosevelt Road Re, Ltd., v. Subin et al.*, No. 1:24-cv-05033-HG (E.D.N.Y. Nov. 26, 2024); *Roosevelt Road Re, Ltd. et al. v. Liakas Law, P.C. et al.*, No. 1:25-cv-00300-ENV-RML (E.D.N.Y. Jan. 17, 2025); *Union Mutual Fire Insurance Company v. Liakas Law et al.*, No. 1:25-cv-1857-FB-CHK (E.D.N.Y. Apr. 3, 2025) (hereafter, the "*Union* Action"); *Union Mutual Fire Insurance Company v. Subin Associates, LLP et al.*, 1:25-cv-02652-OEM-PCG (E.D.N.Y. May 12, 2025); *Roosevelt Road, Re, Ltd. et al. v. William Schwitzer & Associates P.C. et al.*, No. 1:25-cv-3386-BMC (E.D.N.Y. Jun. 16, 2025); *Merchants Mutual Insurance Co. v. William Schwitzer & Associates, P.C. et al.*, No. 1:25-cv-5859-DG-CHK (E.D.N.Y. Oct. 20, 2025); *Greater New York Insurance Company v. Subin Associates*, LLP et al., No. 1:26-cv-00470-CBA-VMS (E.D.N.Y. Jan. 27, 2026); *Wesco Insurance Company, et al. v. Liakas Law, P.C., et al.*, No. 1:26-cv-03300-JRC (E.D.N.Y. June 2, 2026) (hereafter, the "*Wesco* Action").

Although Mr. Rolnik is not named as a party in any of the other foregoing cases, WLG has indirectly referenced or directly named him in many of these cases' complaints, including, *e.g.*, the *Union* and *Wesco* Actions.

thousands of underserved, hardworking laborers and individuals injured. In particular, and over these many decades, Mr. Rolnik developed a reputation in the immigrant, non-native, and non-English speaking Dominican and Puerto Rican laborer communities in Brooklyn and Queens, as a capable and competent personal injury attorney who knows that community, the landscape and insurance industry, and as an attorney achieving exemplary results for his clients. Apparently, that success is now viewed as actionable and unlawful conduct to the insurer(s).

After all the smoke and mirrors are cleared away, according to Plaintiff ("GNYM") and WLG, Mr. Rolnik's alleged unlawful conduct here is nothing more than his unassailable rights and privileges as an attorney to evaluate and/or refer clients and cases that he cannot undertake, as a sole-practitioner on the doorsteps of retirement, to his attorney colleagues, which includes defendants Liakas Law, PC, Dean Liakas, or Nicholas Liakas (collectively, "Liakas").

As the below facts reflect, and as Mr. Rolnik has begun to wind down his law practice, he has understandably referred cases to many different lawyers and law firms (the "Referred Cases"). Many of those Referred Cases have reached favorable resolution, some remain pending, while in others, the receiving law firms and/or attorneys have declined representation. This is not a RICO enterprise, nor has Atty. Rolnik engaged in a pattern of racketeering activity. To wit, after he refers a case to another attorney, the conduct that occurs in these Referred Cases – all involving the independent judgment and conduct of doctors and attorneys Mr. Rolnik does not control – cannot be attributed to Mr. Rolnik, even if, *arguendo*, other attorneys pursue claims that lack merit, or doctors provide medical care that is not necessary, as Plaintiff here alleges.

For this reason alone, Atty. Rolnik must be dismissed out of this Case, with prejudice. Simply put, the Complaint fails to state a RICO claim, and as such fails to state a civil RICO conspiracy claim. There are no alleged facts even suggesting that Mr. Rolnik entered into an

unlawful agreement, let alone knowingly entered into an agreement providing the requisite predicates for a RICO conspiracy. GNYM also lacks standing as the relationship between its alleged injury and Atty. Rolnik's conduct is insufficiently direct, and all its purported injury claims are both speculative and derivative of third-party injury. In sum and substance, Plaintiff (or its insurees) litigated and settled personal injury claims – in which it could have litigated the fraud allegations it has brought here – but it did not. Instead, GNYM (or its insurees) settled in most of those personal injury cases that give rise to the purported injuries asserted herein, and GNYM and/or its insurees and those personal injury claimants executed releases, waivers and settlement of all claims. *It is black letter law and a bedrock of American jurisprudence that a losing (or settling or indemnified) party cannot thereafter sue the attorneys of their adversary, let alone attorneys who at most, evaluated a case before referring claimants to other capable attorneys – without even reaching issues of res judicata.*

Finally, every RICO case brought by WLG (*supra* n.1) that has been scrutinized on the pleadings, has been dismissed. This case should fare no differently. Even so, WLG persists in bringing these meritless lawfare actions in cut-copy-and-paste lawsuits where it merely changes some, but not always all of the parties, repeating – in places *in haec verba* – the same narrative, claims of liability, and causes of action. To wit, WLG's cut-copy-and-paste stratagem is apparent from the errors present in the instant Complaint and their other complaints, for example mixing up defendants and using undefined terms.[2] Not only does this complaint violate Fed. R.

[2] See, *e.g.*, "Schwitzer Defendants" and the "PPNY Defendants" who are defendants in *Merchants Mutual v. Schwitzer*, not here (Compl. ¶¶ 221–22, 227); and *cf.* Compl. ¶ 67 ("Legal Service Defendants," see, *e.g.*, *Union Mutual v. Liakas*, ECF No. 123, ¶ 6 and *Union Mutual v. Subin*, ECF No. 110, ¶ 16); ¶ 90 ("Medical Coordinators," see *Union Mutual*, ECF No. 123, ¶ 26); ¶¶ 127, 157, 562, 563 ("Legal Defendants," see *Union Mutual v. Subin*, ECF No. 110, ¶ 111); ¶ 329 ("non-Party Bogoraz Law Group," for a named defendant in this action)

Civ. P. ("FRCP") 8's requirement of a "short and plain statement" but the conduct of WLG in this case merits the harsh sanction of prevailing fees and costs.

## STATEMENT OF FACTS

Defendant recounts only those facts relevant to the instant motions.

### A. MR. ROLNIK AND HIS LAW PRACTICE

Mr. Rolnik is a licensed, sole-practitioner, personal injury attorney. See the Annexed Affirmation of Benjamin J. Ashmore Sr. ("Ashmore Aff.") at ¶¶ 3, 7 and Exhibit 1 (the "Gonzalez Decl.") at ¶3.[3] He has been licensed to practice law since 1980. Ashmore Aff. ¶4. He has never been the subject of an ethics investigation, including in any state where he has been admitted to practice law. *Id.* ¶5. He last practiced law with partners in 1991. *Id.* ¶6.

As a review of court dockets in the states and courts where Mr. Rolnik practices makes clear; since 2020, Mr. Rolnik has begun to wind down his Law Practice, as he approaches retirement.[4] See also, *id.* Ex. 1 (Gonzalez Decl., ¶7). Mr. Rolnik's Law Practice continues to directly litigate a small number of cases on behalf of its own clients, but considering his anticipated future retirement, the Law Practice has reasonably referred a number of cases to other lawyers and law firms. *Id.* Ex. 1 (Gonzalez Decl., ¶8).

Since 2020, his Law Practice has referred 796 cases to his personal injury attorney colleagues at eleven different law firms (the "Referred Cases"), and the vast majority of these

---

3 We respectfully contend that this Court can resolve this FRCP 12(b)(6) motion without converting it to a motion for summary judgment under FRCP 56 because under FRE 201, judicial notice may be taken of these facts and public records that are not subject to reasonable dispute, including as they are public records contained in state Bar records and in the dockets of relevant cases. Considering the citations to, *inter alia*, these public records by GNYM's WLG attorneys, (see *e.g.*, ECF 25 at p.3), their relevance, and their publicly-available nature (under FRE 201, from which judicial notice can be taken), cannot be disputed.

4 Unless capitalized terms are specifically defined herein, Mr. Rolnik respectfully incorporates by reference, as if restated herein, those terms defined in the accompanying Ashmore Aff., or the Gonzales and Rolnik Declarations annexed to that Affirmation.

referrals occurred in the early 2020s.[5] *Id.* Ex. 1 (Gonzalez Decl., ¶9). Of those Referred Cases, 485 remain pending at, and 134 have been favorably resolved by, the various *eleven different* law firms to which they were referred. *Id.* Ex. 1 (Gonzalez Decl., ¶¶9-10).

With respect to the Liakas defendants, 372 of the Law Practice's 796 Referred Cases were sent to Liakas attorneys. *Id.* Ex. 1 (Gonzalez Decl., ¶12).[6] Of the Referred Cases sent to Liakas, 54 have reached favorable resolution (*i.e.*, either by settlement or judgment), and in 78 other cases, Liakas did not agree to retention.[7] *Id.* Ex. 1 (Gonzalez Decl., ¶13).

We further highlight the reasonable, albeit small scale of activity in Mr. Rolnik's Law Practice, especially in light of the reputation and network he established in New York City's five boroughs (and the surrounding counties) over four decades of practicing, considering, *inter alia*: (i) information GNYM already presented to this Court, like Liakas's caseload of "5,457 cases" (ECF 25, p.3; also, *supra* n.6); or (ii) that nearly 9,000 premises liability (or slip and fall) lawsuits are filed *annually* in NYC courts; or (iii) that over this period of time in Mr. Rolnik's Law Practice, he has referred, on average, 2 cases per week to other law firms.

### B. PLAINTIFF'S CONCLUSORY ALLEGATIONS *VIS-À-VIS* RUNNERS AND MR. ROLNIK

Plaintiff alleges, in sum and substance, that (i) it issued policies for certain premises, that (ii) were involved in underlying personal injury actions, where (iii) doctors allegedly overtreated or misdiagnosed injuries in order to inflate the value of those personal injury actions, and (iv)

---

[5] We highlight that the majority of these referrals occurred during a period of time overlapping with the COVID-19 global health pandemic, an entirely reasonable outcome that would be expected of an older sole-practitioner working during this challenging time.

[6] Given the statistics about the size and caseload of Liakas *already presented to this Court by WLG* (see ECF 25 p.3), it is entirely reasonable that this sole-practitioner referred approximately half of its Referred Cases to this large personal injury law firm. In fact, out of all the personal injury cases cited in, referenced opaquely, or referred to in the Complaint, *at most, 4-5 of these are cases that the Law Practice referred to Liakas*.

[7] Of the total Referred Cases, in approximately 180 of them, the receiving law firm or attorney did not agree to retention (nor did those clients return to the Law Practice). In other words, the rate of rejection of Referred Cases is nearly identical, 22% of all cases Mr. Rolnik referred out, versus 21% of the cases he referred to Liakas.

various attorneys, together with "runners" knowingly participated in a RICO conspiracy to litigate what were ostensibly fraudulent claims of injury, that (v) GNYM settled or paid claims on, and in doing so, was injured by the defendants in this case, including Mr. Rolnik. Compl., *passim* (but see summary, ¶¶82-102).

***But*** as to Mr. Rolnik, GNYM only alleges that he is a "Runner Defendant." See, *e.g.*, Compl., p1., Caption. In describing the alleged tortious and unlawful behavior of the purported "runner defendants" – including Mr. Rolnik – GNYM makes the following conclusory claim:

> "Runners" are persons who participated in the fraudulent scheme described below (the "Fraud Scheme") by recruiting potential claimants into staging and/or perpetuating fake trip and-fall accidents and/or staged accidents at various sites throughout the State of New York as well as coaching claimants throughout the process of the Fraud Scheme…

*Id.* ¶8. About this category of "runner defendants" into which GNYM lumped Mr. Rolnik, GNYM further alleged that "…Runner Defendants typically have their own claims, which may be presented before, after, or in conjunction with their recruiting activities." *Id.* ¶9.

GNYM repeats this allegation, *id.* ¶84, making clear that runner defendants like Mr. Rolnik have very specific roles in the alleged RICO conspiracy:

> Runners, under the direction of the Liakas Defendants, Medical Provider Defendants, and/or Funders, and in furtherance of and as a necessary step for the execution of the Fraud Scheme, recruited claimants ("Claimants") into staging and/or perpetuating fake trip-and fall accidents at various locations throughout the State of New York and/or participating in staged motor vehicle accidents. The Runners then referred, transported, assigned, or otherwise presented these Claimants to the Liakas Firm, where its attorneys and/or other employees met with these Claimants. In other circumstances, Claimants were referred and/or transported to the Clinic Defendants, who would in turn sign them up with the Liakas Firm.

At the outset however, and unlike the other alleged "runner defendants" in this case – and their alleged participation in the purported RICO conspiracy – GNYM only alleges that Mr.

Rolnik is an attorney, who works out of an office in New York City, and is a resident of New Jersey. *Id.* (*cf.* ¶¶8-12 with ¶13).[8]

Without any allegations specific to Mr. Rolnik – indeed, allegations presented without a scintilla of fact, other than "[u]pon information and belief" – GNYM alleges that:

- Runner Defendants have been involved in recruiting Claimants into stating and/or perpetuating fake trip-and-fall accidents at various sites throughout the State of New York and/or otherwise instructing Claimants on how to successfully malinger a minor incident into surgeries with the knowing cooperation and substantial assistance of the Medical Provider Defendants, the Legal Defendants, and the Funding Defendants. (Compl., ¶127).

- Runner Defendants communicated with the Claimants, Liakas Defendants, Funding Defendants, and Medical Provider Defendants through telephone calls, texts, emails and mail, and indirectly. (Compl., ¶128).

- Runner Defendants engaged in overt acts in furtherance of and as a necessary step for the execution of the Fraud Scheme. Amont other things, the Runner Defendants a) referred and/or transported Claimants to Liakas Defendants so that Claimants could retain Liakas Defendants; b) directed, coached, transported and/or otherwise substantially assisted Claimants in coordinating medical treatment from Medical Provider Defendants; c) directed, referred or otherwise brokered out Claimants to high-interest funding loans from Funding Defendants; and, d) directed, coached, coordinated and/or otherwise substantially assisted in the prosecution of Claimants' personal injury lawsuits. (Compl., ¶129).

1. **<u>Plaintiff's Conclusory Allegations Mr. Rolnik Referred Cases to Colleagues</u>**

Respecting Mr. Rolnik, Plaintiff only alleges, *id.* ¶130 – again upon a conclusory "information and belief" – that

> [Mr.] Rolnik acted as an intermediary – effectively, as a broker – between Liakas Firm and other law firms and between certain runners, including Defendant Rodriguez and Tavarez (and possibly Sone), and others known and unknown, by knowingly and/or intentionally facilitating, forwarding, and/or referring fraudulent personal injury matters to Liakas Firm (who received Claimants willing to participate

[8] To the extent GNYM states, again in conclusory fashion, that Rolnik is also the "Co-Conspirator Firm" in an extant action (but is not named as a party in that action), *id.* ¶15 – this self-serving, wholly unsupported claim has nothing to do with any alleged wrongful acts in this case that GNYM could even attribute to Mr. Rolnik. To be clear also, Mr. Rolnik has never had his own claim, litigated by Liakas or any other defendants, as Plaintiff alleges Runners often have or start with, as their induction in this purported RICO conspiracy.

in the scheme), or by overseeing and/or participating in the manufacture of claims in the first instance.

First, it is clear that Mr. Rolnik's allegedly illegal conduct is merely referring cases, in which he has declined representation, to other attorneys. As set forth below, this activity is absolutely protected under the law. Second, although Plaintiff attempts to salvage its allegations against Mr. Rolnik by claiming, without a scintilla of evidence, incredulously that he might be "overseeing and/or participating in the manufacture of claims in the first instance," to support the foregoing implausible allegations, Plaintiff alleges that:

- Rolnik is affiliated with hundreds of personal injury actions, the vast majority of which are referred out. Prior to 2020, the majority of these cases were referred to Bader & Yakaitis; from 2020 on, many of these referrals were directed to Liakas Firm, in addition to other firms. (Compl. ¶131.)

- Rolnik uses no advertising, has virtually no internet or social medial presence, and otherwise has no uniquely substantial history of success in prosecuting personal injury cases. His office is an interior office space in a non-descript building in lower Manhattan at 325 Broadway, New York, New York on the fourth floor. (Compl. ¶132.)

- For over 20 years, Rolnik occupied that fourth floor space (and via affiliates, subsequently the third floor below it), along with, at various times, Barry Woolfson ("Woolfson") and attorneys "S.B." and "A.H." (Compl. ¶133.)

- Woolfson previously worked for Rolnik, non-party Funder "The Law Funder LLC," and now operates his own personal injury practice from the third floor wherein he continues to receive Rolnik referrals. (Compl. ¶134.)

- S.B. and A.H. are former employees and partners of Rolnik. They also operated a separate partnership with each other out of the same location (incorporated in 2003 and remains active). S.B. continues to occupy the fourth-floor space with Rolnik, continues to do work for Rolnik, and also operates a substantially similar solo practice at the same location. A.H. also worked with Woolfson at The Law Funder (as an Executive Vice President) and is discussed further infra. (Compl. ¶135.)

- Despite having no storefront, no advertising, no social media or internet presence, and an inauspicious background and/or history of unique litigation success, Rolnik is somehow in a position to broker massive volumes of highly suspicious

> personal injury cases to several law firms accused of engaging in fraud schemes, including as relevant herein. (Compl. ¶136.)

Here again, after wading through WLG's smoke and mirrors, what these facts cannot distract from is that a distinguished attorney, with more than 46-years' experience, winding down his law practice on the threshold of retirement, has legitimately referred some cases to lawyers – *for those lawyers to evaluate and litigate*, on average of 2 cases per week (the majority of which occurred during the COVID-19 pandemic) – and he shares office space, as many New York attorneys do, with other lawyers, including lawyers who also practice personal injury law.

**2. "It is alleged" that Mr. Rolnik has, *e.g.*, Investigated Potential Cases**

First, Plaintiff claims, without any supporting facts or detail, that "[i]t is alleged Rolnik gathered and continues to gather Claimants through a network of Runners, including Defendants Rodriguez, Tavarez, Sone, and others known and unknown, and, both directly and via delegation, manufactured and continues to manufacture the factual circumstances surrounding such purported accidents." Compl. ¶137. In other words, at most, GNYM complains that some individuals have referred clients to a personal injury attorney with 46 years' of experience and networks in the Brooklyn and Queens community, where he is well known.

But more fatally defective to its RICO claims, Plaintiff asserts that "Rolnik then assisted and continues to assist in "packaging up" the basic information on these personal injury cases, including in some cases taking photographs of alleged injuries/defects, and facilitating medical care for the potential Plaintiff-Claimants with the Medical Provider Defendants, with the intent and purpose of driving the value of the personal injury cases upward through unnecessary and excessive medical treatment that is predictable and pre-determined. In form and function, Rolnik runs a lawsuit factory, which creates all of its necessary parts for the final product." In other words, Mr. Rolnik has, at most, (i) investigated the personal injury cases he is evaluating with a

view towards retention (see also, Compl. ¶¶140-42 reflecting that Mr. Rolnik does in fact conscientiously evaluate potential client(s)' claims); (ii) medical providers have treated injured individuals[9]; and, (iii) without any detail, that Mr. Rolnik is a practicing personal injury which an insurance company – on the hook for paying for the damages for said injuries on behalf of its insuree(s) – does not like because it is successful, like a factory? There is no allegation, let alone any plausible facts, which adequately plead wrongful conduct here. And as set forth below, these are core, lawful, First Amendment protected activities incident to the practice of law.

### 3. **Plaintiff's Untethered Funding Company Allegations**

Just like the spurious claims about Mr. Rolnik and other personal injury lawyers *supra* – whose crimes are having offices in the same building on Broadway in lower Manhattan[10] and running more lean and cost-efficient law firms than WLG likes (also Compl. ¶¶132-36, 169) – GNYM's allegations about (i) Mr. Rolnik's investigation and testimony in an unspecified "prior Claimant matter" and other cases[11] that are not personal injury lawsuits relevant to or alleged to fraudulent *in this case* (Compl. ¶¶140-44); or (ii) that an investigator employed by Mr. Rolnik took pictures without an injured party present during an investigative picture-taking stage, before Mr. Rolnik decided not to litigate a case and instead referred it to another attorney (Compl. ¶¶143-44); or (iii) that Mr. Rolnik's wife owns a litigation funding company—is all just more

---

9 Notably, Plaintiffs do not explain how Mr. Rolnik is "driving the value of the personal injury cases upward through unnecessary and excessive medical treatment that is predictable and pre-determined" when he is not a medical professional, has no control over the medical professionals who treat the injured parties, and who provide diagnostic and treatment care to injured parties through the exercise of their own professional, medical judgment.

10 Of course, we note that 325 Broadway is a building on the corner of Broadway and Worth, across from the Federal Building, containing four floors of offices rented by several dozen different sole-attorneys and law firms.

11 Plaintiff's claims, without any support, about other cases, including that "*another* case" that concerned a "Rolnik-referred Claimant" must be rejected as conclusory, and frankly irrelevant. Compl. ¶¶147-48. The excerpts of transcript testimony presented in the Complaint, *id.*, do not even identify the person testifying, much less the actual case, nor is there any actionable reference to Mr. Rolnik in these incomprehensible testimony excerpts that are just more of WLG's sanctionable smoke and mirrors in this unreasonable and vexatious lawsuit.

WLG smoke and mirrors, and is not evidence showing any RICO predicates, let alone any *indicia* of wrongful conduct.

Highlands Lending Corporation ("HLC") is a separate legal entity, unrelated to Mr. Rolnik's law practice. Ashmore Aff. ¶8 (Exhibit 2 (the "Rolnik Decl.") at ¶¶1-3). HLC has not invested in, loaned monies to, or participated in any litigation brought by Liakas, or in any litigation funding with defendant Jumpstart LLC. *Id.* ("Rolnik Decl. ¶¶4-5").

**ARGUMENT**

At top, Atty. Rolnik must be dismissed out of this case *with prejudice* because the activities attributed to him – having injured parties seek out his services; investigating the claims of those potential claimants personally, or through the use of investigators; and, in cases he chooses not to litigate, referring injured parties to other capable lawyers – are unassailable activities protected by the First Amendment and the rules governing attorneys and the practice of law. WLS and GNYM know this, and both are only attacking Atty. Rolnik because of his success in building a thriving law practice, reputation, and network in New York City and its five boroughs, protecting the rights of injured parties, over the last forty-six years.

At bottom, Mr. Rolnik must also be dismissed out of this case *with prejudice* because Plaintiff fails to state a civil RICO claim, and as such cannot state a civil RICO conspiracy claim – nor could it, even with an opportunity to amend. Additionally, GNYM lacks standing, just as other Courts in this District have held in WLG's other unreasonable and vexatious, nearly identical lawfare suits. Because all GNYM's federal claims fail, this Court should decline to exercise supplemental jurisdiction over its state-law claims, even though those claims are fatally defective because they rely on the same conclusory and implausible facts and fraud claims as the fatally-defective RICO claims. Although the Complaint violates the requirements of FRCP 8, leave to amend would be futile and it should not be granted. Finally, an award of fees and costs

is appropriate as a sanction under this Court's inherent authority and 28 U.S.C. § 1927 is appropriate in this unreasonable and vexatious lawfare suit, brought for improper purposes.

## I. ATTY. ROLNIK'S ALLEGED CONDUCT IS ABSOLUTELY PRIVILEGED AND PROTECTED UNDER THE LAW

The practice of law, at its core, entails advocacy and the collection or presentation of information in the reasoned search for the truth, thus invoking the First Amendment freedoms of speech, expression, and association. *Borough of Duryea, Pa. v. Guarnieri*, 564 U.S. 379, 397 (2011); *Holder v. Humanitarian Law Project*, 561 U.S. 1, 27-28 (2010); *Legal Servs. Corp. v. Velazquez*, 531 U.S. 533, 545 (2001); *In re Primus*, 436 U.S. 412, 424 (1978); *United Transp. Union v. State Bar of Mich.*, 401 U.S. 576, 585 (1971); *NAACP v. Button*, 371 U.S. 415, 428 (1963) (legal activities "are modes of expression and association protected by the First and Fourteenth Amendments"); *Richmond Newspapers v. Virginia*, 448 U.S. 555, 576 (1980) (First Amendment right to gather information); *Lamont v. Postmaster*, 381 U.S. 301, 307 (1965); *Smith v. City of Cumming*, 212 F.3d 1332, 1333 (11th Cir. 2000) ("The First Amendment protects the right to gather information about what public officials do on public property, and specifically, a right to record matters of public interest."); *Perkins Coie v. Trump*, 25-cv-00716-BAH, Dkt. 185, slip. Op. at 55 (D.D.C., May 2, 2025).

Article I, Section 8 of the New York Constitution provides that "[e]very citizen may freely speak, write and publish his or her sentiments on all subjects, being responsible for the abuse of that right; and no law shall be passed to restrain or abridge the liberty of speech or of the press."

Under New York Rules of Professional Conduct, attorneys are permitted to: (i) refer cases and share in fees with other lawyers, see 22 N.Y.C.R.R. §§1200.1.5(g)-(h); and (ii) establish reciprocal, non-exclusive referral agreements with other non-legal professionals (like

investigators or medical professionals) provided the relationship is for referrals, is disclosed, and does not interview with an attorney's independent professional judgment, see 22 N.Y.C.R.R. §§1200.5.8 and 22 N.Y.C.R.R. §§1200.7.2.

First, Mr. Rolnik is a licensed and practicing personal injury attorney, *supra* at §A, *and both WLG and GNMY know this* (Compl. ¶13, Rolnik "is and was licensed to practice law") even though they have misleadingly and improperly pled him as a "Runner Defendant" (and in the Complaint, at ¶¶131-36) misleadingly suggested he does not practice law and is merely a runner and referral source). *Id.*

Second, this Court must reject GNYM's vague and conclusory allegations at the outset, Compl. ¶¶ 8-9, 84 (*supra*, p.6) about these purported "Runners" – including Atty Rolnik – because GNYM does not identify who was recruited to stage purportedly "fake" accidents, nor by whom these claimants were recruited, how they were recruited, who "referred, transported, assigned, or otherwise presented these Claimants to the Liakas Firm," when this occurred, what arrangements existed for this activity, who participated in it, or what wire and/or mail fraud was involved in this alleged activity, or what bribes were paid, who they were paid to, and who made the payments and/or arrangements for the alleged bribes.[12] The same is true with the allegations, Compl. ¶127-29 (*supra,* p.7) concerning the allegations of claimant recruitment, "staging and/or perpetuating fake… accidents," communicating with claimants and the Liakas, funding and medical provider defendants in this case. No texts, no documents, no corroborating witnesses,

[12] To the extent the medical provider defendants allegedly engaged in wrongdoing as WLG and GNYM contend, even if, *arguendo*, this were true, those defendants provide medical care based on their own independent and professional judgment. There is no allegation, nor could there be, because such an allegation would be made in bad faith and ludicrous, *i.e.*, that Atty. Rolnik was controlling the actions and independent professional judgment of these medical provider defendants.

no evidence of wire or mail fraud, and nothing but "information and belief" that is just rank, self-serving speculation.

As to Atty. Rolnik specifically, he is alleged to have: (i) received and reviewed the potential claims of injured parties, including claimants referred to him by investigators; (ii) having been an attorney in "hundreds of personal injury actions" – *of course over 46-years* – some of which are referred to other attorneys; (iii) of having – in cases untethered to the action at bar – sent his investigator to take pictures, or taken pictures himself, of premises without the presence of the injured party[13]; (iv) of not using a level of advertising that GNYM believes is appropriate; (v) of sharing office space that apparently is not glitzy enough in a building of lawyers directly across from the Jacob K. Javits Federal Building with several dozen other lawyers; (vi) of having employed or previously worked with other personal injury attorneys who not parties in this case; (vii) of, on one hand succeeding as a personal injury lawyer after four-decades of practicing such that he has too many potential clients coming in the door and his practice operates like a "factory," but then on the other hand, contradictorily, of having "no uniquely substantial history" up to GNYM's standards in the cases he has litigated himself; (viii) of referring (without any actual details of who, when, where, to whom, or how) injured parties to unspecified medical professionals for treatment (and where such medical professionals are responsible for providing that care under their own independent judgment and the rules governing the medical profession); (ix) of referring some cases, and his case file (*e.g.* "packaging up" [in a case file] "the basic information of these personal injury cases") to Liakas, among other unspecified personal-injury attorney colleagues; and, (x) of the crime by association of having a

[13] Not that this activity is even actionable, but it begs the obvious question of why an injured party would even need to be present for such picture-taking activity, or if they even could be present depending on the severity and nature of their injuries that are subject of the claims and lawsuits that Mr. Rolnik is considering, has referred out, or has, himself litigated. WLG and GNYM does not explain the unlawfulness of this activity, because they cannot.

spouse that owns and operates a small litigation funding business that GNYM does not even allege has committed fraud, or is involved in any of the personal injury cases at bar, because this company has never been involved in any Liakas cases (or with the other defendant funding companies in this case). Compl. ¶¶130-55, also see *supra*, §§B(1)-(3) (citing these alleged facts).

None of the foregoing (i)-(x) alleged acts attributed to Atty. Rolnik evidence any wrongful conduct, even if *arguendo*, GNYM brought more than just conclusory allegations. To the contrary: these are unassailable rights and privileges that Mr. Rolnik enjoys as an attorney, *protected under the First Amendment, the New York State Constitution, and the New York Rules of Professional Conduct*. He is both permitted and required to perform these actions, including in the exercise of his own professional judgment, in the performance of his duties as an attorney to potential clients, actual clients, his personal-injury-attorney colleagues (including when referring cases), and as an officer of the Court. To the extent, *arguendo*, that another attorney, in the exercise of that attorney's own professional judgment, knowingly or willfully brought fraudulent claims before a Court[14] – those actions cannot be laid on Mr. Rolnik, after he has referred the case. In fact, in this Circuit, the litigation activities of Mr. Rolnik, even if, *arguendo*, they are alleged to be frivolous, fraudulent, or baseless, cannot alone, without more, "constitute [] RICO predicate act[s]. *Kim v. Kimm*, 884 F.3d 98, 104 (2d Cir. 2018); *also*, *Rajaratnam v. Motley Rice, LLC*, 449 F. Supp. 3d 45, 72 (E.D.N.Y. 2020); *Curtis & Assocs., P.C. v. L. Offs. of David M. Bushman, Esq.*, 758 F. Supp. 2d 153, 174 (E.D.N.Y. 2010). The conclusory allegation,

---

14 Of course, underlying GNYM's claims in this case, is the insurmountable claim and likely issue preclusion problems it conveniently ignores: it, or its insuree(s) on its behalf, litigated these personal injury claims, had the opportunity to bring claims that the underlying injuries were fake, staged, exaggerated, or otherwise fraudulent – and likely did in some cases – and either lost on the merits, or elected to settle those claims, or can raise its fraud averments in pending cases. *Res judicata* prevents a collateral attack on the doctors and lawyers in those resolved cases through this type of meritless and vexatious civil RICO suit, without even reaching the waivers and releases executed when settling those underlying cases, in GNYM's belated attempt to recover damages that directly flow from the claims it paid when these earlier lawsuits were resolved.

Compl. ¶137, that "[i]t is alleged" Mr. Rolnik "Rolnik gathered and continues to gather Claimants through a network of Runners, including Defendants Rodriguez, Tavarez, Sone, and others known and unknown, and, both directly and via delegation, manufactured and continues to manufacture the factual circumstances surrounding such purported accidents" cannot save this Complaint, nor do they meet the high burden required by *Kim*.

In the case at bar, Plaintiff concedes it has no evidence supporting RICO claims as to Mr. Rolnik. Compl. ¶¶274-75. What GNYM alleges here is key: first it complains that two sister claimants filed lawsuits represented by different attorneys, including through one attorney (Barry Wolfson) who is not in party in this case, or any of WLG's other 13 meritless lawsuits. Next, it vaguely claims there are "virtually indistinguishable red flags" in the nature and proximity of these two sisters' lawsuits, and alleges that Rolnik referred the other sister's case to Liakas. Of course there is no evidence of any of the foregoing. It is merely presented upon "information and belief." In fact, Plaintiff confirms it has no evidence, stating "[w]ithout discovery, same cannot be documented despite due diligence by Plaintiff, with information necessary to establish same unavailable and in the sole possession of Liakas Defendants, Rolnik, and Claimant A/Sone." This contention lays bare the canard of this entire (and all the other) lawfare suit(s): Plaintiff and its WLG attorneys have no actual, or even plausible facts, on which to rest their claims. Instead, they hope the filing of this meritless and vexatious complaint will get them to discovery and a fishing expedition where, with attorney-client privileged materials, they might be able to establish RICO predicates and a RICO conspiracy. This *must* be rejected.

Simply put, using investigators, evaluating cases, rejecting some potential claimants, litigating (himself) the cases of some claimants, and then referring other cases to his colleagues, including the Liakas defendants, is not evidence of wrongful conduct. It is the every-day

practice of law, especially in the personal-injury legal landscape, and it is an entirely reasonable, and in fact expected activity, for an attorney of his experience, reputation, and network, after 46 years' of experience, during and after the COVID-19 global health pandemic, when and as Atty. Rolnik has understandably kept his office open for business, but begun to reduce his case-load as a sole-practitioner with a view towards future retirement.

For these reasons alone, he must be dismissed out of this case, with prejudice.

## II. PLAINTIFF FAILS TO STATE RICO CLAIM(S)

### i. Legal Standard

Under FRCP 12(b)(6) and *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009), a complaint cannot survive a motion to dismiss unless it contains sufficient facts to "state a claim to relief that is plausible on its face." While "a court must accept as true all of the allegations contained in a complaint," "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice," *id.*, in this Circuit nor do "legal conclusions couched as factual allegations," *Dixon v. von Blanckensee*, 994 F.3d 95, 101 (2d Cir. 2021).

As Plaintiff's concede, Compl. ¶¶74, under RICO, they must plead predicate acts sufficient to demonstrate of racketeering activity include mail fraud (18 U.S.C. § 1341), wire fraud (18 U.S.C. § 1343), Hobbs Act violations (18 U.S.C. § 1951), Travel Act violations (18 U.S.C. § 1952), and bribery under state law – and they must plead a "pattern" of racketeering activity.[15] Under 18 U.S.C. § 1962(c), "[t]o establish a civil RICO claim," a plaintiff must plausibly allege "(1) conduct, (2) of an enterprise, (3) through a pattern (4) of racketeering activity," and (5) "injury to business or property." – and "[t]he pattern of racketeering activity must consist of two or more predicate acts of racketeering. *Lundy v. Cath. Health Sys. of Long*

[15] We highlight that Plaintiff's Complaint only focuses on bribery and other laws pertaining to the practice of medicine, not the law, for obvious reasons. *Id.*¶¶68-73; *also* Argument Point I, *supra*.

*Island, Inc.*, 711 F.3d 106, 119 (2d Cir. 2013). "The RICO conduct must be both the proximate and but for cause of the plaintiff's injury." *Spiteri v. Russo*, No. 12-cv-2780, 2013 WL 4806960, at *45 (E.D.N.Y. Sept. 7, 2013), *aff'd sub nom. Spiteri v. Camacho*, 622 F. App'x 9 (2d Cir. 2015). Importantly, "[p]laintiff's burden is high when pleading RICO allegations." *Id.*

When the racketeering activity is fraud, a plaintiff must plead its fraud allegations with particularity under FRCP 9(b). *Id.*; *Lundy*, 711 F.3d at 119; *First Cap. Asset Mgmt., Inc. v. Satinwood, Inc.*, 385 F.3d 159, 178–79 (2d Cir. 2004). Given the power and damaging import of civil RICO claims, Courts are required to closely scrutinize the claims and Complaint, given the "damaging effects on the reputations of individuals alleged to be engaged in RICO enterprises and conspiracies." *Spiteri*, 2013 WL 4806960, at *45. As civil RICO "is an unusually potent weapon—the litigation equivalent of a thermonuclear device," allowing as suit predicated on conclusory claims to proceed past a threshold Rule 12 motion, risks substantial abuse of the statute. *Turner v. New York Rosbruch/Harnik, Inc.*, 84 F. Supp. 3d. 161, 167 (E.D.N.Y. 2015).[16]

**ii. <u>Plaintiff Has Not (and Cannot) Plausibly Allege RICO Predicate Acts</u>**

Under RICO's requirements, Plaintiff attempts in vain to allege four predicates: mail and wire fraud, 18 U.S.C. §§ 1341, 1343; Hobbs Act violations, 18 U.S.C. § 1951; Travel Act violations, 18 U.S.C. § 1952; and violations of N.Y. Penal Law §§ 215.00, 215.05. See *e.g.*, Compl. ¶¶ 74-81, 112, 574, 606. However, as set forth *post*, Plaintiff has not plausibly alleged, with particularity, any requisite RICO predicate acts.

***a. <u>GNYM Has Not Alleged Mail or Wire Fraud with Particularity</u>***

Under FRCP 9(b) and the authorities cited *supra*, wire and mail fraud must be alleged with particularity, and here they are not. Under *Williams v. Affinion Grp.*, LLC, 889 F.3d 116,

[16] It is for this reason, that most civil RICO suits fail at this threshold motion to dismiss stage. *Sky Med. Supply Inc. v. SCS Support Claims Servs., Inc.*, 17 F. Supp. 3d 207, 220-21 (E.D.N.Y. 2014).

124 (2d Cir. 2018), "[t]he elements of mail or wire fraud are (i) a scheme to defraud (ii) to get money or property (iii) furthered by the use of interstate mail or wires." The "gravamen of the offense is the scheme to defraud," which is "a plan to deprive a person of something of value by trick, deceit, chicane or overreading" and it requires a defendant's material misrepresentation. *Id.* Under FRCP 9(b), Plaintiff must allege the specific false or fraudulent statements, the speaker, when and where the statements were made, and why the statements were fraudulent – and when multiple defendants are present, "Rule 9(b) requires that the plaintiffs allege facts specifying each defendant's contribution to the fraud." *DeFazio v. Wallis*, No. 05-cv-5712, 2006 WL 4005577, at *2-4 (E.D.N.Y. Dec. 9, 2006). What is more, a plaintiff must also allege "a conscious knowing intent to defraud . . . and that the defendant contemplated or intended some harm to the property rights of the victim." *Jun An v. Zhang*, 13-cv-5064, 2013 WL 6503513, at *5 (S.D.N.Y. Dec. 6, 2013).

None of the foregoing has been pled, nor even could it be pled: in sum and substance, GNYM alleges, from a 30,000-foot view, purported wire and mail fraud supported only by the existence of personal injury lawsuits, and that there are overlapping doctors, or lawyers, or investigators, or parties, persons and tangentially involved entities in those lawsuits. There is no particularity, let alone evidence of specific, purportedly fraudulent wire or mail frauds, or in fact any wire or mail fraud. This is without reaching the litigation privilege that exists for statements made in lawsuits, or the *res judicata* hurdles plaintiff cannot overcome, because it is actually alleging damages arising out of lawsuits it (or its insuree(s)) willingly settled, or lost on the merits. There is no evidence of Mr. Rolnik's statements even suggesting a material misrepresentation, much less any fraudulent statements attributed to him, or even any allegation that he had a conscious, knowing intent to defraud, other than the easily discardable and

conclusory statements that "it is alleged" or "upon information and belief" upon which Plaintiff's claims rest, *supra* §B.

### ***b. Plaintiff Has no Hobbs Act, Travel Act, or Penal Law Claims against Mr. Rolnik***

We highlight that Plaintiff has brought no Hobbs or Travel Act, or Penal Law claims against Mr. Rolnik. In fact, it has brought no RICO Violations claims against Mr. Rolnik, nor could it plausibly allege any. For these reasons, we incorporate by reference, as if restated herein, the facts and arguments made by the Liakas defendants in their briefing that Plaintiff has not plausibly alleged RICO predicate acts, and therefore has failed to state a RICO Claim (see, *e.g.*, Liakas opening brief at pp.7-19).

## III. BECAUSE PLAINTIFF CANNOT PLAUSIBLY ALLEGE RICO PREDICATE ACTS, ITS RICO CONSPIRACY CLAIMS FAIL

Because GNYM failed to plead with particularity, a substantive RICO claim, its RICO conspiracy claims must fail and be dismissed, including with prejudice as to Atty. Rolnik. See *e.g.*, *Condos Bros. Constr. Corp. v. Main St. Am. Assurance Co.*, 280 F. Supp. 3d 349, 356 (E.D.N.Y. 2017).

As to Atty. Rolnik, Plaintiff first only alleges – again in conclusory fashion – that "Rolnik agreed to, and did, provide substantial assistance through the management of the runner networks and referrals sourced through runners." Compl. ¶614. Nowhere within the four-corners of the Complaint does GNYM allege that Mr. Rolnik agreed to participate in an interdependent enterprise, nor does it even allege that Mr. Rolnik agreed that his own actions would depend on, or be effectuated by a coordinated enterprise. At most, Plaintiff alleges parallel participation among the various independent defendants – all exercising their own independent and professional judgment under the contours of the professional license(s) they hold. Compl. ¶90. That is not an *agreement*, nor could it be one. In this Circuit, conclusory statements such as this

require dismissal. *United States v. Laurent*, 33 F.4th 63, 76 (2d Cir. 2022). Moreover, this is woefully insufficient to allege that Mr. Rolnik reached an understanding to achieve a general unlawful objective. *United States v. Applins*, 637 F.3d 59, 72-75 (2d Cir. 2011); also *Campos v. Lavinsky*, 22-cv-1278, 2022 WL 16950054, *3 (E.D.N.Y. Nov. 14, 2022).

Plaintiff's second RICO Conspiracy claim brought against Atty. Rolnik fares no better. Again, GNYM brings conclusory, implausible allegations unsupported by the facts presented in the Complaint, averring in relevant part, Compl. ¶644:

> From at least 2018 to the present, Count V Defendants did unlawfully, knowingly, and intentionally, combine, conspire, confederate, and agree together with each other, and with others whose names are known or unknown, to conduct and participate, directly and indirectly, in the conduct of the affairs of the Liakas Firm Enterprise through a pattern of racketeering activity.

As described above, there are no RICO predicate acts attributed to Mr. Rolnik. Nor is this sufficiently plausible to allege that he "knowingly and willfully join[ed] the conspiracy." See *e.g.*, *United States v. Kukushkin*, 61 F.4th 327, 334 (2d Cir. 2023). This is precisely the type of allegation that has been rejected in the other, nearly-identical RICO cases brought by WLG. *Roosevelt Road Re, Ltd. v. Haggar, et al.*, No. 24-cv-1549, 2026 WL 682192 at *14-15 (E.D.N.Y. Mar. 11, 2026). Simply put, all of Plaintiff's allegations are plainly deficient and fatally defective to state a RICO conspiracy claim.

For these reasons, GNYM's RICO conspiracy claims against Mr. Rolnik should be dismissed with prejudice.

## IV. Plaintiff Lacks Standing

Civil RICO standing is "a more rigorous matter than standing under Article III." *DLJ Mortg. Cap., Inc. v. Kontogiannis*, 726 F. Supp. 2d 225, 236 (E.D.N.Y. 2010). Here, under 18 U.S.C. §1964(c), GNYM's injury to business or property must be caused by a violation of §1962. *Hecht v. Com. Clearing House, Inc.*, 897 F.2d 21, 23 (2d Cir. 1990). As to Mr. Rolnik, each defendant's predicate acts must be the "but for" and "proximate cause" of the plaintiff's injury. *Holmes v. Sec. Inv. Prot. Corp.*, 503 U.S. 258, 268 (1992). Also, "statutory standing under RICO incorporates an enhanced ripeness requirement." *Sky Med. Supply Inc.*, 17 F. Supp. 3d at 231 (internal citations omitted). Accordingly, damages must be "clear and definite," *First Nationwide Bank v. Gelt Funding* Corp., 27 F.3d 763, 768–69 (2d Cir. 1994), and a plaintiff must allege a "direct relation" between the injury and the defendant's conduct. *Hemi Grp., LLC v. City of New York*, 559 U.S. 1, 9 (2010). Under the teaching of *Holmes*, *supra*, injury from harm allegedly suffered by third parties is "too remote" for recovery. 503 U.S. at 268–69. At its foundation, all of GNYM's purported harm is (a) contingent upon the harm suffered by non-party property owners and insuree(s), and (b) this alleged injury arises in either cases where its insurree(s) settled, or the cases were resolved on the merits, or in pending cases where these fraud claims can be brought in state court. Accordingly, as only an insurer, GNYM was "neither the target of the racketeering enterprise . . . nor the customer of the racketeers." *Hecht*, 897 F.2d at 24; also *Anza v. Ideal Steel Supply Co.*, 547 U.S. 451, 458–61 (2006). It is for this precise reason that WLG's other RICO suits cited *supra* at n.1 – which have had motions to dismiss granted – have had Judges in this District dismiss for, *inter alia*, lack of standing. This case should fare no better.

Finally, Plaintiff's purported damages are not clear or definite, nor are they ripe. Compl. ¶¶96, 125, 563, 595, 631, 649. No single payment or any details (*i.e.* amount, date, recipient,

underlying claims, case and caption, etc.) are identified or presented, and to the extent GNYM has identified pending cases, civil RICO is not a vehicle to litigate hypothetical damages. *Sky Medical*, 17 F. Supp. 3d at 231–34 & n.11.

## V. THIS COURT SHOULD NOT EXERCISE SUPPLEMENTAL JURISDICTION OVER PLAINTIFF'S STATE LAW CLAIMS

Under 28 U.S.C. § 1367(a), a District court may exercise supplemental jurisdiction over claims "so related to claims in the [Federal] action within such original jurisdiction that they form part of the same case or controversy." *Jones v. Ford Motor Credit Co.*, 358 F.3d 205, 212 (2d Cir. 2004). But, under 28 U.S.C. § 1367(c)(3), supplemental jurisdiction may be declined when all federal claims are dismissed. *Kolari v. New York-Presbyterian Hosp.*, 455 F.3d 118, 122 (2d Cir. 2006); also, *Sky Medical*, 17 F. Supp. 3d at 236 (collecting cases).

Because, as set forth *supra*, Plaintiff's federal RICO claims fail, this Court should decline to exercise supplemental jurisdiction over the state law aiding and abetting fraud (Count VIII) claims, as asserted against Mr. Rolnik, which also fail for the same reasons discussed *supra*.

## VI. OTHER DEFICIENCIES IN THE COMPLAINT REQUIRE ITS DISMISSAL

A RICO complaint must comply with FRCP 8's notice pleading requirements. *United States v. Bonanno Organized Crime Fam. of La Cosa Nostra*, 683 F. Supp. 1411, 1428 (E.D.N.Y. 1988), *aff'd*, 879 F.2d 20 (2d Cir. 1989). Under FRCP 8(a), a complaint shall set forth "a short and plain statement of the claim showing that the pleader is entitled to relief." FRCP 8(d) requires that each "allegation must be simple, concise and direct." Under *Bonnano*, "[a] complaint's insufficiency under [FRCP] 8(a) may provide the basis for a motion to dismiss under Rule 12(b)(6)." 683 F. Supp. at 1428. This Complaint plainly violates FRCP 8, and District courts in this Circuit have dismissed complaints, like this one ( containing 713 paragraphs over 207 pages) under FRCP 8. See *e.g.*, *Donlon v. City of New York*, No. 25-cv-5831, 2026 WL

456892, at *1, *6 (S.D.N.Y. Feb. 18, 2026) (explaining that a "lengthy" 243-page civil RICO complaint that devoted much of its content to argument failed to comply with FRCP 8).

RICO's four-year statute of limitations also bars this suit. *Agency Holding Corp. v. Malley-Duff & Assocs., Inc.*, 483 U.S. 143, 156 (1987); also *Koch v. Christie's Intern, PLC*, 699 F.3d 141, 151 (2d Cir. 2012) (explaining inquiry notice standard for RICO claims). Plaintiff concedes it was on notice of the claims "[s]ince at least 2018" – more than four years before commencing the instant case on January 27, 2026 – when it alleges the RICO and fraud schemes commenced. Compl. ¶¶82, 119; *supra* at p. 21 (citing Compl. ¶644).

## VII. PLAINTIFF AND ITS WLG ATTORNEYS BROUGHT THIS UNREASONABLE AND VEXATIOUS LAWSUIT IN BAD FAITH, THEREFORE AN AWARD OF ATTORNEY FEES AND COSTS TO MR. ROLNIK IS APPROPRIATE

Under 28 U.S.C. § 1927 and this Court's inherent authority, an award of attorneys' fees and costs to Mr. Rolnik is appropriate. As described *supra*, and is plainly evident on the face of the Complaint in this case, and in the pleadings of the other RICO actions brought in this District – including before this Court – which name Mr. Rolnik directly or indirectly; there can be no doubt that WLG and its client(s) have unreasonably and vexatiously acted in bad faith by bringing frivolous and meritless claims against Mr. Rolnik, with the sole purpose of intimidating and harassing him, and to increase his costs as an attorney representing injured parties.

This case – and the other nearly identical RICO cases WLG has brought – is precisely the "potent weapon [and] the litigation equivalent of a thermonuclear device" warned about in *Turner*, 84 F. Supp. 3d. at 167 – and it clearly illustrates the "damaging effects on the reputations of individuals alleged to be engaged in RICO enterprises and conspiracies" discussed in *Spiteri*, 2013 WL 4806960, at *45. Mr. Rolnik, like all the defendants, has had to devote substantial resources to defending himself in this action, and both Plaintiff and WLGs conduct cannot go unsanctioned. At the end of the day, that is the goal of lawfare in lawsuits like this: to make the

costs of litigation – and doing business – so steep, that defendants like Mr. Rolnik change their behavior to avoid these substantial costs (and risks), *and not because there is any wrongful conduct in their behavior*. That is the ultimate goal that GNYM seeks to achieve, because then it will have to pay less damages to the injured citizens living in this District and across New York, when capable, distinguished and long-practicing attorneys like Mr. Rolnik stop taking on clients, evaluating potential client(s)' claims, or referring cases he cannot litigate to capable other personal injury clients. That is GNYM's hope, insofar that a fear of additional litigation, its attendant costs, and natural human risk-avoidance tendencies will effectively reduce the caseload of personal injury lawsuits in New York, and enable it to drive up its profits.

Accordingly, this is the case *and the defendant* for which justice requires the sanction of fees and costs under this Court's inherent authority, and 28 U.S.C. § 1927.

## CONCLUSION

For the reasons stated above, Defendant Mark Rolnik respectfully requests that the Court grant his motion to dismiss the Complaint in its entirety, and with prejudice, together with an award of fees and costs, and any such other and further relief as the Court deems just and proper.

Dated: New York, New York
July 10, 2026

Respectfully submitted,

/s/ Benjamin J. Ashmore Sr.
Benjamin J. Ashmore Sr., Esq.
(Bar No.: 5902366)

THE ASHMORE FIRM PLLC
420 Lexington Avenue, Suite 300
New York, New York 10170
(800) 955-0629
Fax: (212) 656-1375
Cell: (917) 750-9212
ben.ashmore.sr@ashmore.law

*Attorneys for Defendant*

**CERTIFICATION**

I hereby certify that this Memorandum of Law complies with the typeface and page limitations set forth in this Court's Individual and Local Rules, because it totals 25 pages, excluding those portions of the brief exempted by rule.

.

Dated: New York, New York
July 10, 2026

Respectfully submitted,

/s/ Benjamin J. Ashmore Sr.
Benjamin J. Ashmore Sr., Esq.
(Bar No.: 5902366)

THE ASHMORE FIRM PLLC
420 Lexington Avenue, Suite 300
New York, New York 10170
(800) 955-0629
Fax: (212) 656-1375
Cell: (917) 750-9212
ben.ashmore.sr@ashmore.law

*Attorneys for Defendant*