UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
---------------------------------------------------------------x

GREATER NEW YORK MUTUAL INSURANCE COMPANY, 26-CV-00450 (FB) (PK)

*Plaintiff,*

-against-

LIAKAS LAW, P.C., *et al.*,

*Defendants.*

---------------------------------------------------------------x

**PLAINTIFF'S MEMORANDUM OF LAW IN OPPOSITION TO DEFENDANT MARK D. ROLNIK'S MOTION TO DISMISS THE COMPLAINT & FOR SANCTIONS UNDER 28 U.S.C. § 1927 AND *VIA* THE COURT'S INHERENT POWER**

Dated: Melville, New York
August 14, 2026

**THE WILLIS LAW GROUP, PLLC**
Daniel A. Johnston, Esq.
60 Broadhollow Road
Melville, New York 11747
*Attorneys for Plaintiff Greater New York Mutual Insurance Company*

## TABLE OF CONTENTS


PRELIMINARY STATEMENT .......... 1

STATEMENT OF RELEVANT ALLEGATIONS .......... 6

ARGUMENT .......... 9

- POINT I: THE COURT SHOULD DISREGARD OR STRIKE ROLNIK'S EXTRINSIC DECLARATIONS .......... 9
- POINT II: IN THE ALTERNATIVE, THE DECLARATIONS CORROBORATE THE COMPLAINT .......... 11
- POINT III: THE ALLEGED CONDUCT IS NOT IMMUNIZED BY THE FIRST AMENDMENT, THE RULES OF PROFESSIONAL CONDUCT, OR KIM v. KIMM .......... 12
- POINT IV: THE PREDICATE ACTS OF THE FRAUD SCHEME ARE SUFFICIENTLY PLED AND NEED NOT BE PLED "AGAINST" ROLNIK .......... 15
- POINT V: THE RICO CONSPIRACY AND AIDING-AND-ABETTING CLAIMS AGAINST ROLNIK ARE PROPERLY PLED .......... 16
- POINT VI: GNY HAS RICO STANDING AS A PRIMARY INSURER .......... 18
- POINT VII: THE CLAIMS ARE TIMELY .......... 21
- POINT VIII: RES JUDICATA AND THE UNDERLYING RELEASES ARE NOT GROUNDS FOR DISMISSAL .......... 22
- POINT IX: THE COMPLAINT COMPLIES WITH RULE 8; SUPPLEMENTAL JURISDICTION SHOULD BE RETAINED .......... 22
- POINT X: THE SANCTIONS REQUEST IS FRIVOLOUS .......... 23

CONCLUSION .......... 24

## TABLE OF AUTHORITIES

Page(s)

**Cases**

*1567 56th St., LLC v. Spitzer*, 774 F. Supp. 3d 476 (E.D.N.Y. 2025) .......... *17*

*Alix v. McKinsey & Co.*, 23 F.4th 196 (2d Cir. 2022) .......... *20*

*Allstate Ins. Co. v. Avetisyan*, 2021 WL 1227625 (E.D.N.Y. Mar. 5, 2021) .......... *16*

*Allstate Ins. Co. v. Lyons*, 843 F. Supp. 2d 358 (E.D.N.Y. 2012) .......... *16*

*Allstate Ins. Co. v. Plambeck*, 802 F.3d 665 (5th Cir. 2015) .......... *6*, *19*

*Allstate Ins. Co. v. Seigel*, 312 F. Supp. 2d 260 (D. Conn. 2004) .......... *6*

*Anza v. Ideal Steel Supply Corp.*, 547 U.S. 451 (2006) .......... *20*

*Ashcroft v. Iqbal*, 556 U.S. 662 (2009) .......... *12*

*Baisch v. Gallina*, 346 F.3d 366 (2d Cir. 2003) .......... *17*

*Bankers Trust Co. v. Rhoades*, 859 F.2d 1096 (2d Cir. 1988) .......... *21*

*Carroll v. U.S. Equities Corp.*, 2020 U.S. Dist. LEXIS 258605 (N.D.N.Y. Nov. 30, 2020) .......... *14*

*Chambers v. Time Warner, Inc.*, 282 F.3d 147 (2d Cir. 2002) .......... *9*

*Crawford v. Franklin Credit Mgmt. Corp.*, 758 F.3d 473 (2d Cir. 2014) .......... *16*

*D'Addario v. D'Addario*, 901 F.3d 80 (2d Cir. 2018) .......... *20*, *21*

*Donlon v. City of New York*, 2026 U.S. Dist. LEXIS 33441 (S.D.N.Y. Feb. 18, 2026) .......... *22*

*Ellul v. Congregation of Christian Bros.*, 774 F.3d 791 (2d Cir. 2014) .......... *21*

*Empire Merchs., LLC v. Reliable Churchill LLLP*, 902 F.3d 132 (2d Cir. 2018) .......... *16*

*Enmon v. Prospect Cap. Corp.*, 675 F.3d 138 (2d Cir. 2012) .......... *23*

*F3Ea Funding*, 2019 U.S. Dist. LEXIS 243118 (E.D.N.Y. 2019) .......... *17*

*First Cap. Asset Mgmt., Inc. v. Satinwood, Inc.*, 385 F.3d 159 (2d Cir. 2004) .......... *16*

*Friedl v. City of New York*, 210 F.3d 79 (2d Cir. 2000) .......... *9*

*GEICO v. Akiva Imaging Inc.*, 2025 U.S. Dist. LEXIS 95138 (E.D.N.Y. May 19, 2025) .......... *20*

*GEICO v. Star Med. Diagnostic, P.C.*, 2025 U.S. Dist. LEXIS 98897 (E.D.N.Y. May 23, 2025) .......... *15*

*Global Network Commc'ns, Inc. v. City of New York*, 458 F.3d 150 (2d Cir. 2006) .......... *9*, *10*

*Hecht v. Commerce Clearing House, Inc.*, 907 F.2d 21 (2d Cir. 1990) .......... *17*

*Hemi Grp., LLC v. City of New York*, 559 U.S. 1 (2010) .......... *20*

*Holmes v. Sec. Inv. Prot. Corp.*, 503 U.S. 258 (1992) .......... *20*

*Illinois ex rel. Madigan v. Telemarketing Assocs., Inc.*, 538 U.S. 600 (2003) .......... *3*, *13*

*Ionian Re, LLC v. Gorayeb*, No. 1:24-cv-07098, ECF 106 (E.D.N.Y. Apr. 16, 2026) ................*19*

*Kamen v. Am. Tel. & Tel. Co.*, 791 F.2d 1006 (2d Cir. 1986) ......................................................*10*

*Kim v. Kimm*, 884 F.3d 98 (2d Cir. 2018)...................................................................*3*, *12*, *13*, *14*

*Koch v. Christie's Int'l PLC*, 699 F.3d 141 (2d Cir. 2012) ..........................................................*21*

*Lerner v. Fleet Bank, N.A.*, 459 F.3d 273 (2d Cir. 2006) ............................................................*18*

*Loreley Fin. (Jersey) No. 3 Ltd. v. Wells Fargo Sec., LLC*, 797 F.3d 160 (2d Cir. 2015)............*15*

*Marvel Characters, Inc. v. Simon*, 310 F.3d 280 (2d Cir. 2002) ..................................................*22*

*McCarthy v. Dun & Bradstreet Corp.*, 482 F.3d 184 (2d Cir. 2007) .............................................*9*

*Moss v. BMO Harris Bank, N.A.*, 258 F. Supp. 3d 289 (E.D.N.Y. 2017) ....................................*17*

*NAACP v. Button*, 371 U.S. 415 (1963)........................................................................................*13*

*Oliveri v. Thompson*, 803 F.2d 1265 (2d Cir. 1986).....................................................................*23*

*Roosevelt Rd. Re, Ltd. v. Haggar*, 2026 U.S. Dist. LEXIS 50451 (E.D.N.Y. Mar. 11, 2026) ......*19*

*Roosevelt Rd. Re, Ltd. v. Schwitzer*, 2026 U.S. Dist. LEXIS 33139 (E.D.N.Y. Feb. 18, 2026)....*19*

*Roosevelt Rd. Re, Ltd. v. Subin*, 2025 U.S. Dist. LEXIS 117080 (E.D.N.Y. June 19, 2025)........*19*

*Roosevelt Rd. Re, Ltd. v. Subin*, 2026 U.S. App. LEXIS 21743 (2d Cir. July 22, 2026) ..........*6*, *19*

*Rotella v. Wood*, 528 U.S. 549 (2000) ..........................................................................................*21*

*Roth v. Jennings*, 489 F.3d 499 (2d Cir. 2007) .............................................................................*10*

*Salinas v. United States*, 522 U.S. 52 (1997).....................................................................*3*, *15*, *17*

*Schmuck v. United States*, 489 U.S. 705 (1989) ...........................................................................*16*

*State Farm Mut. Auto. Ins. Co. v. Tri-Borough NY Med. Practice, P.C.*, 120 F.4th 59 (2d Cir. 2024).............................................................................................................................*3*, *14*

*Swan USA, Inc. v. Wesco Ins. Co.*, 217 A.D.3d 987 (2d Dep't 2023) ..........................................*19*

*Sykes v. Mel Harris & Assocs., LLC*, 757 F. Supp. 2d 413 (S.D.N.Y. 2010)...............................*14*

*Town of Massena v. Healthcare Underwriters Mut. Ins. Co.*, 98 N.Y.2d 435 (2002)..................*19*

*Uber Techs., Inc. v. Simon & Simon, P.C.*, 2026 U.S. Dist. LEXIS 103792 (E.D. Pa. May 11, 2026).......................................................................................................................................*14*

*Union Mut. Fire Ins. Co. v. Citimed Servs., P.A.*, 2026 U.S. Dist. LEXIS 59287 (E.D.N.Y. Mar. 20, 2026).................................................................................................................................*16*

*Union Mut. Fire Ins. Co. v. Subin*, No. 1:25-cv-02652-OEM-CLP, ECF No. 17 (E.D.N.Y. Aug. 14, 2026)...................................................................................................................................*6*

*United States v. Aleskerova*, 300 F.3d 286 (2d Cir. 2002)............................................................*17*

*United States v. Alvarez*, 567 U.S. 709 (2012) .............................................................................*13*

*United States v. Anderson*, 747 F.3d 51 (2d Cir. 2014) ................................................................*17*

*United States v. Applins*, 637 F.3d 59 (2d Cir. 2011) ...................................................................*15*

*United States v. Eisen*, 974 F.2d 246 (2d Cir. 1992) ................................................................*3*, *13*

**Statutes**

18 U.S.C. § 1962(c) ..........................................................................................................*23*
18 U.S.C. § 1962(d) ........................................................................................*3*, *15*, *17*, *23*
28 U.S.C. § 1367(a) ..........................................................................................................*23*
28 U.S.C. § 1746 ..............................................................................................................*10*
28 U.S.C. § 1927 ..............................................................................................................*23*
N.Y. C.P.L.R. § 3101(f) ...............................................................................................*6*, *20*
N.Y. Jud. Law §§ 479, 481–482 ......................................................................................*13*

**Rules**

Fed. R. Civ. P. 8 ..............................................................................................................*22*
Fed. R. Civ. P. 8(c) ..........................................................................................................*22*
Fed. R. Civ. P. 9(b) .............................................................................*15*, *16*, *17*, *22*
Fed. R. Civ. P. 12(b)(6) ...............................................................................*1*, *9*, *22*, *23*, *24*
Fed. R. Civ. P. 12(d) .....................................................................................................*9*, *11*
Fed. R. Civ. P. 15(a) ........................................................................................................*24*
Fed. R. Civ. P. 26 ...............................................................................................................*1*
Fed. R. Civ. P. 56(d) ........................................................................................................*10*
Fed. R. Evid. 201 ............................................................................................................*10*

**Other Authorities**

N.Y. R. Prof'l Conduct 7.2(a) .........................................................................................*13*

## PRELIMINARY STATEMENT

Plaintiff Greater New York Mutual Insurance Company ("GNY") submits this memorandum in opposition to the motion to dismiss and cross-motion for attorneys' fees filed by Defendant Mark D. Rolnik ("Rolnik").

Rolnik's motion and memorandum in support ("Mot.") refuses to accept the single premise on which every Rule 12(b)(6) motion depends: that the Complaint's well-pleaded allegations are considered as true for purposes of testing legal sufficiency. Rather than so test the legal sufficiency of the Complaint (ECF No. 1) as the law requires, and despite the procedural posture which renders same impermissible, Rolnik attempts to create a counter-narrative. This misguided effort is supported by an attorney affirmation and two extrinsic declarations – notably, neither from Rolnik himself - insisting that the allegations are false, that GNY has "no evidence," and that discovery should be denied so that no evidence may ever be obtained.

That is not a motion to dismiss. It is a premature motion for summary judgment on a one-sided record, filed before an answer, before Rule 26 disclosures, and before a single document has been produced. This is the crux of the procedurally backward motion, and it should be denied.

The motion also misdescribes the pleading it attacks. Rolnik tells the Court he is sued for nothing more than "referring cases" and the "unassailable rights and privileges" of a lawyer winding down his practice. The Complaint alleges something quite different, and quite specific.

The Complaint alleges that Rolnik sits at the hub of the Fraud Scheme's referral and funding network: that he gathered claimants through a network of named Runner Defendants, including co-defendants Rodriguez, Tavarez, and Sone, and "manufactured… the factual circumstances surrounding such purported accidents." Compl. ¶¶ 130, 137. Rolnik herein claims such "implausible allegations" are "without a scintilla of evidence," "incredulous[]," and "smoke

and mirrors." DMOL, pp. 8, 9. This is difficult to square with a pleading which quotes Rolnik's *own sworn deposition testimony* of December 21, 2022, in which he admitted that he - as the referral source, not counsel of record - personally photographed the purported "defect," alone, without the claimant, and transmitted those photographs to the receiving firm to prosecute the claim, while the camera and original images (and their metadata) had disappeared. Compl. ¶¶ 140–42. It alleges that Runner Defendant Rodriguez - Rolnik's purported investigator - testified that he photographed a "defect" *at Rolnik's instruction*, having "never spoken" to the claimant. Compl. ¶¶ 143, 150. Rodriguez, too, was unable to produce originals or metadata, blaming it on usage of a burner phone to take pictures.

It alleges that Runner Defendant Tavarez accompanied a claimant to the emergency room on the day of a purported accident, gave a false name, and gave hospital staff the email address of *Rolnik's paralegal* as his contact information. Compl. ¶ 146. And it alleges that Rolnik referred cases out while "maintaining an interest in [their] outcome" through litigation funding: in the very matter Rodriguez photographed at Rolnik's direction, the claimant's funding came from Highlands Lending Corp. - the company owned by Rolnik's wife - with the funding authorization directed to Rolnik's own law-office address. Compl. ¶¶ 149–51; *see also* Compl. ¶ 169 n.2 (identifying Index No. 510549/2019, an action brought by Rolnik and "self-funded through Highland Lending").

None of the above is simply "referring cases," nor is it speculative or conclusory as Rolnik argues. The Complaint spans 713 paragraphs, devotes more than 86 pages to six exemplar claimants (an average of more than 14 pages each) supported by documentary exhibits including medical records, intake forms, surgical scheduling sheets, and billing, lien, and funding records, and lays out 71 predicate acts in dedicated "who/what/when/how" tables. Compl. ¶¶ 270–560; Compl. pp. 166–69.

Rolnik is named in Count III (RICO conspiracy, 18 U.S.C. § 1962(d)), Count V (RICO conspiracy, Liakas Firm Enterprise), and Count VIII (aiding and abetting fraud). A § 1962(d) defendant need not commit, or even agree personally to commit, any predicate act; it suffices that he "adopt[ed] the goal of furthering or facilitating the criminal endeavor." *Salinas v. United States*, 522 U.S. 52, 63–66 (1997). Rolnik's lengthy argument that no predicates are pled against him answers a claim GNY has not brought, and does not save him from the conspiracy counts.

Rolnik's lead argument that everything alleged against him is "absolutely privileged" First Amendment activity fares no better. Staging accident documentation, as alleged, is not petitioning activity. Directing and paying runners, as alleged, is not association. His paralegal's email information showing up in a Claimant's emergency-room intake (accompanied by alleged runner Tavarez) is not advocacy. "[T]he First Amendment does not shield fraud," *Illinois ex rel. Madigan v. Telemarketing Assocs., Inc.*, 538 U.S. 600, 612 (2003), and the Second Circuit has previously affirmed the criminal RICO convictions of personal-injury attorneys who "went well beyond their capacities as legal representatives" by pursuing counterfeit claims through manufactured evidence, precisely what is alleged here. *United States v. Eisen*, 974 F.2d 246, 251–54 (2d Cir. 1992).

*Kim v. Kimm* - the sole authority for Rolnik's claimed immunity - governs only schemes that "consist[] entirely of litigation activity," 884 F.3d 98, 104–05 (2d Cir. 2018), and as the Second Circuit has since confirmed, *Kim* applies to a *single* litigation, and not a scheme where litigation simply serves as the means to monetize as a component of larger scheme existing outside the courthouse. *State Farm Mut. Auto. Ins. Co. v. Tri-Borough NY Med. Practice, P.C.*, 120 F.4th 59, 98 n.14 (2d Cir. 2024). The scheme alleged here begins on the sidewalk, in the clinic, in the retainers and referrals, and at the funding desk, long before any pleading is filed. The allegations credibly place Rolnik at the intersection of 3 of those 4 waystations. Because a co-defendant

touched the courthouse doorknob – which Rolnik is notably not alleged to have done at all – does not immunize all co-defendants in the blanket fashion suggested.

Similarly, the arguments regarding lack of predicate acts alleged against Rolnik fail at their foundation. The argument that wire and mail fraud are not sufficiently pled as against Rolnik,[1] that "Plaintiff Has no Hobbs Act, Travel Act, or Penal Law Claims against Mr. Rolnik," DMOL, p. 20, and "there are no RICO predicate acts attributed to Mr. Rolnik," Mot. 21, all entirely miss the mark. Rolnik is a conspiracy Defendant only under RICO, which requires no overt act or agreement as to specific acts, only circumstantial evidence pled at the pleading stage, under a standard plausibility analysis, from which knowing agreement and participation in furtherance of the conspiracy's goals need be pled. Beyond the pleading itself, Rolnik has now voluntarily offered up sworn corroboration of the very circumstantial evidence pled against him.

The extrinsic declarations Rolnik improperly submits, moreover, *corroborate the Complaint*. His office manager swears (largely "upon information and belief," about records *she herself* claims to maintain) that since 2020, this solo practitioner - with no advertising, no website, no storefront, no billboards - referred **796 cases** to other firms, **372 to the Liakas Firm alone,** with the "vast majority of these referrals occur[ring] in the early 2020's." Ashmore Aff. Ex. 1 ¶¶ 9, 12. That is sworn corroboration of the Complaint's allegation that Rolnik "broker[s] massive volumes of highly suspicious personal injury cases" to firms accused of fraud. Compl. ¶ 136.

While confirming such cases were referred to 11 different law firms, Rolnik fails to recognize that the fact 372 - **47%** - of such cases went to Liakas post-2020; *precisely* consistent with the allegations in the Complaint, including that "Rolnik is affiliated with hundreds of personal

---

[1] "There is no evidence of Mr. Rolnik's statements even suggesting a material misrepresentation, much less any fraudulent statements attributed to him, or even any allegation that he had a conscious, knowing intent to defraud." DMOL, p. 19.

injury actions, the vast majority of which are referred out. Prior to 2020, the majority of these cases were referred to Bader & Yakaitis; from 2020 on, many of these referrals were directed to Liakas Firm, in addition to other firms." Compl. ¶ 131.

Rolnik characterizes this as a "small scale of activity," noting that "over this period of time in Mr. Rolnik's Law Practice, he has referred, on average, 2 cases per week to other law firms." Mot. 5. That average assumes the referrals were spread evenly from 2020 to the present. His own declarant says otherwise: the "vast majority of these referrals occur[red] in the early 2020's." Ex. 1 ¶ 9. Assuming the bulk of those referrals were in 2020-2023, 796 referrals approaches a referral every business day, for years on end, consisting near-exclusively of sidewalk trip-and-falls from the Dominican and Puerto Rican community.

His wife confirms she acquired Highlands Lending in June **2018** (notably, the year the Complaint alleges the Fraud Scheme commenced) and then denies ***only*** that HLC funded "litigation brought by" the Liakas Defendants or partnered with Jumpstart. Ex. 2 ¶¶ 2, 4–5. She nowhere denies the allegation the Complaint actually makes: that HLC funded *claimants* whose cases Rolnik referred, while Rolnik retained an interest in the outcome. Compl. ¶¶ 149–51. Nor is it denied HLC funded Rolnik or Liakas claimants directly. Of note, despite providing multiple impermissible declarations to improperly contest fact, none is provided by Mr. Rolnik himself.

Finally, the dismissals Rolnik invokes as though they controlled this case (Mot. 3, 11, 22) hold the opposite of what he claims. Each involved a *reinsurer* plaintiff, and each expressly identified the posture GNY occupies here (a primary insurer bound by New York's duty to defend, paying defense costs and settlements directly) as a posture that *satisfies* RICO's proximate-cause requirement. *See infra* Point VI.

It is noted that precisely today, a decision was issued in the matter of *Union Mutual Fire Ins. Co. v. Subin, et. al.*, 1:25-cv-02652-OEM-CLP, ECF No. 17, which found differently upon that action's pleading. As discussed at further length in GNY's Memo. of Law in Opposition to Medical Provider Defendants' Motions and Joint Mem. of Law in Supp., pp. 15-17, that decision failed to properly measure "directness" from the predicate acts in fact alleged – 68 distinct predicates which were not referenced a single time or discussed. It further identified Claimants – alleged as recruited participants and who suffered no damages as a result of the pled predicate acts – and the underlying insureds – who suffered no damages as a result of the pled predicate acts – as better positioned to bring suit. It lastly cited the *Roosevelt v. Subin* Second Circuit decision as "confirm[ing]" its analysis, while wholly disregarding the primary insurer cases *Seigel* and *Plambeck* which the Second Circuit approvingly cited as viable claims (discussed *infra*, at 19, and further in the Opposition cited above), and declining to consider Union's supplement on that issue.

GNY has standing, the claims are properly and timely pled, Rolnik's conduct is not privileged, and his cross-motion for sanctions, leveled at a Complaint that quotes his own sworn testimony and his own declarants now corroborate, should be denied along with the motion in its entirety.

## STATEMENT OF RELEVANT ALLEGATIONS

GNY is a New York-based *primary insurer* that issued liability policies covering premises involved in the underlying personal-injury actions. Compl. ¶¶ 3, 562. New York law mandates GNY's duty to defend, triggered upon notice of a claim, even where the claim is fraudulent. Compl. ¶¶ 80, 87, 565. In each underlying case, N.Y. C.P.L.R. § 3101(f) required disclosure of insurance carriers and policies, "making the Liakas Firm and others acutely aware of who would be paying in the event the Fraud Scheme succeeded." Compl. ¶ 87. Medical records, Bills of Particulars, and

demands were mailed and wired directly to GNY's employees and panel counsel; "any ultimate settlement or award was agreed to by Plaintiff directly." Compl. ¶¶ 88–89. "Damages also include payments Plaintiff made as legal and investigative costs for defending fraudulent lawsuits," Comp. ¶ 563, "each and every fraudulent claim and lawsuit immediately and directly triggered mandated expenses by Plaintiff in discharging its duty to defend its insured," Compl., ¶ 565, "[e]ach and every predicate act contributed to the damages incurred," and "[b]ut for Defendants' perpetration of the Fraud Scheme, Plaintiff would not have incurred such damages." Compl. ¶ 564.

The Complaint alleges an iterative Fraud Scheme operating through five steps: recruitment of vulnerable claimants by runners, including a disproportionate number of recent immigrants with city sidewalk falls originating from Jarabocoa, DR, by way of Freeport, NY; channeling to enterprise medical providers; creation of false medical evidence through predetermined, unnecessary treatment (invariably spine plus knee and/or shoulder, frequently culminating in fusion surgery); litigation-funding leverage "to secure Claimants' cooperation"; and fraudulent submissions to insurers, including GNY. Compl. ¶¶ 82–99, 156–60. It pleads two enterprises, maps the enterprise structure visually at page 30, and details each member's role at ¶¶ 116–268, including Rolnik's, at ¶¶ 130–55.

Rolnik is alleged to have "acted as an intermediary - effectively, as a broker - between Liakas Firm and other law firms and between certain runners, including Defendant Rodriguez and Tavarez (and possibly Sone) and others known and unknown, by knowingly and/or intentionally facilitating, forwarding, and/or referring fraudulent personal injury matters to Liakas Firm (who received Claimants willing to participate in the scheme), or by overseeing and/or participating in the manufacture of claims in the first instance." Compl. ¶ 130. Within the enterprise, Rolnik "is

alleged to have functioned as a funder and runner, not as a competing attorney." Compl. ¶¶ 133–53. The supporting allegations are evidentiary, not conclusory:

- *Rolnik's sworn admissions.* Testifying on December 21, 2022 as a non-party referral source, Rolnik admitted he personally went to the purported accident site — alone, without the claimant — photographed the "defect," and sent the materials to the receiving firm for use in prosecuting the claim; he claimed he no longer had the camera and could not produce originals, leaving prints with no metadata. Compl. ¶¶ 140–42 (reproducing transcript excerpts).

- *The runner he directed.* Rodriguez testified that he photographed a defect "at a location as instructed by Rolnik, without the claimant present, having 'never spoken' to the Claimant," on a prepaid phone he no longer had. Compl. ¶¶ 143, 150. Rodriguez fits the pleaded runner profile: he had his own Liakas-represented trip-and-fall claim, with funding and spinal fusion by a defendant surgeon. Compl. ¶¶ 9, 145 (Index No. 515258/2021).

- *The emergency room.* Runner Defendant Tavarez accompanied a claimant to the hospital on the day of the purported accident, provided a false name, and gave ER staff the email address of Rolnik's paralegal as his contact information. Compl. ¶ 146.

- *The funding self-dealing.* Rolnik "engaged in self-dealing through self-funding [his] own referred cases and/or 'trading' funding." Compl. ¶ 149. In the Rodriguez-photographed matter, the claimant's funding came through Highlands Lending Corp. (president: Rolnik's wife, now admitted under penalty of perjury), and the funding authorization was directed to Rolnik's law office address. Compl. ¶¶ 150–51. A second funding company, Cash in Time LLC, operated out of Rolnik's law office, with the husband of his longtime affiliate as registered agent. Compl. ¶ 152. No declaration was provided regarding same. The Complaint further alleges an "advance trading" system for swapping funding among affiliated firms to evade the Rules of Professional Conduct — a continuation "of the previous system in place between Rolnik and Bader & Yakaitis." Compl. ¶¶ 158–59.

- *The exemplar claims.* Claimant A signed a Liakas power of attorney four days after an unwitnessed fall and sought no treatment until three days after retaining counsel; the Complaint alleges his accident "was concocted by an associated runner and referred to

Liakas via Rolnik." Compl. ¶¶ 271–79. Claimant D's contemporaneous EMS and ER records document a fainting episode, an express denial of injury, and negative imaging, followed by a lumbar fusion at 28 and a cervical fusion at 29, after allegedly being "recruited by Rolnik, Tavarez, Sone, Rodriguez, or those operating at theirs or the Liakas Firm's direction." Compl. ¶¶ 413–21. Claimant F underwent surgery "effectively identical, down to usage of the same 2.9mm BioComposite PushLock anchor," to other claimants, and — "[c]onsistent with other Rolnik-referred matters" — did not know who photographed the purported defect and had no access to originals. Compl. ¶¶ 516–19.

GNY's damages consist of out-of-pocket defense costs (legal, expert, and investigative fees incurred pursuant to its duty to defend) and settlement payments, all flowing directly from the Fraud Scheme with no intermediary. Compl. ¶¶ 562–67, 595, 701–05. The 71 predicate acts are tabled by date, claimant, transaction, mechanism, and theory, the earliest occurring in 2021. Compl. pp. 166–69.

## ARGUMENT

### POINT I: THE COURT SHOULD DISREGARD OR STRIKE ROLNIK'S EXTRINSIC DECLARATIONS

On a Rule 12(b)(6) motion, review "is limited to the facts as asserted within the four corners of the complaint, the documents attached to the complaint as exhibits, and any documents incorporated in the complaint by reference." *McCarthy v. Dun & Bradstreet Corp.*, 482 F.3d 184, 191 (2d Cir. 2007); *Chambers v. Time Warner, Inc.*, 282 F.3d 147, 152–53 (2d Cir. 2002). When a movant tenders affidavits contesting the complaint's allegations, the Court must either exclude them or convert the motion to one for summary judgment with notice and a full opportunity for discovery. Fed. R. Civ. P. 12(d); *Friedl v. City of New York*, 210 F.3d 79, 83–84 (2d Cir. 2000); *Global Network Commc'ns, Inc. v. City of New York*, 458 F.3d 150, 154–57 (2d Cir. 2006).

Rolnik submits an attorney affirmation by counsel, and two fact declarations, one from his office manager and one from his wife, attesting to referral volumes, case outcomes, his disciplinary

history, and the business dealings of a non-party funding company. None is properly before the Court. Rolnik's invocation of Fed. R. Evid. 201 (Mot. 4 n.3) fails at the threshold: internal law-firm referral tallies, an office manager's characterization of a practice wind-down, and a spouse's account of her company's lending relationships are private facts, all the antithesis of facts "not subject to reasonable dispute," with none of the declarations or affirmations existing on any public docket prior to their submission with this motion. Fed. R. Evid. 201(b). Even genuinely public records may be noticed only for their existence, not the truth of their contents. *Global Network*, 458 F.3d at 157; *Roth v. Jennings*, 489 F.3d 499, 509 (2d Cir. 2007).

The submissions are also incompetent on their own terms. Counsel affirms under penalty of perjury that his client "has never been the subject of a bar ethics investigation" in any jurisdiction, "based on my review of the applicable, public and/or law firm records." Ashmore Aff. ¶¶ 2, 5. An attorney's affirmation not made on personal knowledge has no evidentiary value, *Kamen v. Am. Tel. & Tel. Co.*, 791 F.2d 1006, 1011 (2d Cir. 1986), and counsel cannot know from public records what non-public disciplinary files contain. The Gonzalez declaration, meanwhile, hedges its central assertions, including the disposition of the Referred Cases, "upon information and belief" (Ex. 1 ¶¶ 10–11, 13), a formulation that renders a 28 U.S.C. § 1746 declaration valueless, and an inexplicable one from the custodian who swears she "maintain[s] the Law Practices' office records" of those very referrals (Ex. 1 ¶ 6).

The Court should decline conversion, which is manifestly premature before any discovery, *see* Fed. R. Civ. P. 56(d), and simply exclude and/or disregard the material. The tactical purpose of the submission is transparent: to convert a facial challenge into a trial by affidavit before GNY may take a single deposition.

## POINT II: IN THE ALTERNATIVE, THE DECLARATIONS CORROBORATE THE COMPLAINT

Should the Court consider the extrinsic material notwithstanding Rule 12(d), it confirms, under oath, the very architecture the Complaint alleges.

**Volume.** A sole practitioner who does not advertise, has no meaningful internet presence, and occupies an interior office (Compl. ¶ 132; unrebutted) referred 796 personal-injury cases, 372 of them to a single firm, with the vast majority concentrated in the early 2020s. Ex. 1 ¶¶ 9, 12.

The assertions in the impermissible declaration are thus in accord, not tension, with precisely what the Complaint alleges: that Rolnik "is somehow in a position to broker massive volumes of highly suspicious personal injury cases" to firms accused of fraud. Compl. ¶ 136. The sworn numbers, on their own terms and even as creatively argued by Counsel' affirmation, do not answer the question the Complaint poses, but further sharpens that question: where do two claimants a week come from, for a lawyer with no visible or demonstrated client-acquisition channel? The Complaint's answer, which must be accepted as true at this stage, is: from Rodriguez, Tavarez, Sone, and the runner network he alleged to have managed. Compl. ¶¶ 130, 137.

**The funding non-denial.** The Complaint alleges that HLC, owned by Rolnik's wife, funded a claimant whose case Rolnik referred out "maintaining an interest in its outcome," with the funding authorization directed to Rolnik's own law office (Compl. ¶¶ 149–51), and that Rolnik brought at least one action himself that was "self-funded through Highland Lending" (Compl. ¶ 169 n.2). The Adria Rolnik declaration answers different allegations entirely: it denies that HLC funded "litigation brought by" the Liakas Defendants and that HLC partnered "with Def. Jumpstart LLC." Ex. 2 ¶¶ 4–5. It says nothing about funding Rolnik-referred *claimants*, nothing about the authorization sent to Rolnik's office, nothing about the self-funded Rolnik case identified by index

number, nothing about The Law Funder LLC, the funder that employed Rolnik's own office-mates (Compl. ¶¶ 134–35), and nothing about Rolnik's role, if any, in HLC.

What it does confirm is the timeline: she acquired HLC in June 2018 (Ex. 2 ¶ 2), the year the Fraud Scheme commenced (Compl. ¶¶ 82, 119). A sworn denial calibrated to bypass every operative allegation confirms the operative allegations cannot be denied under oath.

**The silence of the defendant.** Rolnik is the only person with personal knowledge of whether he knew or directed Rodriguez, Tavarez, and Sone; whether anyone was compensated for delivering claimants; and whether he retains interests in referred cases. Yet, despite submitting impermissible declarations, he submits no declaration of his own – the Complaint has provided more sworn testimony from Rolnik than his own impermissible attempt to raise a factual contest, which further place him at accident sites, camera in hand. Compl. ¶¶ 140–42. GNY does not ask the Court to draw adverse inferences at the pleading stage; the narrower point suffices: nothing in the submission contradicts, let alone negates, the Complaint's specific allegations, even were the submission cognizable.

## POINT III: THE ALLEGED CONDUCT IS NOT IMMUNIZED BY THE FIRST AMENDMENT, THE RULES OF PROFESSIONAL CONDUCT, OR KIM v. KIMM

Rolnik's claim of "absolute privilege" depends on recharacterizing the Complaint as a suit over case referrals. It is not. Accepting the allegations as true, *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009), Rolnik manufactured accident predicates (Compl. ¶¶ 137, 140–42), directed a runner to fabricate site documentation for a claimant the runner had never spoken to (¶¶ 143, 150), maintained undisclosed financial interests in referred cases through household and office-based funding entities (¶¶ 149–52, 169 n.2), and sat at the hub of a claimant-procurement network whose members turned up in emergency rooms accompanying Claimants on their claimed accident day carrying his paralegal's email address (¶ 146). No authority holds any of that protected.

*NAACP v. Button* and its progeny protect "modes of expression and association" in the vindication of legal rights, 371 U.S. 415, 428–29 (1963), and *Button* itself distinguished the "oppressive, malicious, or avaricious use of the legal process for purely private gain." *Id.* at 443. "[T]he First Amendment does not shield fraud." *Madigan*, 538 U.S. at 612; *see United States v. Alvarez*, 567 U.S. 709, 723 (2012) (plurality).

The professional-conduct regime Rolnik cites cuts against him: the same rules that permit fee-sharing among lawyers prohibit compensating non-lawyers for recommending employment, N.Y. R. Prof'l Conduct 7.2(a), and New York's Judiciary Law criminalizes claimant solicitation through runners, N.Y. Jud. Law §§ 479, 481–482. The Complaint alleges the prohibited conduct, not the permitted conduct; which occurred is a question of fact, and one on which Rolnik's own quoted deposition testimony already bears. And in *United States v. Eisen*, 974 F.2d 246 (2d Cir. 1992), the Second Circuit affirmed criminal RICO convictions of personal-injury attorneys and their investigators who "pursu[ed] counterfeit claims" through manufactured evidence and witness payments, because they "went well beyond their capacities as legal representatives in conducting their fraudulent scheme." What supports criminal RICO liability is not immunized civil conduct.

*Kim v. Kimm* is inapposite by its own terms. *Kim* held that "where, as here, a plaintiff alleges that a defendant engaged in a *single* frivolous, fraudulent, or baseless lawsuit, such litigation activity *alone* cannot constitute a viable RICO predicate act," while expressly "declin[ing] to reach the issue of whether all RICO actions based on litigation activity are categorically meritless." 884 F.3d at 104–05.

The Second Circuit has since confirmed *Kim*'s scope, distinguishing cases where "the issue is not whether the state-court proceedings are *themselves* predicate acts, but rather that they are allegedly designed to perpetuate and monetize the RICO scheme." *State Farm Mut. Auto. Ins. Co.*

*v. Tri-Borough NY Med. Practice, P.C.*, 120 F.4th 59, 98 n.14 (2d Cir. 2024). Courts applying *Kim* have sustained RICO claims where, as here, the scheme extends beyond the courthouse. *See Sykes v. Mel Harris & Assocs., LLC*, 757 F. Supp. 2d 413 (S.D.N.Y. 2010) (distinguished approvingly in *Kim*); *Carroll v. U.S. Equities Corp.*, 2020 U.S. Dist. LEXIS 258605, at *23–35 (N.D.N.Y. Nov. 30, 2020) ("*Kim* leaves open the door for RICO claims premised on abusive litigation activities involving conduct beyond a single lawsuit"); *Uber Techs., Inc. v. Simon & Simon, P.C.*, 2026 U.S. Dist. LEXIS 103792, at *11, *19, *45 (E.D. Pa. May 11, 2026) (sustaining directly analogous claims where "[t]he dispute . . . centers on the alleged pre-filing conduct").

This case is not *Kim*. It does not relitigate a single frivolous suit; it alleges 71 predicate acts over five-plus years with substantial conduct outside the courthouse including runner recruitment, staged accident documentation, accident-day steering of medical treatment, cash payments to surgeons, funding arrangements to "secure Claimants' cooperation" (Compl. ¶ 157), all of which litigation served as the medium of monetization. As for Rolnik specifically: recruiting claimants, staging site photographs, and coordinating predetermined treatment all precede any filing. Litigation privilege has nothing to say about a camera on a sidewalk by a referring attorney, whose original images and metadata keep vanishing.

Rolnik's related refrain, that downstream doctors and lawyers exercised "independent judgment" he did not control (Mot. 2, 13 n.12), is a causation defense dressed as immunity, and it contradicts the pleading it must accept: the Complaint alleges coordination, treatment "predictable and pre-determined" (Compl. ¶ 138), identical surgical hardware across unrelated claimants (¶ 518), providers compensated through the scheme's funding apparatus, including documented cash "attorney payments" for surgeries (¶¶ 94, 160, 586–87). Whether the providers exercised independent judgment or executed a playbook is quintessentially a fact question.

**POINT IV: THE PREDICATE ACTS OF THE FRAUD SCHEME ARE SUFFICIENTLY PLED AND NEED NOT BE PLED "AGAINST" ROLNIK**

Rolnik devotes pages to the observation that GNY "has brought no Hobbs or Travel Act, or Penal Law claims against Mr. Rolnik... In fact, it has brought no [substantive] RICO Violations claims against Mr. Rolnik." Mot. 20. That is both correct and sufficiently pled. Rolnik is charged with RICO *conspiracy* under § 1962(d) (Counts III and V) and with aiding and abetting fraud (Count VIII). A § 1962(d) defendant need not commit, or agree to commit, any predicate act himself. *Salinas*, 522 U.S. at 63–66; *United States v. Applins*, 637 F.3d 59, 74–75 (2d Cir. 2011). What matters is that the substantive scheme that is the conspiracy's object is adequately pled, and it is.

Rolnik's demand for a false statement of his own misconceives mail and wire fraud and what the standard of review is for the allegations against him. This same categorical error – claiming the substantive RICO violations pled are insufficient, then arguing as to their insufficiency against Rolnik despite no such claim pled, repeats itself throughout the DMOL.

To the degree the DMOL is interpreted to argue the substantive counts fail as those against whom it is pled (which is argued in the most general of terms), the DMOL fails to contend with the fact the Complaint pleads 71 predicate acts (37 against the Liakas Movants alone) in dedicated tables identifying the date, claimant, transaction, mechanism, and theory for each act, expanded upon within the Counts and the claimant-specific sections. Compl. pp. 166–69. "[S]uch information clearly directs defendants to the specific misrepresentations [Plaintiff] is alleging. Under the circumstances, the specificity requirement of 9(b) requires no more." *GEICO v. Star Med. Diagnostic, P.C.*, 2025 U.S. Dist. LEXIS 98897, at *7 (E.D.N.Y. May 23, 2025). Rule 9(b) "does not require factual pleadings that demonstrate the probability of wrongdoing," *Loreley Fin. (Jersey) No. 3 Ltd. v. Wells Fargo Sec., LLC*, 797 F.3d 160, 174 (2d Cir. 2015); it requires that the

complaint explain "in detail the contours of the fraudulent scheme it [plausibly] alleges." *Allstate Ins. Co. v. Lyons*, 843 F. Supp. 2d 358, 372 (E.D.N.Y. 2012).

The underlying misrepresentations cited involving false medical records generated by enterprise providers, verified pleadings, and Bills of Particulars transmitted "directly to Plaintiff's employees or their panel counsel," are pled claimant by claimant. Compl. ¶¶ 88–89, 95, 123–24, 270–560. Where a mailing or transmission "is part of the execution of the scheme as conceived by the perpetrator at the time," it need not itself be false. *Empire Merchs., LLC v. Reliable Churchill LLLP*, 902 F.3d 132, 139–40 (2d Cir. 2018) (citing *Schmuck v. United States*, 489 U.S. 705, 715 (1989)); *Crawford v. Franklin Credit Mgmt. Corp.*, 758 F.3d 473, 488 (2d Cir. 2014).

As to scienter, Rule 9(b) permits general allegations of intent, and "courts have repeatedly found a sufficiently strong inference of intent in the insurance context where a defendant has a 'motive to receive monetary reimbursements to which they were not entitled, and they had the opportunity and ability to receive those reimbursements by submitting fraudulent claims.'" *Union Mut. Fire Ins. Co. v. Citimed Servs., P.A.*, 2026 U.S. Dist. LEXIS 59287, at *23 (E.D.N.Y. Mar. 20, 2026) (quoting *Allstate Ins. Co. v. Avetisyan*, 2021 WL 1227625, at *6 (E.D.N.Y. Mar. 5, 2021)); *see First Cap. Asset Mgmt., Inc. v. Satinwood, Inc.*, 385 F.3d 159, 179 (2d Cir. 2004). Again, this has no bearing on any allegation specific to Rolnik under RICO conspiracy; but, regardless, no lawyer innocently directs a runner to photograph a "defect" for a claimant the runner has never met or spoken with and who is not present, or routes household funding into cases he has referred while the authorization returns to his own office.

## POINT V: THE RICO CONSPIRACY AND AIDING-AND-ABETTING CLAIMS AGAINST ROLNIK ARE PROPERLY PLED

Because the substantive RICO claims survive, as demonstrated in GNY's opposition to the Liakas Defendants' motion and the other Count I and IV Defendants motions, incorporated herein

by reference, the premise of Rolnik's conspiracy argument (that conspiracy fails automatically with the substantive claims) falls away.

Despite the conflation in the DMOL, "Rule 9(b) does not govern allegations of RICO conspiracy." *1567 56th St., LLC v. Spitzer*, 774 F. Supp. 3d 476, 493 (E.D.N.Y. 2025), *citing Hecht v. Commerce Clearing House, Inc.*, 907 F.2d 21, 26 (2d Cir. 1990).

On the merits, a § 1962(d) defendant need only have "kn[own] about and agreed to facilitate the scheme." *Baisch v. Gallina*, 346 F.3d 366, 377 (2d Cir. 2003) (citing *Salinas*, 522 U.S. at 66). "[A] defendant's agreement to join a conspiracy can be inferred from circumstantial evidence of the defendant's status in the enterprise or knowledge of the wrongdoing." *F3Ea Funding*, 2019 U.S. Dist. LEXIS 243118, at *12. The same applies to engagement, which may be pled through circumstantial evidence. *Moss v. BMO Harris Bank, N.A.*, 258 F. Supp. 3d 289, 302 (E.D.N.Y. 2017), *citing United States v. Anderson*, 747 F.3d 51, 60 (2d Cir. 2014)) ("although there must be a meeting of the minds, the agreement need not be express.. knowing participation in the conspiracy can be shown through circumstantial evidence").

That circumstantial evidence is more than adequately pled here, as set forth at length herein, including *supra*, pp. 7-9. This volume of circumstantial evidence is notable given that even at trial, let alone here at the pleading stage, such circumstantial evidence can be as minimal as "a lack of surprise when discussing the conspiracy with others" or participation in phone calls. *Id.*, *citing United States v. Aleskerova*, 300 F.3d 286, 292-93 (2d Cir. 2002); *see also F3Ea Funding*, at *12 (EDNY 2019).

Despite argument otherwise, the Complaint pleads far more than "parallel conduct": a years-long, high-volume pipeline from Rolnik's runner network into the Liakas Firm (Compl. ¶¶ 130–31, 137); Rolnik's alleged hands-on participation in manufacturing claim predicates, quoted

from sworn testimony (¶¶ 140–43); his runner's presence at claimant medical intake bearing his office's contact information (¶ 146); financial integration through household and office-based funding entities and "advance trading" designed to evade professional-conduct rules (¶¶ 149–52, 158–59); and his retained interest in referred cases (¶ 150).

The Liakas Firm, for its part, represented Rolnik's own investigator/runner Rodriguez in Rodriguez's personal claim (¶ 145). Sustained, structured, financially interlocked cooperation of that kind plausibly provides the inference of agreement, including as to the "management of the runner networks and referrals sourced through runners" the conspiracy counts allege (¶ 614), with the specific steps and events of the agreement pled at ¶¶ 607–08, 610–11, and 647–48.

The same allegations state Count VIII for aiding and abetting fraud under New York law, which requires (1) an underlying fraud, (2) actual knowledge of the fraud, and (3) substantial assistance in its commission. *Lerner v. Fleet Bank, N.A.*, 459 F.3d 273, 292 (2d Cir. 2006).

The Fraud Scheme is pled with particularity (supra, Point IV); as set forth above, circumstantial evidence sufficient to infer knowledge is pled as against Rolnik; and "substantial assistance" is sufficiently pled in regards sourcing, packaging, delivering claimants into the enterprise, and managing the recruitment pipeline. It is in fact the assistance as alleged that without which the scheme had no inventory to perpetrate the scheme (¶¶ 130–31, 137). This is sufficient to maintain the claim of aiding and abetting

## POINT VI: GNY HAS RICO STANDING AS A PRIMARY INSURER

Rolnik argues in a dense paragraph of misapplied legal citations that GNY's injury is "insufficiently direct," "speculative and derivative of third-party injury," and that "Judges in this District" have dismissed WLG-filed RICO suits for lack of standing. DMOL, pp. 3, 22. The argument inverts the very decisions it invokes. Every dismissal Rolnik cites involved a reinsurer

plaintiff - and every one of those decisions expressly identified the posture GNY occupies here, a primary insurer bound by the duty to defend, as the posture that satisfies proximate cause:

| | |
|---|---|
| *Roosevelt Rd. Re v. Subin*, 2025 U.S. Dist. LEXIS 117080, at *17 (E.D.N.Y. June 19, 2025) | "As a reinsurer, [Roosevelt's] injuries are definitionally '[m]ultiple steps' away from the alleged fraud . . . . To be sure, insurers may clear the proximate cause hurdle when they are the targets of the fraud." |
| *Roosevelt Rd. Re v. Schwitzer*, 2026 U.S. Dist. LEXIS 33139, at *5 (E.D.N.Y. Feb. 18, 2026) | Applying collateral estoppel to Subin's holding: "The dispositive issue in Subin I was plaintiffs' lack of RICO standing, i.e., '[a]s a reinsurer . . . .'" |
| *Roosevelt Rd. Re v. Haggar*, 2026 U.S. Dist. LEXIS 50451, at *32 (E.D.N.Y. Mar. 11, 2026) | "[E]ven if one were to combine the first and second steps in recognition of the fact that insurance companies usually have a contractual duty to defend claims against their insureds, Roosevelt's losses would still be two steps removed . . . ." Leave to move to amend granted. |
| *Ionian Re, LLC v. Gorayeb*, No. 1:24-cv-07098, ECF 106 (E.D.N.Y. Apr. 16, 2026) | "Because Ionian is a reinsurer . . . it lacks standing to bring its RICO claims." Distinguishing *State Farm* case: "the case involved a primary insurer, not a secondary insurer." Leave to move to amend granted. |

*Subin* was affirmed, and the Second Circuit named the claims still viable: those where "the defendant defrauds the insurance company itself," citing *Allstate Ins. Co. v. Plambeck*, 802 F.3d 665, 676–77 (5th Cir. 2015). *Roosevelt Rd. Re, Ltd. v. Subin*, 2026 U.S. App. LEXIS 21743, at *8 n.1 (2d Cir. July 22, 2026). *Plambeck* affirmed a treble-damages verdict for a primary insurer against telemarketers, clinics, and law firms whose object "was to collect from the insurance companies," reaching the recruitment and funding layer alleged of Rolnik. Compl. ¶¶ 130, 149–52.

**GNY is that primary insurer**. New York law mandates its duty to defend, triggered upon the filing of a claim, regardless of merit or even known fraudulence. *Town of Massena v. Healthcare Underwriters Mut. Ins. Co.*, 98 N.Y.2d 435, 443 (2002); *Swan USA, Inc. v. Wesco Ins. Co.*, 217 A.D.3d 987, 989 (2d Dep't 2023); Compl. ¶¶ 80, 87, 565.

Under C.P.L.R. § 3101(f), the Defendants knew from disclosure in each underlying case exactly who "would be paying in the event the Fraud Scheme succeeded" (Compl. ¶ 87); the fraudulent records and demands were transmitted "directly to Plaintiff or its panel counsel" (¶ 88); negotiations occurred with GNY directly, and "any ultimate settlement or award was agreed to by Plaintiff directly" (¶ 89). "Should the Fraud Scheme succeed, the success is marked by a settlement check" drawn on GNY's account; "[t]here is no break in the causal chain between Defendants' conduct and Plaintiff's damages." Compl. ¶ 595.

First-step harm was therefore suffered by GNY directly, with no intermediary. *Hemi Grp., LLC v. City of New York*, 559 U.S. 1, 12 (2010) ("the focus is on the directness of the relationship between the conduct and the harm"). And none of the *Holmes* rationales for the directness rule itself - difficulty apportioning damages, risk of duplicative recovery, presence of better-situated plaintiffs - applies to GNY, whose settlement payments and defense costs "belong to GNY alone." See *Holmes v. Sec. Inv. Prot. Corp.*, 503 U.S. 258, 269 (1992). *Anza v. Ideal Steel Supply Corp.*, 547 U.S. 451, 458–61 (2006), *Hemi*, and *Holmes* each involved injury flowing through an independent intermediary victim; here the fraudulent documents came to GNY, GNY paid the costs and expenses, the negotiations were with GNY, and the money left GNY's account.

Rolnik's ripeness argument fails on equally settled law. "[C]ertainty as to the amount of damages is not required at the pleading stage." *Alix v. McKinsey & Co.*, 23 F.4th 196, 207 (2d Cir. 2022). Defense costs already incurred are "clear" and "definite" losses even if related expenses continue to accrue: "the amounts may increase over time, [but] the past expenses will not disappear." *D'Addario v. D'Addario*, 901 F.3d 80, 96 (2d Cir. 2018). Rolnik's reliance on *Sky Medical* (Mot. 22–23) is misplaced: *Sky Medical* addresses damages that may go *down*, not up, a distinction this Court itself has drawn. *GEICO v. Akiva Imaging Inc.*, 2025 U.S. Dist. LEXIS

95138, at *10 (E.D.N.Y. May 19, 2025) (citing *D'Addario*). GNY's incurred defense costs, expert fees, and settlement payments will only grow, not shrink. The damages are concrete, definite, and ripe.

## POINT VII: THE CLAIMS ARE TIMELY

Rolnik argues the suit is time-barred because GNY alleges a scheme "[s]ince at least 2018." DMOL, p. 24. That states the accrual rule backwards, and misreads the Complaint besides. Civil RICO claims accrue under the injury-discovery rule: "[t]he clock begins to run when the plaintiff has 'inquiry notice' of his injury, namely when he discovers or reasonably should have discovered the RICO injury," not when the scheme is alleged to have commenced. *Koch v. Christie's Int'l PLC*, 699 F.3d 141, 148, 151 (2d Cir. 2012) (Rolnik's own authority); *Rotella v. Wood*, 528 U.S. 549, 553–55 (2000). Under the separate-accrual rule, each new and independent injury as a result of each predicate act in the Complaint begins a new post-discovery four-year period. *Bankers Trust Co. v. Rhoades*, 859 F.2d 1096, 1102–03 (2d Cir. 1988).

The Complaint nowhere alleges that GNY knew of, or should have discovered, the Fraud Scheme in 2018; to the contrary, it pleads that the scheme was engineered to defeat detection, structured behind HIPAA, attorney-client privilege, and New York's insulation of litigation-funding disclosures. Compl. ¶ 703. The particularized, dated predicate acts pled in the tables begin in 2021 (Compl. pp. 166–69); the exemplar claims arise from purported accidents in 2020–2022 (¶¶ 271, 413, 516), with transmissions and payments continuing to the present (¶¶ 137–38, 576). Dismissal on limitations grounds is proper only where untimeliness is apparent on the complaint's face, *Ellul v. Congregation of Christian Bros.*, 774 F.3d 791, 798 n.12 (2d Cir. 2014); here the face of the Complaint shows timeliness.

**POINT VIII: RES JUDICATA AND THE UNDERLYING RELEASES ARE NOT GROUNDS FOR DISMISSAL**

Rolnik's refrain that GNY "settled" the underlying cases and executed "releases" appears only in footnotes and asides, unsupported by a single release or judgment such that would bar this Complaint - because none is (or could be) before the Court on this motion, and because the argument fails at every step. Claim preclusion requires identity of parties and a prior adjudication on the merits. *Marvel Characters, Inc. v. Simon*, 310 F.3d 280, 286–87 (2d Cir. 2002). Rolnik was not a party to any underlying action; settlements adjudicated nothing; and GNY's RICO and fraud claims against the scheme's architects were neither raised nor raisable as claims in the underlying tort suits. As for releases: in those settlements GNY released no claims, least of all the referring attorney, runners, funders, and physicians who allegedly engineered the fraud alleged. Releases procured by the very fraud alleged could not bar these claims in any event. These are fact-bound affirmative defenses, Fed. R. Civ. P. 8(c), unsuited to Rule 12(b)(6).

**POINT IX: THE COMPLAINT COMPLIES WITH RULE 8; SUPPLEMENTAL JURISDICTION SHOULD BE RETAINED**

Rolnik simultaneously faults the Complaint for insufficient particularity under Rule 9(b) and excessive length under Rule 8. He cannot have both. A multi-defendant fraud-RICO complaint must plead each defendant's role with particularity; 713 organized paragraphs devoting more than 86 pages to six documented exemplar claimants is proportionate and intelligible, as Rolnik's own paragraph-by-paragraph response demonstrates. The authority Rolnik cites does not make length dispositive: *Donlon* found a Rule 8 violation where a 243-page, 1,375-paragraph pleading contained 55 pages of irrelevant allegations, was "devoted to argument," and described the same events repeatedly. *Donlon v. City of New York*, 2026 U.S. Dist. LEXIS 33441, at *18 (S.D.N.Y. Feb. 18, 2026). Rolnik makes no such showing, and none could be made. Because the federal

claims survive, the argument for declining supplemental jurisdiction over Count VIII is moot. 28 U.S.C. § 1367(a).

## POINT X: THE SANCTIONS REQUEST IS FRIVOLOUS

Rolnik closes by seeking fees under 28 U.S.C. § 1927 and the Court's inherent power, relief requiring "clear evidence" that claims are "entirely without color" and brought in bad faith. *Oliveri v. Thompson*, 803 F.2d 1265, 1272–73 (2d Cir. 1986); *Enmon v. Prospect Cap. Corp.*, 675 F.3d 138, 143 (2d Cir. 2012). The premise of the request is Rolnik's "lawfare" narrative: that this action is a "cut-copy-and-paste" harassment suit. This manufactured narrative is addressed elsewhere where it is not as plainly self-defeating.

§ 1927 punishes an attorney who "multiplies the proceedings in any case unreasonably and vexatiously." This statutory requirement for relief is not mentioned in Rolnik's argument at all. Rolnik admits that despite tagging along with the manufactured narrative of his Co-Defendants, he "is not named as a party in any of the other foregoing cases." DMOL, p. 1, n 1. Thus, a single Complaint has named Rolnik in a conspiratorial role. Rolnik has filed his single 12(b)(6) motion. The only multiplication is Rolnik's stapled-on request for sanctions that fail to list the necessary elements to obtain them, let alone demonstrate same.

Under the Court's inherent power, clear evidence the challenged filing is entirely without color is the first required step. Given Rolnik conflates the requirements under § 1962(c) and (d) at will, improperly submits declarations *which confirm the color of several allegations*, misstates the contents of his own cited authority as to ripeness and injury-accrual, calls the citation to his own sworn testimony "smoke and mirrors," and refuses to engage what the Complaint actually pleads, again, the only demonstrated filing without color is Rolnik's, with his own submission the clear

evidence. Rolnik comes nowhere approaching the bar to meet such a request, particularly where the 12(b)(6) motion itself should be denied in its entirety.

## CONCLUSION

For the foregoing reasons, GNY respectfully requests that the Court disregard or strike Defendant Rolnik's extrinsic declarations, deny his motion to dismiss in its entirety, and deny his cross-motion for fees and costs. In the alternative, should the Court find any claim insufficiently pled, GNY respectfully requests leave to amend pursuant to Rule 15(a)(2), as this Complaint has never been amended, and no prior ruling involving different plaintiffs in different postures could justify denying GNY that opportunity.

Dated: August 14, 2026

Respectfully submitted,
**THE WILLIS LAW GROUP, PLLC**
By: Daniel A. Johnston
Daniel A. Johnston, Esq.
60 Broadhollow Road,
Melville, New York 11747
Telephone: 214-736-9433
service@thewillislawgroup.com
*Attorneys for Plaintiff*